

## 2009CI05744

CAUSE NO. _____

| | |
|---|---|
| GREGORY HALPRIN, LES KLINGERMAN, PAUL WEBER, GEORGE HEYWOOD, ANDREW NGUYEN, EDWARD ARRIOLA, KENNY ARRIOLA, CRAIG INABA, BRIAN TAUS, HERMANN KINSCHNER<br>    *Plaintiffs*<br><br>v.<br><br>FIRST NATIONAL BANK, ERIC SHERER in his official capacity as TRUSTEE, MIKE MALDONODO in his official capacity with First National Bank, HTG REAL PROPERTY MANAGEMENT, INC., PADILLA PROPERTY CORPORATION, MARIA DE ROSARIO PADILLA, MAURO T. PADILLA<br>    *Defendants* | § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br><br>408th<br><br>_____ JUDICIAL DISTRICT<br><br><br><br>BEXAR COUNTY, TEXAS |

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE COURT:

Plaintiffs, **GREGORY HALPRIN, LES KLINGERMAN, PAUL WEBER, GEORGE HEYWOOD, EDWARD ARRIOLA, KENNY ARRIOLA, CRAIG INABA, BRIAN TAUS, HERMANN KINSCHNER** file this Original Petition **FIRST NATIONAL BANK, ERIC SHERER** in his official capacity as **TRUSTEE, MIKE MALDONODO** in his official capacity with First National Bank, **HTG REAL PROPERTY MANAGEMENT, INC., PADILLA PROPERTY CORPORATION, MARIA DE ROSARIO PADILLA, MAURO T. PADILLA.**

**DISCOVERY LEVEL**

Plaintiffs identify that this suit is properly classified under the Discovery Control Plan Requirements specified by Texas Rule of Civil Procedure 190.4, and Plaintiff affirmatively states that it intends to pursue discovery under Level 3 of that rule.

**PARTIES AND SERVICE OF CITATION**

1.    Plaintiff, **GREG HALPRIN**, is an individual who resides at 13122 Cortina, Tustin, California 92782.

2.    Plaintiff, **LES KLINGERMAN,** is an individual who resides at 520 North Central Ave., Suite 500, Glendale, California, 91203.

3.    Plaintiff, **PAUL WEBER**, is an individual who resides at 1918 Canyon Dr. Los Angeles, California, 90068.

4.    Plaintiff, **GEORGE HEYWOOD**, is an individual who is a resident located in the State of California.

5.    Plaintiff, **EDWARD ARRIOLA**, is an individual who resides at 6818 N. Oriacle #426, Tucson, Arizona, 85704.

6.    Plaintiff, **ANDREW NGUYEN**, is an individual who is a resident of the state of California.

7.    Plaintiff, **KENNY ARRIOLA,** is an individual who resides at 14 Duquesa Dana Point, California, 92629.

8.    Plaintiff, **CRAIG INABA**, is an individual who resides at 22406 Goldrush Lake Forest, California 92630

9.    Plaintiff, **BRIAN TAUS,** is an individual who resides at 2608 Calle Rompeolas, San Clemente, California

10.    Plaintiff, **HERMANN KINSCHNER,** is an individual who resides at Cosenza Laguna Niguel, California 92677.

11.    Defendant, **FIRST NATIONAL BANK,** is a Texas Chartered Financial Institution with offices located at 2119 S Hackberry, San Antonio, TX 78210 in Bexar County Texas. **FIRST NATIONAL BANK** may be served through its registered agent J.V. Martin at 23 Club Terrace Drive, Sweetwater, Texas 79556.

12.    Defendant, **ERIC SHERER in his official capacity as TRUSTEE,** is an individual who may be served at his place of business located at 11124 Wurzbach Road, Suite 100, San Antonio, Texas 78230.

13.    Defendant, **MIKE MALDONODO in his official capacity with First National Bank,** is an individual who may be served at his place of business located at 2119 S. Hackberry, San Antonio, Texas 78210.

14.    Defendant, **HTG Real Property Management, Inc.,** a Texas corporation whose registered office is 24165 IH-10West, Ste 217-407, San Antonio, TX 78257, BEXAR County, Texas, may be served with process by serving its registered agent, Maria Del Rosario Padilla, at 8815 Mount Arcadia, San Antonio, TX 78255.

15.    Defendant, **Padilla Property Corporation,** a Texas corporation whose registered office is 24165 IH-10West, Ste 217-407, San Antonio, TX 78257, BEXAR County, Texas, may be served with process by serving its president, Maria Del Rosario Padilla, at 8815 Mount Arcadia, San Antonio, TX 78255.

16.     Defendant, **Maria Del Rosario Padilla**, is an individual who may be served at defendant's residence at 8815 Mount Arcadia, San Antonio, TX 78255.

17.     Defendant, **Mauro T. Padilla**, is an individual who may be served at defendant's residence at 8815 Mount Arcadia, San Antonio, TX 78255.

## FACTUAL BACKGROUND

18.     Herein incorporated by reference into this petition are all facts and causes of action held under prior petitions filed in Bexar County, Texas under Cause Numbers, 2008CI10151 and 2008CI13420.

19.     Plaintiff, Gregory Halprin, executed a contract for the purchase of two (2) four-plex townhouses (the "Halprin Units") from Defendant, HTG Real Property Management, Inc., which were to be constructed by Defendant, Padilla Property Corporation, in a timely fashion. Defendants Mauro Padilla and Maria Del Rosario Padilla, at all pertinent times we believed to have, owned, controlled and operated both HTG Real Property Management, Inc., and Padilla Property Corporation.

20.     Plaintiff, Gregory Halprin, closed on the purchase of the Halprin Units on or about February 7, 2008. The Halprin Units were to be completed and ready for occupancy very shortly thereafter, according to the correspondence between the parties, and the representations of Defendants. The Halprin Units remain incomplete and not ready for occupancy as of the date of this Petition.

21.     Defendants, through their incompetence, neglect, and/or knowing or intentional disregard for the adverse affects on Plaintiff, Gregory Halprin, have

failed and/or refused, and continue to fail and/or refuse to complete the construction of the Halprin Units to the point of being ready for occupancy.

22.    Plaintiff, Gregory Halprin, has suffered damages based on Defendants' failure and/or refusal to complete the construction of the Halprin Units so they are ready for occupancy. Further, Plaintiff, Gregory Halprin has suffered damages based on, and as a proximate and foreseeable result of, the delays in completing the construction of the Halprin Units by Defendants.

23.    By and through the filing of SUBSTITUTE TRUSTEE'S NOTICE OF SALE, attached hereto as Exhibit "A", which described certain property as a total 3.2 acre tract of land schedule for foreclosure Tuesday, April 7, 2009; this sale does not take exception to the purchase contracts issued to Plaintiff Gregory Halprin. See attached Exhibit "B". On or about February 5, 2008, Defendants, executed a release of lien (see attached Exhibit "C") to Plaintiff Gregory Halprin for the purchase, upon the execution of two payments in the amounts of $218,649.87 (Two Hundred Eighteen Thousand Six Hundred Forty Nine Dollars and 87/100) and $218,599.87 (Two Hundred Eighteen Thousand Five Hundred Ninety Nine Dollars and 87/100) which were wired and sent to Defendants on or about February 12, 2008. Defendants' acceptance of payment and execution of release preclude foreclosure on property executed under the above referenced contract.

24.    Plaintiff, P. Les Klingerman, executed a contract for the purchase of four (4) four-plex townhouses (the "Klingerman Units") from Defendant, HTG Real Property Management, Inc., which were to be constructed by Defendant, Padilla

Property Corporation, in a timely fashion. Defendants Mauro Padilla and Maria Del Rosario Padilla, at all pertinent times represented to have, owned, controlled and operated both HTG Real Property Management, Inc., and Padilla Property Corporation.

25.     Plaintiff, P. Les Klingerman, closed on the purchase of the Klingerman Units on or about April 12, 2007. The Klingerman Units were to be completed and ready for occupancy on or about May 14, 2007, according to the contract signed by the parties. The Klingerman Units remain incomplete and not ready for occupancy as of the date of this Petition.

26.     Defendants, through their incompetence, neglect, and/or knowing or intentional disregard for the adverse affects on Plaintiff, P. Les Klingerman, have failed and/or refused, and continue to fail and/or refuse to complete the construction of the Klingerman Units to the point of being ready for occupancy.

27.     Plaintiff, P. Les Klingerman, has suffered damages based on Defendants' failure and/or refusal to complete the construction of the Klingerman Units so they are ready for occupancy. Further, Plaintiff, P. Les Klingerman has suffered damages based on, and as a proximate and foreseeable result of, the delays in completing the construction of the Klingerman Units by Defendants.

28.     By and through the filing of SUBSTITUTE TRUSTEE'S NOTICE OF SALE, attached hereto as Exhibit "A", which described certain property as a total 3.2 acre tract of land schedule for foreclosure Tuesday, April 7, 2009; this sale does not take exception to the purchase contracts issued to Plaintiff Les Klingerman.  See attached Exhibit "D".  On or about April 10, 2007, Defendants,

executed four Warranty Deeds (see attached Exhibit "E") to Plaintiff Les

Klingerman for the purchase upon the execution of four (4) payments in the

amounts of $239,273.02 (Two Hundred Thirty Nine Thousand Two Hundred

Seventy Three Dollars and 02/100), $239,273.03 (Two Hundred Thirty Nine

Thousand Two Hundred Seventy Three Dollars and 03/100), $239,273.02 (Two

Hundred Thirty Nine Thousand Two Hundred Seventy Three Dollars and 02/100),

and $239,273.02 (Two Hundred Thirty Nine Thousand Two Hundred Seventy

Three Dollars and 02/100), which were wired and sent to Defendants. See

Attached Exhibit "F".

29.     Plaintiff, Paul Weber, executed a contract (see Exhibit "G") on or about

March 2007 for the purchase of one (1) four-plex townhouses (the "Weber Unit")

from Defendant, HTG Real Property Management, Inc., which were to be

constructed by Defendant, Padilla Property Corporation, in a timely fashion.

Defendants Mauro Padilla and Maria Del Rosario Padilla, at all pertinent times

represented to have, owned, controlled and operated both HTG Real Property

Management, Inc., and Padilla Property Corporation.

30.     The Weber Units were to be completed and ready for occupancy very

shortly thereafter, according to the correspondence between the parties, and the

representations of Defendants. After multiple amendment and extensions the

Weber Units remain incomplete and not ready for occupancy as of the date of this

Petition.

31.     Defendants, through their incompetence, neglect, and/or knowing or

intentional disregard for the adverse affects on Plaintiff, Paul Weber, have failed

and/or refused, and continue to fail and/or refuse to complete the construction of the Weber Units to the point of being ready for occupancy.

32.     Plaintiff, Paul Weber, has suffered damages based on Defendants' failure and/or refusal to complete the construction of the Weber Units so they are ready for occupancy. Further, Plaintiff, Paul Weber has suffered damages based on, and as a proximate and foreseeable result of, the delays in completing the construction of the Weber Units by Defendants.

33.     Pursuant to the terms of the agreement Plaintiff, Paul Weber was to assume the value of $57,000.00 (Fifty Seven Thousand Dollars and 00/100) towards a down payment for the development of his unit.  Based on this agreement Plaintiff, Paul Weber was to transfer into escrow this amount into an account with Land America Lawyers Title. See Exhibit "H" This money was then released to and distributed to HTG Real Property Management for the purpose of obtaining interim financing such that HTG Real Property Management would be able to complete the unit as requested by Plaintiff, Paul Weber.  HTG Real Property Management obtained its interim financing with First National Bank, who in turn requested from Plaintiff Paul Weber a Subordination Agreement creating the status of a junior lien holder . See Exhibit "I".

34.     Plaintiff, Edward Arriola, executed a contract (see Exhibit "J") on or about July 20, 2006 for the purchase of one (1) four-plex townhouses (the "Arriola Unit") from Defendant, HTG Real Property Management, Inc., which were to be constructed by Defendant, Padilla Property Corporation, in a timely fashion. Defendants Mauro Padilla and Maria Del Rosario Padilla, at all pertinent times

represented to have, owned, controlled and operated both HTG Real Property

Management, Inc., and Padilla Property Corporation.

35.    The Arriola Units were to be completed and ready for occupancy very

shortly thereafter, according to the correspondence between the parties, and the

representations of Defendants. The Arriola Units remain incomplete and not ready

for occupancy as of the date of this Petition.

36.    Defendants, through their incompetence, neglect, and/or knowing or

intentional disregard for the adverse affects on Plaintiff, Edward Arriola, have

failed and/or refused, and continue to fail and/or refuse to complete the

construction of the Arriola Units to the point of being ready for occupancy.

37.    Plaintiff, Edward Arriola, has suffered damages based on Defendants'

failure and/or refusal to complete the construction of the Arriola Units so they are

ready for occupancy. Further, Plaintiff, Edward Arriola has suffered damages

based on, and as a proximate and foreseeable result of, the delays in completing the

construction of the Arriola Units by Defendants.

38.    Pursuant to the terms of the agreement Plaintiff, Edward Arriola was to

assume the value of $75,000.00 (Seventy Five Thousand Dollars and 00/100)

towards a down payment for the development of his unit.  Based on this agreement

Plaintiff, Edward Arriola was to transfer into escrow this amount into an account

with Land America Lawyers Title. See Exhibit "K" This money was then released

to and distributed to HTG Real Property Management for the purpose of obtaining

interim financing such that HTG Real Property Management would be able to

complete the unit as requested by Plaintiff, Edward Arriola.  HTG Real Property

Management obtained its interim financing with First National Bank, who in turn requested from Plaintiff Edward Arriola a Subordination Agreement creating the status of a junior lien holder . See Exhibit "L".

39.     Plaintiff, George Heywood, executed a contract (see Exhibit "M") for the purchase of one (1) four-plex townhouses (the "Heywood Unit") from Defendant, HTG Real Property Management, Inc., which were to be constructed by Defendant, Padilla Property Corporation, in a timely fashion. Defendants Mauro Padilla and Maria Del Rosario Padilla, at all pertinent times represented to have, owned, controlled and operated both HTG Real Property Management, Inc., and Padilla Property Corporation.

40.     The Heywood Units were to be completed and ready for occupancy very shortly thereafter, according to the correspondence between the parties, and the representations of Defendants. The Heywood Units remain incomplete and not ready for occupancy as of the date of this Petition.

41.     Defendants, through their incompetence, neglect, and/or knowing or intentional disregard for the adverse affects on Plaintiff, George Heywood, have failed and/or refused, and continue to fail and/or refuse to complete the construction of the Heywood Units to the point of being ready for occupancy.

42.     Plaintiff, George Heywood, has suffered damages based on Defendants' failure and/or refusal to complete the construction of the Heywood Units so they are ready for occupancy. Further, Plaintiff, Edward Arriola has suffered damages based on, and as a proximate and foreseeable result of, the delays in completing the construction of the Heywood Units by Defendants.

43.    Pursuant to the terms of the agreement Plaintiff, George Heywood was to assume the value of $83,000.00 (Eighty Three Thousand Dollars and 00/100) towards a down payment for the development of his unit. Based on this agreement Plaintiff, George Heywood was to transfer into escrow this amount into an account with Land America Lawyers Title. This money was then released to and distributed to HTG Real Property Management for the purpose of obtaining interim financing such that HTG Real Property Management would be able to complete the unit as requested by Plaintiff, George Heywood. HTG Real Property Management obtained its interim financing with First National Bank, who in turn requested from Plaintiff George Heywood a Subordination Agreement creating the status of a junior lien holder .

44.    Plaintiff, Andrew Nguyen, executed a contract (see Exhibit "N") for the purchase of one (1) four-plex townhouses (the "Nguyen Unit") from Defendant, HTG Real Property Management, Inc., which were to be constructed by Defendant, Padilla Property Corporation, in a timely fashion. Defendants Mauro Padilla and Maria Del Rosario Padilla, at all pertinent times represented to have, owned, controlled and operated both HTG Real Property Management, Inc., and Padilla Property Corporation.

45.    The Nguyen Units were to be completed and ready for occupancy very shortly thereafter, according to the correspondence between the parties, and the representations of Defendants. The Nguyen Units remain incomplete and not ready for occupancy as of the date of this Petition.

46.     Defendants, through their incompetence, neglect, and/or knowing or intentional disregard for the adverse affects on Plaintiff, Andrew Nguyen, have failed and/or refused, and continue to fail and/or refuse to complete the construction of the Nguyen Units to the point of being ready for occupancy.

47.     Plaintiff, Andrew Nguyen, has suffered damages based on Defendants' failure and/or refusal to complete the construction of the Nguyen Units so they are ready for occupancy. Further, Plaintiff, Andrew Nguyen has suffered damages based on, and as a proximate and foreseeable result of, the delays in completing the construction of the Nguyen Units by Defendants.

48.     Pursuant to the terms of the agreement Plaintiff, Andrew Nguyen was to assume the value of $86,600.00 (Eighty Six Thousand Six Hundred Dollars and 00/100) towards a down payment for the development of his unit.  Based on this agreement Plaintiff, Andrew Nugen was to transfer into escrow this amount into an account with Land America Lawyers Title. This money was then released to and distributed to HTG Real Property Management for the purpose of obtaining interim financing such that HTG Real Property Management would be able to complete the unit as requested by Plaintiff, Andrew Nguyen.   HTG Real Property Management obtained its interim financing with First National Bank, who in turn requested from Plaintiff Andrew Nguyen a Subordination Agreement creating the status of a junior lien holder.

49.     By and through the filing of SUBSTITUTE TRUSTEE'S NOTICE OF SALE, attached hereto as Exhibit "A", which described certain property as a total 3.2 acre tract of land and SUBSTITUTE TRUSTEE'S NOTICE OF SALE,

attached hereto as Exhibit "O" which refers to Tundra Town Home Village, schedule for foreclosure Tuesday, April 7, 2009, would adversely affect all Plaintiffs. The foreclosure of the lien on this property would result in a merger of legal and equitable title to the property. As a result prior lien holders are divested of title to the property and their liens are extinguished. Following the foreclosure junior liens, such as the above referenced Plaintiffs, not satisfied from the proceeds of the sale are extinguished. *See ABN Amro Mortg. v. TCB Farm & Ranch Land,* 200 S.W. 3d 774 (Tex.App. – Fort Worth 2006, no pet.) A purchaser at a foreclosure sale is not personally liable for the payment of debts secured by any remaining liens on the property. Therefore, other lien holders cannot obtain a money judgment against such a purchaser. Rather, such lien holders are limited to judgments of foreclosure of their liens on the property. *See Blanco, Inc v. Porras,* 897 F2d 788 (5th Cir. [Tex.] 1990).

50.     Plaintiffs, Kenny Arriola, Craig Inaba, Brian Taus, Hermann Kinschner, would show unto the court at a minimum an equitable interest in certain properties attempted to be foreclosed upon by the above named substitute trustee. See Exhibit "P".

51.     During the year 2006 Plaintiffs, advanced money to Defendant, HTG Real Property Management, Inc. for the purchase of three real properties. See Exhibits "Q", "R", and "S". Defendant HTG Real Property Management, Inc., through its directors Maria Del Rosario Padilla, Mauro Joe Padilla and its agent Mauro Padilla obtained the property by using the funds from the Plaintiff to purchase the above identified properties. Plaintiffs wired approximately $200,000.00 to defendant for

property located in South Bexar County adjacent to Hwy 16, a legal description of the property is listed as exhibit "Q". Plaintiffs wired approximately $140,000.00 to defendant for the property listed as Exhibit "S", attached to this petition. Plaintiffs wired approximately $40,000.00 to defendant for the property listed at Exhibit "R" attached to this petition. Defendants' at all relevant times represented and acknowledge their understanding and arrangement to have the above identified properties titled in the name of the Plaintiffs. The representation and acknowledgments are relevant and material because the Plaintiffs would not have wired money to the Defendants if these promises were not made. The promises were fraudulent, false, and misrepresentation of Defendants true intentions, at no time did Defendants have any intentions of fulfilling their promises. The defendants made these promises with the intent that the Plaintiffs would act upon them. The Plaintiffs were unaware of the falsity of the promise and of the true intent of the Defendants. Although Plaintiffs, fully performed their respective terms of agreement, the Defendants, breached the agreement and failed to fulfill its express promises and representations.

52.  The Plaintiffs have been injured; have been deprived of its property, because the Plaintiffs relied on the promises and representations of the Defendants. In contrast, the Defendants have been unjustly enriched by being allowed to retain the Plaintiff's property. A constructive trust on the properties is the only remedy that will prevent the unjust enrichment of the defendant at the plaintiff's expense.

53.  The conduct of Defendants, as described above, was fraudulent and malicious. As such, this court has partially agreed with our finding in that an

equitable interest may exist and has allowed the standing of a Lis Pendens to     be

granted on the above mentioned properties.

### COMMON LAW FRAUD

54.    Plaintiffs further show that Defendants made material false representations

to Plaintiffs with the knowledge of their falsity or with reckless disregard of the

truth with the intention that such representations be acted upon by Plaintiffs, and

that Plaintiffs relied on these representations to their detriment.

55.    Plaintiffs would further show that Defendants concealed or failed to

disclose material facts within the knowledge of Defendants, that Defendants knew

that Plaintiffs did not have knowledge of the same and did not have equal

opportunity to discover the truth, and that Defendants intended to induce Plaintiffs

to enter into the transaction made the basis of this suit by such concealment or

failure to disclose.

56.    As a proximate result of such fraud, Plaintiffs sustained the damages

described more fully herein below.

### FRAUD IN A REAL ESTATE TRANSACTION

57.    Plaintiffs would further show that the false representations and/or promises

of Defendants constitute fraud in a real estate transaction as defined by Section

27.01 of the Texas Business and Commerce Code.

58.    Plaintiffs are therefore entitled to recover from Defendants actual damages

described more fully herein below, reasonable and necessary attorney's fees, expert

witness fees, costs for copies of depositions, and costs of court as provided by Section 27.01 of the Texas Business and Commerce Code.

## NEGLIGENCE

59.    In the course of the transactions between Plaintiffs and Defendants, Defendants owed Plaintiffs a duty, to include but is not limited to the following, properly and timely construct the all units pursuant to the terms of the contracts, and the surrounding subdivision development in a manner that placed such properties in a condition to be ready for occupancy by tenants or other persons. Included in such duty was a duty to deal with the applicable governmental authorities and their representatives in a reasonable, businesslike and courteous manner and to deal with any applicable governmental requirements in a reasonable and timely manner. In addition, such duty included the duty to deal with subcontractors and suppliers in a reasonable, businesslike, and courteous manner in order for the subcontractors' work and supplies to be provided in a complete and timely manner so that no mechanic's lien affidavits would be filed against the subject property subdivision and so that no delays are caused based on Defendants' failure to, or neglect in, dealing with such subcontractors and/or suppliers in a reasonable, businesslike, and courteous manner.

60.    Plaintiffs would show that Defendants failed to exercise ordinary care in performing such duty. The acts and/or omissions of Defendants described herein above by which Defendants breached such duty constitute a proximate cause of the

damages of Plaintiffs described more fully herein below, for which Defendants are liable to Plaintiffs.

## NEGLIGENT MISREPRESENTATION

61.     Plaintiffs would show that Defendants supplied false information in the course of their business, profession or employment, or in the course of a transaction in which Defendants have a pecuniary interest, and that such information was supplied by Defendants for the guidance of Plaintiffs in the transactions described herein above. Defendants failed to exercise reasonable care or competence in obtaining or communicating such information. Plaintiffs aver that Plaintiffs suffered pecuniary loss, described more fully herein below, which was proximately caused by Plaintiffs' justifiable reliance on such information.

62.     Plaintiffs therefore assert a cause of action for negligent misrepresentation against Defendants, as provided by Federal Land Bank Association of Tyler v. Sloane, 825 S.W.2d 439 (Tex. 1991).

## NEGLIGENT HIRING, SUPERVISION, AND/OR MANAGEMENT

63.     Plaintiffs would show that Defendants owed a duty to clients and customers, including Plaintiffs, to exercise ordinary care in the hiring of competent employees, and in the supervision and management of their employees.

64.     Plaintiffs would further show that Defendants failed to use ordinary care in these respects, including but not limited to failing to properly supervise their personnel, failing to implement adequate safeguards to prevent the situation that

resulted in Plaintiffs' damages, and failing to provide adequate oversight for such employees. These conditions created an environment in which misrepresentations to clients and customers were likely and reasonably foreseeable to occur, and which in fact did occur in the course of the transactions involving Plaintiffs described herein above, which proximately caused the damages sustained by Plaintiffs herein, and for which Plaintiffs hereby sue.

## BREACH OF CONTRACT

65.    Plaintiffs would further show that the actions and/or omissions of Defendants described herein above constitute breach of contract, which proximately caused the direct and consequential damages of Plaintiffs described herein below, and for which Plaintiffs hereby sue.

## CONSPIRACY

66.    Plaintiffs would further show that each of the Defendants, together with other persons not currently named as parties herein, conspired to delay, stall, and otherwise prevent the completion of the subject property subdivision in a reasonable, businesslike, and timely manner, as described herein, and such actions on the part of all the named Defendants facilitated the actions and inactions complained of herein that form the basis of the causes of action herein alleged against each of the Defendants. Based on such conspiracy, the actions and/or inactions of each and every named Defendant are attributable to the others and form the basis of the causes of action herein alleged against all Defendants.

## AGENCY

67.    At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendants, occurred within the scope of the actual or apparent authority of such person on behalf of said Defendants.

68.    Said Defendants are therefore liable to Plaintiffs for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## RESPONDEAT SUPERIOR

69.    At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of any employee of Defendants, occurred within the scope of the general authority and for the accomplishment of the objectives for which such employee was employed.

70.    Defendants are therefore liable to Plaintiffs for the acts and/or omissions of any such employee complained of herein under the doctrine of respondeat superior.

## ECONOMIC AND ACTUAL DAMAGES

71.    Each Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

      a.    Out-of-pocket expenses.

      b.    Loss of use of the applicable units.

    c.   Lost profits from the rental of the units.

    d.   Interest and/or finance charges assessed against and paid by Plaintiffs.

    e.   Loss of the "benefit of the bargain."

    f.   Diminished or reduced market value.

    g.   Costs of repairs.

    h.   Remedial costs and/or costs of completion.

    i.   Reasonable and necessary engineering, legal, and/or consulting fees.

## DECEPTIVE TRADE PRACTICE

72.    Plaintiffs would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices-Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

73.    <u>Unconscionable Action or Course of Action</u>. Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs with respect to Texas real estate in general, and specifically with respect to the subject property construction, to a grossly unfair degree.

74.    <u>Violations of Section 17.46(b)</u>. Defendants violated Section 17.46(b) of the Texas Business and Commerce Code, in that Defendants:

a.  caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

b.  caused confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

c.  represented that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

d.  represented that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, or secondhand;

e.  represented that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

f.  advertised goods or services with intent not to sell them as advertised;

g.  represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

h.  misrepresented the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction;

i.  represented that work or services have been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced; and

j.  failed to disclose information concerning goods or services which was known at the time of the transaction with the intention to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

75. <u>Breach of Warranties.</u> Plaintiffs would show that the following warranties were breached and therefore actionable under Section 17.50(a)(2) of the Texas Business and Commerce Code:

a.  the implied warranty of fitness for a particular purpose; and

b.  the implied warranty of good and workmanlike performance.

76. <u>Producing Cause.</u> Plaintiffs would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages more fully described herein below.

77. <u>Reliance.</u> Plaintiffs would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Plaintiffs to Plaintiffs' detriment.

## MULTIPLE DAMAGES

78.  Each Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

79.  Plaintiffs would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendants had actual   awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

80.     Plaintiffs further aver that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

81.     Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.


## EXEMPLARY DAMAGES

82.     Plaintiffs would further show that the acts and omissions of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiffs. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery from Defendants for exemplary damages as provided by Section 41.003(1) of the Texas Civil Practice and Remedies Code and by Section 27.01 of the Texas Business and Commerce Code.


## RESCISSION AND OTHER ORDERS TO RESTORE

83.     Pursuant to Section 17.50(b)(3) of the Texas Business and Commerce Code, Plaintiffs request that the Court rescind the transaction on which this complaint is based and enter appropriate orders necessary to restore to Plaintiffs money and/or property acquired in violation of said Act, including but not limited

to: An order requiring Defendants to pay restitution to Plaintiffs in an amount far exceeding the minimum jurisdictional limits of this court.

## ATTORNEY'S FEES

84.    Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein, including all fees necessary in the vent of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Section 27.01(e) of the Texas Business and Commerce Code; (c) Chapter 38 of the Texas Civil Practice and Remedies Code; and, (d) common law.

## PRAYER

85.    **WHEREFORE, PREMISES CONSIDERED,** Plaintiffs, respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants, jointly and severally, for the economic and actual damages requested herein above in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiffs may be entitled at law or in equity, whether pled or un-pled.

Respectfully Submitted,

MARTINEZ & NELSON, L.L.P.
Riverview Towers
111 Soledad, Suite 300
San Antonio, Texas 78205
Phone: (210) 299-7621
Facsimile: (210) 299-7738



Ernesto Martinez, Jr.
State Bar No. 24047591
Attorney for Plaintiffs
Gregory Halprin, Les
Klingerman, Paul Weber, George
Heywood, Andrew Nguyen, Edward
Arriola, Kenny Arriola, Craig Inaba,
Brian Taus, Hermann Kinschner

CAUSE NO. _____

| | | |
|---|---|---|
| GREGORY HALPRIN, LES KLINGERMAN, PAUL WEBER, GEORGE HEYWOOD, EDWARD ARRIOLA, KENNY ARRIOLA, CRAIG INABA, BRIAN TAUS, HERMANN KINSCHNER<br>   *Plaintiffs*<br><br>v.<br><br>FIRST NATIONAL BANK, ERIC SHERER in his official capacity as TRUSTEE, MIKE MALDONODO in his official capacity with First National Bank, HTG REAL PROPERTY MANAGEMENT, INC., PADILLA PROPERTY CORPORATION, MARIA DE ROSARIO PADILLA, MAURO T. PADILLA<br>   *Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT<br><br><br>_____ JUDICIAL DISTRICT<br><br><br><br>BEXAR COUNTY, TEXAS |

VERIFICATION

THE STATE OF TEXAS      §
                                      §
COUNTY OF BEXAR        §

BEFORE ME, the undersigned authority, on this day personally appeared Ernesto Martinez, Jr., who being duly sworn, deposed as follows:

"I, the undersigned, am over 18 years of age, of sound mind, capable of making this Affidavit, and am personally acquainted with the facts stated herein;

I, Ernesto Martinez, Jr., am the attorney of record for the PLAINTIFFS in the above captioned case. I have personal knowledge of the facts contained in the attached Plaintiffs Original Petition".

_____
Ernesto Martinez, Jr.,

SUBSCRIBED AND SWORN to before me the undersigned authority on this the ___ 16th ___ day of April, 2009, to certify which witness my hand and seal of office.

TERESA R. QUEZADA
Notary Public
State of Texas
Comm. Exp. 04-07-2012

NOTARY PUBLIC IN AND FOR THE
STATE OF T E X A S