

# EXHIBIT "B"

1225001073
7147617521      P.02/21



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC) 02-13-06
## NEW HOME CONTRACT
(Incomplete Construction)
NOTICE: Not For Use For Condominium Transactions or Closings Prior to Completion of Construction

**1. PARTIES:** HTG Real Property Management, Inc. _____ (Seller) agrees to
sell and convey to   Greg Halpin and/or assigns _____ (Buyer) and
Buyer agrees to buy from Seller the Property described below.

**2. PROPERTY:** Lot _____ Block _____
Addition, City of   San Antonio, _____ County of   Bexar,
Texas, known as   6733 Montgomery Dr 78239 (Proposed Building #13).
(address/zip code), or as described on attached exhibit, together with: (i) improvements, fixtures and all other property described in the Construction Documents; and (ii) all rights, privileges and appurtenances thereto, including but not limited to: permits, easements, and cooperative and association memberships. All property sold by this contract is called the "Property".

**3. SALES PRICE:**
A. Cash portion of Sales Price payable by Buyer at closing.............. $57,000.00
B. Sum of all financing described below (excluding any loan
funding fee or mortgage insurance premium)...................... $228,000.00
C. Sales Price (Sum of A and B)................................ $285,000.00

**4. FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
☒ A. THIRD PARTY FINANCING: One or more third party mortgage loans in the total amount of  $ _____
(excluding any loan funding fee or mortgage insurance premium).
  (1)  Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s), this contract will terminate and the earnest money will be refunded to Buyer.
  (2) Financing Approval: (Check one box only)
    ☒(a) This contract is subject to Buyer being approved for the financing described in the attached Third Party Financing Condition Addendum.
    ☐(b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
☐ B. ASSUMPTION: The assumption of the unpaid principal balance of one or more promissory notes described in the attached TREC Loan Assumption Addendum.
☐ C. SELLER FINANCING: A promissory note from Buyer to Seller of  $ _____
secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a mortgagee policy of title insurance.

**5. EARNEST MONEY:** Upon execution of this contract by both parties, Buyer shall deposit  $10,000.00
as earnest money with   Land America Lawyers Title,
as escrow agent, at   14350 Northbrook Dr. #150 San Antonio, TX 78232 _____ (address).
Buyer shall deposit additional earnest money of  $47,000.00 _____ with escrow agent within
  5 _____ days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
A. TITLE POLICY: Seller shall furnish to Buyer at ☒Seller's    ☐Buyer's expense an owner policy of title insurance
(Title Policy) issued by   Land America Lawyers Title
14350 Northbrook Dr. #150 San Antonio, TX 78232 _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
  (1) Restrictive covenants common to the platted subdivision in which the Property is located.
  (2) The standard printed exception for standby fees, taxes and assessments.
  (3) Liens created as part of the financing described in Paragraph 4.
  (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
  (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
  (6) The standard printed exception as to marital rights.
  (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
  (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read, "shortages in area".

Initialed for Identification by Buyer _____ and Seller _____      TREC NO. 23-6
Forms by zipContract LLC  Steamboat Springs, CO      www.zipcontract.com   copyright 2006

04/04/2007  15:51      2104909361      LAW OFFICES      PAGE 02/23

Contract Concerning   6733 Montgomery Dr 78139 (Proposed Building #13)                    Page 2 of 9    02-13-06
                                    (Address of Property)

**B. COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

**C. SURVEY:** The survey must be made after the Substantial Completion Date by a registered professional land surveyor acceptable to the Title Company and any lender.
(Check one box only)
☒ **(1) At least** ____30____ days prior to the Closing Date, Seller, at Seller's expense, shall provide a new survey to Buyer.
☐ **(2) At least** _____ days prior to the Closing Date, Buyer, at Buyer's expense, shall obtain a new survey. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

**D. OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: __multi-residential__

Buyer must object not later than (i) the Closing Date) or (ii) ___10___ days after Buyer receives the Commitment, Exception Documents, and the survey, whichever is earlier. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

**E. TITLE NOTICES:**
**(1) ABSTRACT OR TITLE POLICY:** Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
**(2) MANDATORY OWNERS' ASSOCIATION MEMBERSHIP:** The Property ☒ is   ☐ is not subject to mandatory membership in an owners' association. If the Property is subject to mandatory membership in an owners' association, Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community in which the Property is located, you are obligated to be a member of the owners' association. Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the owners' association. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property. If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in an Owner's Association should be used.
**(3) STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
**(4) TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
**(5) ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

Initialed for identification by Buyer ____ and Seller ___ ___                    TREC NO. 23-6

Forms by zipForm LLC (Zipwriter Systems, CO)    www.zipContract.com    copyright 2006

MAR-15-2007  11:21        YAMAHA MOTOR CORP.                    7147617521      P.04/21

Contract Concerning    6730 Montgomery Dr 78259 (Proposed Building #13)          Page 3 of 9    02-13-06
                                    (Address of Property)

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water and sewer to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing or purchase of the real property.

(7) PUBLIC IMPROVEMENTS DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

7. PROPERTY CONDITION:

A. ACCESS AND INSPECTIONS: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections.

B. CONSTRUCTION DOCUMENTS: Seller shall complete all improvements to the Property with due diligence in accordance with the Construction Documents. "Construction Documents" means the plans and specifications, the finish out schedules, any change orders, and any allowances related to the plans and specifications, finish out schedules, and change orders. The Construction Documents have been signed by the parties and are incorporated into this contract by reference.

C. COST ADJUSTMENTS: All change orders must be in writing. Increase in costs resulting from change orders or items selected by Buyer which exceed the allowances specified in the Construction Documents will be paid by Buyer as follows:    Buyer to repay of any increase of cost due to request orders (upgrades or changes)

A decrease in costs resulting from change orders and unused allowances will reduce the Sales Price, with proportionate adjustments to the amounts in Paragraphs 3A and 3B as required by lender.

D. BUYER'S SELECTIONS: If the Construction Documents permit selections by Buyer, Buyer's selections will conform to Seller's normal standards as set out in the Construction Documents or will not, in Seller's judgment, adversely affect the marketability of the Property. Buyer will make required selections within    3    days after notice from Seller.

E. COMPLETION: Seller must commence construction no later than    150    days after the effective date of this contract. The improvements will be substantially completed in accordance with the Construction Documents and ready for occupancy not later than    July 15    20  07.  The improvements will be deemed to be substantially completed in accordance with the Construction Documents upon the final inspection and approval by all applicable governmental authorities and any lender (Substantial Completion Date). Construction delays caused by acts of God, fire or other casualty, strikes, boycotts or non-availability of materials for which no substitute of comparable quality and price is available will be added to the time allowed for substantial completion of the construction. However, in no event may the time for substantial completion extend beyond the Closing Date. Seller may substitute materials, equipment and appliances of comparable quality for those specified in the Construction Documents.

F. WARRANTIES: Except as expressly set forth in writing or in this contract, a separate writing, or provided by law, Seller makes no other express warranties. Seller shall to assign to Buyer at closing all assignable manufacturer warranties.

G. INSULATION: As required by Federal Trade Commission Regulations, the information relating to the insulation installed or to be installed in the improvements at the Property is: (check only one box below)
☒ (1) as shown in the attached specifications.
☐ (2) as follows:
    (a) Exterior walls of improved living areas: insulated with _____
    insulation to a thickness of _____ inches which yields an R-Value of _____

    (b) Walls in other areas of the home: insulated  with _____

Initialed for identification by Buyer _____ and Seller _____              TREC NO. 23-6

Forms by zipForm LLC Shawnee Springs CO     | www.zipForm.com     copyright 2006

PAGE 04/23                    LAW OFFICES              218499893361    15:51  04/04/2007

MAR-15-2007  11:22      YAMAHA MOTOR CORP.                    7147617521    P.05/21

| Contract Concerning | 6733 Montgomery Dr TH39 (Proposed Building #13) | Page 4 of 9   02-13-06 |
|---|---|---|

(Address of Property)

Insulation to a thickness of _____ inches which yields an R-Value of _____
(c) Ceilings in improved living areas: insulated with
insulation to a thickness of _____ inches which yields an R-Value of _____
(d) Floors of improved living areas not applied to a slab foundation: insulated with insulation to a thickness of _____ inches which yields an R-Value of _____.
(e) Other insulated areas: insulated with _____ insulation to a
thickness of _____ inches which yields an R-Value of _____

All stated R-Values are based on information provided by the manufacturer of the insulation.
**H. ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.
**I. SELLER'S DISCLOSURE:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
   (1) any flooding of the Property which has had a material adverse effect on the use of the Property;
   (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
   (3) any environmental hazards or conditions which materially affect the Property;
   (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
   (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
   (6) any threatened or endangered species or their habitat affecting the Property.
**8. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.
**9. CLOSING:**
A. The closing of the sale will be on or before _____July 15,_____ 20 _07_, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
B. At closing:
   (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
   (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
   (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.
C. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.
D. All covenants, representations and warranties in this contract survive closing.
**10. POSSESSION:** Seller shall deliver to Buyer possession of the Property: ☒ upon closing and funding ☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership or possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.
**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)
   1. buyer to receive 2% credit towards closings costs if 2nd building is purchased

2. *Buyer can cancel the contract for whatever reason before completion of construction and receive his earnest money back, subject to having his earnest money withheld by seller up to 120 days or until a replacement buyer can be found, whichever comes first. This clause was included on original Purchase Deposit Agreement. JM*

Initiated for identification by Buyer _____ and Seller _____        **TREC NO. 23-6**
Enema by autContract LLC Cheasmbaut Spring CO        www.awContract.com        copyright 2006

PAGE 05/23        LAW OFFICES        2184909361        15:51    04/04/2007

MAR-15-2007  11:22          YAMAHA MOTOR CORP.                    7147617521        P.06/21

| Contract Concerning     6733 Montgomery Dr 78239 (Proposed Building #13) | Page 5 of 9    02-13-06 |
|---|---|

(Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
  (1) Expenses payable by Seller (Seller's Expenses):
    (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
    (b) Seller shall also pay an amount not to exceed      $N/A            to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veteran's Housing Assistance Program or other governmental loan programs; and then to other Buyer's expenses as allowed by lender.
  (2) Expenses payable by Buyer (Buyer's Expenses):
    (a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).
    (b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; mortgagee title policy with endorsements required by lender; loan-related inspection fees; photos, amortization schedules, one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection, underwriting fee; wire transfer fee; expenses incident to any loan, and other expenses payable by Buyer under this contract.
B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender.
C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges not expressly prohibited by FHA, VA, Texas Veteran's Housing Assistance Program or other governmental loan program regulations.
**13. PRORATIONS AND ROLLBACK TAXES:**
A. PRORATIONS: Taxes for the current year, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.
B. ROLLBACK TAXES: If Seller's change in use of the Property prior to closing or denial of a special use valuation on the Property results in additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.
**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 45 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any obligations of Seller under this contract.
**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due to factors beyond Seller's control, Seller fails to substantially complete the improvements by the Closing Date or fails within the time allowed to make any non casualty repairs or deliver the Commitment, or survey, if required of Seller, Buyer may (a) extend the time for performance up to 45 days and the Closing Date will be extended as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.
**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Subject to applicable law, any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion ☒will ☐ will not be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

| Initialed for identification by Buyer ___ and Seller ___ | TREC NO. 23-6 |
|---|---|

Forms by ___ Contract LLC Clearhead Systems CO          copyright 2006

04/04/2007  15:51    2104909361          LAW OFFICES                    PAGE  06/23

MAR-15-2007 11:23    YAMAHA MOTOR CORP.                7147617521    P.07/21

Contract Concerning    6735 Montgomery Dr 78239 (Proposed Building #13)          Page 6 of 9    02-13-05
(Address of Property)

**17. ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages of three times the amount of the earnest money.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** Seller represents that as of the Closing Date there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

To Buyer at:  
_Gregory Halprin_  
_13122 Cortina_  
_Tustin, CA 92782_  
Telephone: _(714) 505-1928_  
Facsimile: ( )  
E-Mail:

To Seller at:  
HTG REAL PROPERTY MGMT, INC.  
24165 IH 10 W STE 217-408  
SAN ANTONIO, TX 78257  
Telephone: (210) 872-4089  
Facsimile: ( )  
E-Mail:

Initialed for Identification by Buyer ___ and Seller ___          TREC NO. 23-6

Forms by zipForm LLC Dreamhost Springs, CO     www.zipform.com    copyright 2006

PAGE 07/23        LAW OFFICES        2104909361    15:51    04/04/2007

MAR-15-2007  11:23       YAMAHA MOTOR CORP.              7147617521     P.08/21

Contract Concerning _____6733 Montgomery Dr 78230 (Proposed Building #13)_____   Page 7 of 9    02-13-06
                                    (Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

☒ Third Party Financing Condition Addendum          ☐ Addendum for "Back-Up" Contract

☐ Seller Financing Addendum                          ☐ Environmental Assessment, Threatened or
                                                       Endangered Species and Wetlands Addendum

☐ Addendum for Property Subject to Mandatory         ☐ Addendum for Coastal Area Property
   Membership in an Owners' Association

☐ Buyer's Temporary Residential Lease                ☐ Addendum for Property Located Seaward of the
                                                       Gulf Intracoastal Waterway

☐ Addendum for Sale of Other Property by Buyer       ☐ Other (list): _____
                                                       _____

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller  $_____ (Option Fee) within 2 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have unrestricted right to terminate this contract. If Buyer gives notice of termination within the time specified, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will   ☐ will not be credited to the Sales Price at closing. Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**24. CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's                                              Seller's
Attorney is:                                         Attorney is:

_____                     _____

_____                     _____

Telephone:  (_____)_____                     Telephone:  (_____)_____

Facsimile:  (_____)_____                     Facsimile:  (_____)_____

E-Mail: _____                     E-Mail: _____

Initialed for identification by Buyer _____ and Seller _____          TREC NO. 23-6
Forms by zipForm LLC Steamboat Springs CO      www.zipForm.com      copyright 2006

MAR-15-2007 11:23      YAMAHA MOTOR CORP.              7147617521    P.09/21

| Contract Concerning | 6733 Montgomery Dr 78239 (Proposed Building #13) | Page 8 of 9 | 02-13-06 |

(Address of Property)

EXECUTED the  19  day of  March      20  07  (EFFECTIVE DATE)

(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from the performance of this contract. If you have a complaint concerning a construction defect arising from the performance of this contract and that defect has not been corrected through normal warranty service, you must provide the notice required by Chapter 27 of the Texas Property Code to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law or initiate arbitration. The notice must refer to Chapter 27 of the Texas Property Code and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004 of the Texas Property Code.

Buyer Greg Halpin

Buyer

Seller HTG REAL PROPERTY MGMT, INC.

Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544

Initialed for identification by Buyer ___ and Seller ___    TREC NO. 23-6

MAR-15-2007  11:23      YAMAHA MOTOR CORP.                7147617521      P.10/21

| Contract Concerning | Page 9 of 9 |
|---|---|
| (Address of Property) | 03-13-06 |

### BROKER INFORMATION AND RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total sales price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

| Other Broker: | License No. | Listing Broker: | License No. |
|---|---|---|---|
| represents ☐ Buyer only as Buyer's Agent<br>☐ Seller as Listing Broker's subagent | | represents ☐ Seller and Buyer as an intermediary<br>☐ Seller only as Seller's agent | |
| Associate | Telephone | Listing Associate | Telephone |
| Broker's Address | | Listing Associate's Office Address | Facsimile |
| City, State, Zip | | City, State, Zip | |
| Facsimile | | Email Address | |
| Email Address | | Selling Associate | Telephone |
| | | Selling Associate's Office Address | Facsimile |
| | | City, State, Zip | |
| | | Email Address | |

### OPTION FEE RECEIPT

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

| Seller or Listing Broker | Date |
|---|---|

### CONTRACT AND EARNEST MONEY RECEIPT

Receipt of ☑ Contract and ☐ $ _____ Earnest Money in the form of _____ only
is acknowledged.

Escrow Agent: Lawyers Title /Dan Brown                    Date: 3·19·07

By: Monica R Rodriguez              monicarodriquez@landam.com
                                    E-mail Address

14380 Northbrook Dr #150           Telephone: (219 490 1251
Address

S.A. Tx   78232                    Facsimile: (219 490 4754
City, State, Zip

Initialed for identification by Buyer ___ and Seller ___        TREC NO. 23-6

Forms by zipForm LLC Shawnwat Spring, CO        www.zipForm.com        copyright 2006

LAW OFFICES      15:51  2102490936I      04/04/2007      PAGE  10/23

MAR-15-2007  11:24    YAMAHA MOTOR CORP.    7147617521    P.11/21

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

**THIRD PARTY FINANCING CONDITION ADDENDUM**

TO CONTRACT CONCERNING THE PROPERTY AT



6733 Montgomery  San Antonio, TX Building #13
(Street Address and City)

Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing (Financing Approval). Buyer shall furnish all information and documents required by lender for Financing Approval. Financing Approval will be deemed to have been obtained when (1) the terms of the loan(s) described below are available and (2) lender determines that Buyer has satisfied all of lender's financial requirements (those items relating to Buyer's assets, income and credit history). If Buyer cannot obtain Financing Approval, Buyer may give written notice to Seller within 30 ____ days after the effective date of this contract and this contract will terminate and the earnest money will be refunded to Buyer. If Buyer does not give such notice within the time required, this contract will no longer be subject to Financing Approval. Time is of the essence for this paragraph and strict compliance with the times for performance is required.

*NOTE: Financing Approval does not include approval of lender's underwriting requirements for the Property, as specified in Paragraph 4.A.(1) of the contract.*

Each note must be secured by vendor's and deed of trust liens.

**CHECK APPLICABLE BOXES:**

☒ **A. CONVENTIONAL FINANCING:**
  ☒ (1) A first mortgage loan in the principal amount of ___$228,000___ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed ___10%___ per annum for the first ___5___ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ___2%___ of the loan.
  ☐ (2) A second mortgage loan in the principal amount of ___$_____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed ___% per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ___% of the loan.

☐ **B. TEXAS VETERANS' HOUSING ASSISTANCE PROGRAM LOAN:** A Texas Veterans Housing Assistance Program Loan of $_____ for a period of at least _____ years at the interest rate established by the Texas Veterans Land Board.

☐ **C. FHA INSURED FINANCING:** A Section _____ FHA insured loan of not less than $_____ (excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed ___% per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ___% of the loan. As required by HUD-FHA, if FHA valuation is unknown, *"It is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than ____$_____.*

Initialed for Identification by  Buyer _____ and Seller _____    TREC NO. 40-2

Forms by zipForm LLC, Chamber Springs, CO    www.zipForm.com    copyright 2006

PAGE 11/23    LAW OFFICES    21049809361    15:51  04/04/2007

MAR-15-2007 11:28     YAMAHA MOTOR CORP.      7147617521     P.02/03

---

**Third Party Financing Condition Addendum Concerning**         Page 2 of 2
6733 Montgomery San Antonio, TX #13
(Address of Property)

*The purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable."*

**NOTE: HUD 92564-CN "For Your Protection: Get a Home Inspection" must be signed and dated by Buyer and attached to this Addendum.**

☐ **D. VA GUARANTEED FINANCING:** A VA guaranteed loan of not less than $ _____
(excluding any financed Funding Fee), amortizable monthly for not less than _____ years,
with interest not to exceed _____ % _____ per annum for the first _____ year(s) of the loan with
Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed _____ ¼
of the loan.

**VA NOTICE TO BUYER:** *"It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs."*

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating only to the status of Financing Approval of Buyer.

_____         _____
Buyer Greg Halpin                Seller HTG Real Property Management, Inc

_____         _____
Buyer                                    Seller

---

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 40-2. This form replaces TREC No. 40-1.

**TREC NO. 40-2**

Forms by zipForm LLC  Steamboat Springs CO      www.zipForm.com      copyright 2006

PAGE 12/23      LAW OFFICES      2104909361    15:51    04/04/2007

*1225001074*

MAR-15-2007  11:24        YAMAHA MOTOR CORP.                    ?147617521        P.12/21



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC) 02-13-06
**NEW HOME CONTRACT**
(Incomplete Construction)
NOTICE: Not For Use For Condominium Transactions or Closings Prior to Completion of Construction

**1. PARTIES:** HTG Real Property Management, Inc. _____ (Seller) agrees to
sell and convey to    Greg Halprin and/or assigns _____ (Buyer) and
Buyer agrees to buy from Seller the Property described below.

**2. PROPERTY: Lot** _____ **Block** _____
Addition, City of    San Antonio, _____ County of    Bexar, _____
Texas, known as    6733 Montgomery Dr 78239 (Proposed Building #16) _____
(address/zip code), or as described on attached exhibit, together with: (i) improvements, fixtures and all other property
described in the Construction Documents; and (ii) all rights, privileges and appurtenances thereto, including but not limited
to: permits, easements, and cooperative and association memberships. All property sold by this contract is called the
"Property".

**3. SALES PRICE:**
A. Cash portion of Sales Price payable by Buyer at closing. . . . . . . . . . . . . . . . .    $57,000.00
B. Sum of all financing described below (excluding any loan
   funding fee or mortgage insurance premium) . . . . . . . . . . . . . . . . . . . . . . .    $228,000.00
C. Sales Price (Sum of A and B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    $285,000.00

**4. FINANCING:** The portion of Sales Price not payable in cash will be paid as follows: (Check applicable boxes below)
☒ **A. THIRD PARTY FINANCING:** One or more third party mortgage loans in the total amount of    $ _____
(excluding any loan funding fee or mortgage insurance premium).
  (1)  Property Approval: If the Property does not satisfy the lenders' underwriting requirements for the loan(s), this
       contract will terminate and the earnest money will be refunded to Buyer.
  (2)  Financing Approval: (Check one box only)
       ☒ (a) This contract is subject to Buyer being approved for the financing described in the attached Third Party
            Financing Condition Addendum.
       ☐ (b) This contract is not subject to Buyer being approved for financing and does not involve FHA or VA financing.
☐ **B. ASSUMPTION:** The assumption of the unpaid principal balance of one or more promissory notes described in the
attached TREC Loan Assumption Addendum.
☐ **C. SELLER FINANCING:** A promissory note from Buyer to Seller of    $ _____
secured by vendor's and deed of trust liens, and containing the terms and conditions described in the attached TREC
Seller Financing Addendum. If an owner policy of title insurance is furnished, Buyer shall furnish Seller with a
mortgagee policy of title insurance.

**5. EARNEST MONEY:** Upon execution of this contract by both parties, Buyer shall deposit    $10,000.00
as earnest money with    Land America Lawyers Title _____
as escrow agent, at    14350 Northbrook Dr. #150 San Antonio, TX 78232 _____ (address).
Buyer shall deposit additional earnest money of    $47,000.00 _____ with escrow agent within
   5    days after the effective date of this contract. If Buyer fails to deposit the earnest money as required by
this contract, Buyer will be in default.

**6. TITLE POLICY AND SURVEY:**
A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's    ☐ Buyer's expense an owner policy of title insurance
(Title Policy) issued by    Land America Lawyers Title _____
14350 Northbrook Dr. #150 San Antonio, TX 78232 _____ (Title Company) in the amount of the Sales Price,
dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the
promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
  (1) Restrictive covenants common to the platted subdivision in which the Property is located.
  (2) The standard printed exception for standby fees, taxes and assessments.
  (3) Liens created as part of the financing described in Paragraph 4.
  (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
  (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
  (6) The standard printed exception as to marital rights.
  (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
  (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or
      protrusions, or overlapping improvements. Buyer, at Buyer's expense, may have the exception amended to read,
      "shortages in area".

Initialed for identification by Buyer _____ and Seller _____        TREC NO. 23-6
Forms by zipForm LLC Shawboat Springs, CD        www.zipForm.com        copyright 2006

PAGE 13/23        LAW OFFICES        2106909361        15:51  04/04/2007

MAR-15-2007 11:25        YAMAHA MOTOR CORP.                7147617521    P.13/21

Contract Concerning    6733 Montgomery Dr 78239 (Proposed Building #1s)                Page 2 of 9    02-23-06
                              (Address of Property)

**B. COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or the Closing Date, whichever is earlier.

**C. SURVEY:** The survey must be made after the Substantial Completion Date by a registered professional land surveyor acceptable to the Title Company and any lender.
(Check one box only)
☒ (1) At least ___30___ days prior to the Closing Date, Seller, at Seller's expense, shall provide a new survey to Buyer.
☐ (2) At least _____ days prior to the Closing Date, Buyer, at Buyer's expense, shall obtain a new survey. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

**D. OBJECTIONS:** Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (8) above; or which prohibit the following use or activity: ___multi-residential___

Buyer must object not later than (I) the Closing Date) or (II) ___10___ days after Buyer receives the Commitment, Exception Documents, and the survey, whichever is earlier. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure the timely objections of Buyer or any third party lender within 15 days after Seller receives the objections and the Closing Date will be extended as necessary. If objections are not cured within such 15 day period, this contract will terminate and the earnest money will be refunded to Buyer unless Buyer waives the objections.

**E. TITLE NOTICES:**
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.
(2) MANDATORY OWNERS' ASSOCIATION MEMBERSHIP: The Property ☒ is  ☐ is not subject to mandatory membership in an owners' association. If the Property is subject to mandatory membership in an owners' association, Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community in which the Property is located, you are obligated to be a member of the owners' association. Restrictive covenants governing the use and occupancy of the Property and a dedicatory instrument governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instrument may be obtained from the county clerk. You are obligated to pay assessments to the owners' association. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of the Property. If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in an Owner's Association should be used.
(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.
(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.
(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

Initialed for Identification by Buyer _____ and Seller _____        TREC NO. 23-6
Forms by zyForms, LLC Greenbay Spring, CO        www.zyContract.com        copyright 2006

04/04/2007  15:51    2104989361        LAW OFFICES        PAGE 14/23

MAR-15-2007  11:25        YAMAHA MOTOR CORP.                    7147617521    P.14/21

Contract Concerning    6723 Montgomery Dr 78239 (Proposed Building #14)         Page 3 of 9    02-13-06
                              (Address of Property)

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water and sewer to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing or purchase of the real property.

(7) PUBLIC IMPROVEMENTS DISTRICTS: If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

**7. PROPERTY CONDITION:**

A. ACCESS AND INSPECTIONS: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections.

B. CONSTRUCTION DOCUMENTS: Seller shall complete all improvements to the Property with due diligence in accordance with the Construction Documents. "Construction Documents" means the plans and specifications, the finish out schedules, any change orders, and any allowances related to the plans and specifications, finish out schedules, and change orders. The Construction Documents have been signed by the parties and are incorporated into this contract by reference.

C. COST ADJUSTMENTS: All change orders must be in writing. Increase in costs resulting from change orders or items selected by Buyer which exceed the allowances specified in the Construction Documents will be paid by Buyer as follows:    Buyer to pay in advance of any increase of cost due to request orders (upgrades or changes)

A decrease in costs resulting from change orders and unused allowances will reduce the Sales Price, with proportionate adjustments to the amounts in Paragraphs 3A and 3B as required by lender.

D. BUYER'S SELECTIONS: If the Construction Documents permit selections by Buyer, Buyer's selections will conform to Seller's normal standards as set out in the Construction Documents or will not, in Seller's judgment, adversely affect the marketability of the Property, Buyer will make required selections within    3    days after notice from Seller.

E. COMPLETION: Seller must commence construction no later than    150    days after the effective date of this contract. The improvements will be substantially completed in accordance with the Construction Documents and ready for occupancy not later than    July 15    , 20    07    . The improvements will be deemed to be substantially completed in accordance with the Construction Documents upon the final inspection and approval by all applicable governmental authorities and any lender (Substantial Completion Date). Construction delays caused by acts of God, fire or other casualty, strikes, boycotts or non-availability of materials for which no substitute of comparable quality and price is available will be added to the time allowed for substantial completion of the construction. However, in no event may the time for substantial completion extend beyond the Closing Date. Seller may substitute materials, equipment and appliances of comparable quality for those specified in the Construction Documents.

F. WARRANTIES: Except as expressly set forth in writing or in this contract, a separate writing, or provided by law, Seller makes no other express warranties. Seller shall to assign to Buyer at closing all assignable manufacturer warranties.

G. INSULATION: As required by Federal Trade Commission Regulations, the information relating to the insulation installed or to be installed in the Improvements at the Property is: (check only one box below)
☒ (1) as shown in the attached specifications.
☐ (2) as follows:
    (a) Exterior walls of improved living areas: insulated with _____ insulation to a thickness of _____ inches which yields an R-Value of _____.
    (b) Walls in other areas of the home, insulated with _____

Initialed for Identification by Buyer _____ and Seller _____         TREC NO. 23-6

MAR-15-2007  11:28    YAMAHA MOTOR CORP.    7147617521    P.03/03

Contract Concerning    6733 Montgomery Dr 78230 (Proposed Building #14)    Page 4 of 9    02-13-95
    _____(Address of Property)_____

Insulation to a thickness of _____ inches which yields an R-Value of _____
    (c) Ceilings in improved living areas: insulated with
insulation to a thickness of _____ inches which yields an R-Value of _____
    (d) Floors of improved living areas not applied to a slab foundation: insulated with insulation to a thickness of
_____ inches which yields an R-Value of _____
    (e) Other insulated areas: insulated with
thickness of _____ inches which yields an R-Value of _____    Insulation to b

All stated R-Values are based on information provided by the manufacturer of the insulation.
**H. ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.
**I. SELLER'S DISCLOSURE:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
    (1) any flooding of the Property which has had a material adverse affect on the use of the Property;
    (2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
    (3) any environmental hazards or conditions which materially affect the Property;
    (4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
    (5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
    (6) any threatened or endangered species or their habitat affecting the Property.
**8. BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.
**9. CLOSING:**
**A.** The closing of the sale will be on or before _____July 15,_____ 20 _07,_____ or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
**B.** At closing:
    (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
    (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
    (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents required of them by this contract, the Commitment or law necessary for the closing of the sale and the issuance of the Title Policy.
**C.** Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.
**D.** All covenants, representations and warranties in this contract survive closing.
**10. POSSESSION:** Seller shall deliver to Buyer possession of the Property: ☒ upon closing and funding
☐ according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership or possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.
**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit licensees from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)
    1. buyer to receive 2% credit towards closing costs if 2nd building is purchased

*[handwritten]* 2. *Buyer can cancel the contract for whatever reason before completion of construction and receive his earnest money back, subject to having his earnest money withheld by seller up to 120 days or until a replacement buyer can be found, whichever comes first. This clause was included on original Archies Deposit Agreement.*

Initialed for Identification by Buyer _____ and Seller _____    TREC NO. 23-6
Forms by zipForm LLC Stradend Springs CO    www.zipForm.com    copyright 2006

TOTAL P.03

MAR-15-2007 11:26        YAMAHA MOTOR CORP.                    7147617521    P.15/21

---

Contract Concerning    6733 Montgomery Dr 78239 (Proposed Building #14)                Page 5 of 9   02-13-06
                            (Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**

A. The following expenses must be paid at or prior to closing:
  (1) Expenses payable by Seller (Seller's Expenses):
    (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan
    liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses
    payable by Seller under this contract.
    (b) Seller shall also pay an amount not to exceed    $N/A                    to be applied in the
    following order: Buyer's Expenses which Buyer is prohibited from paying to FHA, VA, Texas Veteran's Housing
    Assistance Program or other governmental loan programs; and then to other Buyer's expenses as allowed by
    lender.
  (2) Expenses payable by Buyer (Buyer's Expenses):
    (a) Loan origination, discount, buy-down, and commitment fees (Loan Fees).
    (b) Appraisal fees; loan application fees; credit reports; preparation of loan documents; interest on the notes
    from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of
    easements and restrictions; mortgage title policy with endorsements required by lender; loan-related
    inspection fees; photos, amortization schedules, one-half of escrow fee; all prepaid items, including required
    premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special
    governmental assessments; final compliance inspection; courier fee, repair inspection, underwriting fee; wire
    transfer fee; expenses incident to any loan; and other expenses payable by Buyer under this contract.
B. Buyer shall pay Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage
Insurance Premium (MIP) as required by the lender.
C. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party,
that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay
charges and fees expressly prohibited by FHA, VA, Texas Veteran's Housing Assistance Program or other
governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**

A. PRORATIONS: Taxes for the current year, maintenance fees, assessments, dues and rents will be prorated
through the Closing Date. The tax proration may be calculated taking into consideration any change in
exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated
at closing, the parties shall adjust the prorations when tax statements for the current year are available. If
taxes are not paid at or prior to closing, Buyer will be obligated to pay taxes for the current year.
B. ROLLBACK TAXES: If Seller's change in use of the Property prior to closing or denial of a special use
valuation on the Property results in additional taxes, penalties or interest (Assessments) for periods prior to
closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive
closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the
effective date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably
possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control,
Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for
performance up to 45 days and the Closing Date will be extended as necessary or (c) accept the Property in its
damaged condition with an assignment of insurance proceeds and receive credit from Seller at closing in the
amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent
of any obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce
specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract
and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If, due
to factors beyond Seller's control, Seller fails to substantially complete the improvements by the Closing Date or
fails within the time allowed to make any non casualty repairs or deliver the Commitment, or survey, if required
of Seller, Buyer may (a) extend the time for performance up to 45 days and the Closing Date will be extended
as necessary or (b) terminate this contract as the sole remedy and receive the earnest money. If Seller fails to
comply with this contract for any other reason, Seller will be in default and Buyer may (a) enforce specific
performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and
receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative
dispute resolution procedures such as mediation.  Subject to applicable law, any dispute between Seller and
Buyer related to this contract which is not resolved through informal discussion ☒will   ☐ will not be
submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the
mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of
competent jurisdiction.

Initialed for identification by Buyer _____  and Seller _____          **TREC NO. 23-6**
Forms by zipForm, LLC (Ekeshead Springs, CO)      www.zipForm.com      copyright 2006

---

04/04/2007  15:51        LAW OFFICES        2104909361        PAGE  17/23

MAR-15-2007   11:26     YAMAHA MOTOR CORP.       7147617521    P.16/21

| Contract Concerning | 6733 Montgomery Dr 78239 (Proposed Building #14) | Page 6 of 9 | 02-13-06 |
|---|---|---|---|

(Address of Property)

**17. ATTORNEY'S FEES:** The prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party.

**18. ESCROW:**

**A. ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.

**B. EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may require payment of unpaid expenses incurred on behalf of the parties and a written release of liability of escrow agent from all parties.

**C. DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

**D. DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for liquidated damages of three times the amount of the earnest money.

**E. NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** Seller represents that as of the Closing Date there will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by applicable law, or if Seller fails to deliver an affidavit to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by facsimile or electronic transmission as follows:

| To Buyer at: | To Seller at: |
|---|---|
| Gregory Halprin | HTG REAL PROPERTY MGMT, INC. |
| 13122 Cortina | 24165 IH 10 W STE 217-408 |
| Tustin, CA 92782 | SAN ANTONIO, TX 78257 |
| Telephone: (214) 505-1928 | Telephone: (210)872-4089 |
| Facsimile: ( ) | Facsimile: ( ) |
| E-Mail: | E-Mail: |

Initialed for Identification by Buyer ___ and Seller ___      TREC NO. 23-6

Forms by 21Contract, LLC (Deerfield Springs, FL)    www.21Contract.com    copyright 2006

PAGE 18/23      LAW OFFICES      2104909361   15:51   04/04/2007

Contract Concerning  6733 Montgomery Dr 78239 (Proposed Building #14)                Page 7 of 9    02-13-08
                               (Address of Property)

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☒ Third Party Financing Condition Addendum
- ☐ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in an Owners' Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Addendum for Sale of Other Property by Buyer

- ☐ Addendum for "Back-Up" Contract
- ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Addendum for Coastal Area Property
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☐ Other (list): _____

_____
_____

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller  $ _____ (Option Fee) within 2 days after the effective date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____ days after the effective date of this contract. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have unrestricted right to terminate this contract. If Buyer gives notice of termination within the time specified, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☐ will  ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY:** Real estate licensees cannot give legal advice. READ THIS CONTRACT CAREFULLY. If you do not understand the effect of this contract, consult an attorney BEFORE signing.

Buyer's
Attorney is:

Seller's
Attorney is:

_____          _____
_____          _____

Telephone:  ( __ ) _____        Telephone:  ( __ ) _____

Facsimile:  ( __ ) _____        Facsimile:  ( __ ) _____

E-Mail: _____           E-Mail: _____

Initialed for Identification by Buyer ___ ___ and Seller ___ ___        TREC NO. 23-6

Forms by ezContract LLC. Steamboat Springs, CO          www.ezContract.com    copyright 2006

MAR-15-2007  11:27      YAMAHA MOTOR CORP.                    7147617521    P.18/21

| Contract Concerning | 6733 Montgomery Dr 78239 (Proposed Building #14) | Page 8 of 9 | 02-13-06 |
| | (Address of Property) | | |

EXECUTED the __19__ day of __March__ 20 __07__ (EFFECTIVE DATE.)

(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

This contract is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from the performance of this contract. If you have a complaint concerning a construction defect arising from the performance of this contract and that defect has not been corrected through normal warranty service, you must provide the notice required by Chapter 27 of the Texas Property Code to the contractor by certified mail, return receipt requested, not later than the 60th day before the date you file suit to recover damages in a court of law or initiate arbitration. The notice must refer to Chapter 27 of the Texas Property Code and must describe the construction defect. If requested by the contractor, you must provide the contractor an opportunity to inspect and cure the defect as provided by Section 27.004 of the Texas Property Code.

Buyer Greg Halpin

Buyer

Seller HTG REAL PROPERTY MGMT, INC.

Seller

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544

Initialed for identification by Buyer ___ and Seller ___      TREC NO. 23-6

Forms by zipForm LLC, Clearwater Springs, MI      www.zipForm.com      copyright 2006

04/04/2007  15:51      210490936L      LAW OFFICES      PAGE 20/23

MAR-15-2007  11:27      YAMAHA MOTOR CORP.                    7147617521     P.19/21

| Contract Concerning | | Page 9 of 9 03-13-06 |
|---|---|---|
| | (Address of Property) | |

### BROKER INFORMATION AND RATIFICATION OF FEE

Listing Broker has agreed to pay Other Broker _____ of the total sales price when Listing Broker's fee is received. Escrow Agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

| Other Broker: | License No. | Listing Broker: | License No. |
|---|---|---|---|
| represents ☐ Buyer only as Buyer's Agent<br>☐ Seller as Listing Broker's subagent | | represents ☐ Seller and Buyer as an Intermediary<br>☐ Seller only as Seller's agent | |
| Associate | Telephone | Listing Associate | Telephone |
| Broker's Address | | Listing Associate's Office Address | Facsimile |
| City, State, Zip | | City, State, Zip | |
| Facsimile | | Email Address | |
| Email Address | | Selling Associate | Telephone |
| | | Selling Associate's Office Address | Facsimile |
| | | City, State, Zip | |
| | | Email Address | |

**OPTION FEE RECEIPT**

Receipt of $ _____ (Option Fee) in the form of _____ is acknowledged.

| Seller or Listing Broker | Date |
|---|---|

**CONTRACT AND EARNEST MONEY RECEIPT**

Receipt of ☑ Contract and ☐ $ _____ Earnest Money in the form of _____ is acknowledged.

Escrow Agent: Lawyers Title (Dan Brown)    Date: 3.19.07

By: Monica Q Rodriguez    monicarodriguez@landam.com
                          E-mail Address

14350 Northbrook Dr #150    Telephone: (210) 490 1251
Address

S.A. TX 78232    Facsimile: (210) 490 4754
City, State, Zip

Initialed for Identification by Buyer ___ and Seller ___    TREC NO. 23-6
                                                            copyright 2006

PAGE 21/23                          LAW OFFICES        21049093361  15:51  04/04/2007

MAR-15-2007 11:27     YAMAHA MOTOR CORP.       7147617521     P.20/21



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)

## THIRD PARTY FINANCING CONDITION ADDENDUM

### TO CONTRACT CONCERNING THE PROPERTY AT

6733 Montgomery, San Antonio, TX Building #14
(Street Address and City)

Buyer shall apply promptly for all financing described below and make every reasonable effort to obtain approval for the financing (Financing Approval). Buyer shall furnish all information and documents required by lender for Financing Approval. Financing Approval will be deemed to have been obtained when (1) the terms of the loan(s) described below are available and (2) lender determines that Buyer has satisfied all of lender's financial requirements (those items relating to Buyer's assets, income and credit history). If Buyer cannot obtain Financing Approval, Buyer may give written notice to Seller within ____30____ days after the effective date of this contract and the earnest money will be refunded to Buyer. If Buyer does not give such notice within the time required, this contract will no longer be subject to Financing Approval. Time is of the essence for this paragraph and strict compliance with the times for performance is required.

*NOTE: Financing Approval does not include approval of lender's underwriting requirements for the Property, as specified in Paragraph 4.A.(1) of the contract.*

Each note must be secured by vendor's and deed of trust liens.

**CHECK APPLICABLE BOXES:**

☒ **A. CONVENTIONAL FINANCING:**
   ☒ (1) A first mortgage loan in the principal amount of ___$228,000___ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed ___10%___ per annum for the first ___5___ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ___2%___ of the loan.
   ☐ (2) A second mortgage loan in the principal amount of ___$_____ (excluding any financed PMI premium), due in full in _____ year(s), with interest not to exceed ____% per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ____% of the loan.

☐ **B. TEXAS VETERANS' HOUSING ASSISTANCE PROGRAM LOAN:** A Texas Veterans Housing Assistance Program Loan of $_____ for a period of at least _____ years at the interest rate established by the Texas Veterans Land Board.

☐ **C. FHA INSURED FINANCING:** A Section _____ FHA insured loan of not less than $_____ (excluding any financed MIP), amortizable monthly for not less than _____ years, with interest not to exceed ____% per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed ____% of the loan. As required by HUD-FHA, if FHA valuation is unknown,
*"It is expressly agreed that, notwithstanding any other provision of this contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the purchaser (Buyer) has been given in accordance with HUD/FHA or VA requirements a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than* $_____

Initialed for Identification by Buyer _____ MA ____ and Seller _____     **TREC NO. 40-2**
Forms by mrContract LLC, Steamboat Springs, CO     www.mrContract.com     copyright 2006

PAGE 22/23     LAW OFFICES     2104909361     15:51     04/04/2007

MAR-15-2007 11:28     YAMAHA MOTOR CORP.     7147617521     P.21/21

| Third Party Financing Condition Addendum Concerning | Page 2 of 2 | 02-13-06 |

6733 Montgomery San Antonio, TX #14
(Address of Property)

*The purchaser (Buyer) shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value or the condition of the Property. The purchaser (Buyer) should satisfy himself/herself that the price and the condition of the Property are acceptable.*

**NOTE:** HUD 92564-CN "For Your Protection: Get a Home Inspection" must be signed and dated by Buyer and attached to this Addendum.

☐ **D. VA GUARANTEED FINANCING: A VA** guaranteed loan of not less than $ _____ (excluding any financed Funding Fee), amortizable monthly for not less than _____ years, with interest not to exceed _____ % per annum for the first _____ year(s) of the loan with Loan Fees (loan origination, discount, buy-down, and commitment fees) not to exceed _____ % of the loan.

**VA NOTICE TO BUYER:** *"It is expressly agreed that, notwithstanding any other provisions of this contract, the Buyer shall not incur any penalty by forfeiture of earnest money or otherwise or be obligated to complete the purchase of the Property described herein, if the contract purchase price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The Buyer shall, however, have the privilege and option of proceeding with the consummation of this contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs."*

If Buyer elects to complete the purchase at an amount in excess of the reasonable value established by VA, Buyer shall pay such excess amount in cash from a source which Buyer agrees to disclose to the VA and which Buyer represents will not be from borrowed funds except as approved by VA. If VA reasonable value of the Property is less than the Sales Price, Seller may reduce the Sales Price to an amount equal to the VA reasonable value and the sale will be closed at the lower Sales Price with proportionate adjustments to the down payment and the loan amount.

Buyer hereby authorizes any lender to furnish to the Seller or Buyer or their representatives information relating only to the status of Financing Approval of Buyer.

_____        _____
Buyer Greg Halpin               Seller HTG Real Property Management, Inc

_____        _____
Buyer                    Seller

This form has been approved by the Texas Real Estate Commission for use with similarly approved or promulgated contract forms. Such approval relates to this form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not suitable for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, 1-800-250-8732 or (512) 459-6544 (http://www.trec.state.tx.us) TREC No. 40-2. This form replaces TREC No. 40-1.

**TREC NO. 40-2**

Forms by zipForm® LLC Chesmhost Systems TX    www.zipForms.com    copyright 2006

TOTAL P.21

PAGE 23/23     LAW OFFICES     2104909361     15:51     04/04/2007



HALPRIN
Loan Number 6049202
MIN 100162500060492023

# NOTE

**FEBRUARY 1, 2008**      **HOUSTON**      **, TEXAS**
[Date]      [City]      [State]

**6733 MONTGOMERY ROAD BUILDING #14, SAN ANTONIO, TEXAS 78239**
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $   213,750.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   PROFOLIO HOME MORTGAGE CORP.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   6.0000   %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on MARCH 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on FEBRUARY 1, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   2500 CITY WEST BLVD. SUITE 525, HOUSTON, TEXAS 77042
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $   1,281.54

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/01
GV1363.HP
*(page 1 of 3 pages)*



**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   **FIFTEEN**   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.0   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
GV1363.HP
<div align="center">(page 2 of 3 pages)</div>

conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
GREGORY M. HALPRIN                    -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
SHELLIE R. HALPRIN                    -Borrower

_____ (Seal)
                                      -Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
GV1363.HP                          (page 3 of 3 pages)

## A. Settlement Statement

**U.S. Department of Housing and Urban Development**

OMB No. 2502-0265

**B. Type of Loan**

| | | |
|---|---|---|
| 1. ☐ FHA   2. ☐ FmHA   3. ☐ Conv Unins | 6. File Number 0887457472NC | 7. Loan Number 6049202 | 8. Mortgage Ins Case Number |
| 4. ☐ VA   5. ☐ Conv Ins.   6. ☐ Seller Finance | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower | E. Name & Address of Seller | F. Name & Address of Lender |
|---|---|---|
| Gregory N Halprin and Shellie R. Halprin 13123 Corliss Tustin, CA 92782 | ITTG Real Property Mgmt., Inc. 24165 IH 10 W, Ste. 217-408 San Antonio, TX 78257 | Profolio Home Mortgage Corp. 2500 CityWest Boulevard, Suite 525 Houston, TX 77042 |

| G. Property Location | H. Settlement Agent Name United Title of Texas 8310 N. Capital of Texas Hwy., # 200 Austin, TX 78731   Tax ID; 20-1621063 | |
|---|---|---|
| 6733 Montgomery Dr. Bldg. 14 San Antonio, TX 78239 | Place of Settlement United Title of Texas 5177 Richmond Avenue, Suite 400 Houston, TX 77056 | I. Settlement Date 2/1/2008 Fund: 2/5/2008 Printed: (2/11/2008 / 3:41 PM) |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract Sales Price | $285,000.00 | 401. Contract Sales Price | $285,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to borrower | $5,882.60 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| **Adjustments for items paid by seller in advance** | | **Adjustments for items paid by seller in advance** | |
| 106. County property taxes | | 406. County property taxes | |
| 107. County property taxes | | 407. County property taxes | |
| 108. HOA/Condo Assessments | | 408. HOA/Condo Assessments | |
| 109. School property taxes | | 409. School property taxes | |
| 110. MUD Taxes | | 410. MUD Taxes | |
| 111. HOA Dues | | 411. HOA Dues | |
| 112. Rents | | 412. Rents | |
| 113. Maintenance Fees | | 413. Maintenance Fees | |
| 114. | | 414. | |
| 115. | | 415. | |
| 116. | | 416. | |
| 120. Gross Amount Due From Borrower | $290,882.60 | 420. Gross Amount Due to Seller | $285,000.00 |
| 200. Amounts Paid by Or In Behalf Of Borrower | | 500. Reductions in Amount Due to Seller | |
| 201. Deposit or earnest money | | 501. Excess Deposit | |
| 202. Principal amount of new loan(s) | $213,750.00 | 502. Settlement Charges to Seller (line 1400) | $3,569.96 |
| 203. Existing loan(s) taken subject to | | 503. Existing Loan(s) Taken Subject to | |
| 204. Commitment fee | | 504. | |
| 205. Earnest money deposited w/seller | $57,000.00 | 505. Earnest money deposited w/seller | $57,000.00 |
| 206. Seller Contribution | $5,700.00 | 506. Seller Contribution | $5,700.00 |
| 207. | | 507. Payoff to First National Bank | $218,649.87 |
| 208. | | 508. | |
| 209. | | 509. | |
| **Adjustments for items unpaid by seller** | | **Adjustments for items unpaid by seller** | |
| 210. County property taxes   01/01/08 thru 02/01/08 | $80.17 | 510. County property taxes   01/01/08 thru 02/01/08 | $80.17 |
| 211. County property taxes | | 511. County property taxes | |
| 212. HOA/Condo Assessments | | 512. HOA/Condo Assessments | |
| 213. School property taxes | | 513. School property taxes | |
| 214. MUD Taxes | | 514. MUD Taxes | |
| 215. HOA Dues | | 515. HOA Dues | |
| 216. Rents | | 516. Rents | |
| 217. Maintenance Fees | | 517. Maintenance Fees | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | $276,530.17 | 520. Total Reduction Amount Due Seller | $285,000.00 |
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement From/To Seller | |
| 301. Gross Amount due from borrower (line 120) | $290,882.60 | 601. Gross Amount due to seller (line 420) | $285,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | $276,530.17 | 602. Less reductions in amt. due seller (line 520) | $285,000.00 |
| 303. Cash From Borrower | $13,552.43 | 603. Cash Seller | $0.00 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

form HUD-1 (3/86) Handbook 4305.2

File No. 0783457422NC

| L. Settlement Charges | | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|---|
| 700. Total Sales/Broker's Commission based on price | $285,000.00 | @ % = $0.00 | | | |
| Division of Commission (line 700) as follows: | | | | | |
| 701. | | to | | | |
| 702. | | to | | | |
| 703. Commission Paid at Settlement | | | | $0.00 | $0.00 |
| 704. The following persons, firms or | to | | | | |
| 705. corporation s received a portion | to | | | | |
| 706. of the real estate commission amount | to | | | | |
| 707. shown above | to | | | | |
| 800. Items Payable in Connection with Loan | | | | | |
| 801. Loan Origination Fee % | | to | | | |
| 802. Loan Discount % | | to | | | |
| 803. Appraisal Fee | | to Patrick O. Ingram Appraisals | POC (B) $400.00 | $150.00 | |
| 804. Credit Report | | to | | | |
| 805. Lender's Inspection Fee | | to | | | |
| 806. Mortgage Insurance Application | | to | | | |
| 807. Assumption Fee | | to | | | |
| 808. Processing Fee | | to Profolio Home Mortgage Corp. | | $350.00 | |
| 809. Escrow Waiver Fee | | to Profolio Home Mortgage Corp. | | $534.37 | |
| 810. Funding Fee | | to AmTrust Bank | | $250.00 | |
| 811. Broker fee | | to Profolio Home Mortgage Corp. | | $1,300.00 | |
| 812. Flood Certification | | to Profolio Home Mortgage Corp. | | $9.00 | |
| 813. Mortgage Set Up Fee | | to AmTrust Bank | | $455.00 | |
| 900. Items Required by Lender To Be Paid in Advance | | | | | |
| 901. Interest from 2/5/2008 to 2/1/2008 @ $35.137/day | | | | ($140.55) | |
| 902. Mortgage Insurance Premium for months | | to | | | |
| 903. Hazard Insurance Premium for years | | to Partners Insurance | | $1,163.00 | |
| 1000. Reserves Deposited With Lender | | | | | |
| 1001. Hazard insurance | | months @ | $96.92 per month | | |
| 1002. Mortgage insurance | | months @ | $0.00 per month | | |
| 1003. City property taxes | | months @ | per month | | |
| 1004. County property taxes | | months @ | per month | | |
| 1005. HOA/Condo Assessments | | months @ | per month | | |
| 1006. School property taxes | | months @ | per month | | |
| 1007. MUD Taxes | | months @ | per month | | |
| 1008. HOA Dues | | months @ | per month | | |
| 1011. Aggregate Adjustment | | | | | |
| 1100. Title Charges | | | | | |
| 1101. Settlement or closing fee | | to | | | |
| 1102. Abstract or title search | | to | | | |
| 1103. Title examination | | to | | | |
| 1104. Title insurance binder | | to | | | |
| 1105. Document preparation | | to | | | |
| 1106. Notary fees | | to | | | |
| 1107. Attorney's fees | | to Gregg & Valby | | $325.00 | |
| (includes above items numbers: | | | ) | | |
| 1108. Title insurance | | to United Title of Texas - Premium | | $314.05 | $1,831.00 |
| (includes above items numbers: | | | ) | | |
| 1109. Lender's coverage | $213,750.00/$322.50 | | | | |
| 1110. Owner's coverage | $285,000.00/$1,922.55 | | | | |
| 1111. Escrow fee | | to United Title of Texas | | $375.00 | $275.00 |
| 1112. State of Texas Policy Guaranty Fee | | to State of Texas Guaranty Fee | | $1.00 | $1.00 |
| 1113. Courier/Express Fee | | to United Title of Texas - Courier | | $25.00 | $25.00 |
| 1114. Tax certificates | | to United Title of Texas FBO DataTrace | | $32.43 | |
| 1200. Government Recording and Transfer Charges | | | | | |
| 1201. Recording Fees | Deed $34.00 ; Mortgage $75.00 ; Rel $40.00 | to United Title of Texas - Recording | | $142.00 | |
| 1202. City/county tax/stamps | Deed ; Mortgage | to | | | |
| 1203. State tax/stamps | Deed ; Mortgage | to | | | |
| 1300. Additional Settlement Charges | | | | | |
| 1301. Survey | | to Willkie Surveying, LLC | | | $324.38 |
| 1302. Pest inspection | | to | | | |
| 1303. doc prep- release | | to Don Beard | | | $180.00 |
| 1304. 2007 taxes | | to Bexar County | | | $981.15 |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | | $5,152.87 | $3,569.96 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a completed copy of pages 1, 2 and 3 of this HUD-1 Settlement Statement.



File No. 0887457422NC

HTG Real Property Mgmt., Inc.

Gregory M Halprin

By Maria del Rosario Padilla

Shellie R. Halprin

**SETTLEMENT AGENT CERTIFICATION**

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Settlement Agent: Nancy Cepeda          2/1/08

Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Previous Editions are Obsolete
Printed: (2/1/2008 / 12:09 PM)                    Page 3                    form HUD-1 (3/86)
                                                                            Handbook 4305.2



File No. 0387457422NC

HTG Real Property Mgmt., Inc

Gregory M Halprin

By Maria del Rosario Padilla

Shellie R. Halprin

### SETTLEMENT AGENT CERTIFICATION

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Settlement Agent: Nancy Cepeda                    2/1/08
                                                    Date

Warning: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

Previous Editions are Obsolete
Printed: (2/1/2008 / 12:00 PM)                    Page 3                    form HUD-1 (3/86)
                                                                            Handbook 4305.2

HALPRIN
Loan Number 6049202
MIN 100162500060492023

PROFOLIO HOME MORTGAGE CORP.

## CERTIFICATION TO HUD - 1
### SETTLEMENT STATEMENT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.



_____
GREGORY M. HALPRIN

_____
SHELLIE R. HALPRIN

HGT REAL PROPERTY MANAGMENT, INC., A TEXAS CORPORATION

_____

_____

_____

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____        2/1/08
Settlement Agent                   Date

**WARNING:** *It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.*

(This form is to be signed by the Borrower(s) and Seller(s) when present at the settlement)

HALPRIN
Loan Number 6049202
MIN 100162500060492023

PROFOLIO HOME MORTGAGE CORP.

## CERTIFICATION TO HUD - 1
## SETTLEMENT STATEMENT

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.



---
GREGORY M. HALPRIN

---
HGT REAL PROPERTY MANAGMENT, INC., A TEXAS
CORPORATION

---
SHELLIE R. HALPRIN

---

---

---

---

---

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

---
Settlement Agent

2/, /58
---
Date

**WARNING:** *It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.*

(This form is to be signed by the Borrower(s) and Seller(s) when present at the settlement)

After Recording Return To:
GREGG & VALBY, L.L.P.
1700 WEST LOOP SOUTH, SUITE 200
HOUSTON, TEXAS 77027

[Space Above This Line For Recording Data]

UNITED TITLE OF TEXAS
GF# 0 887457422 NC

HALPRIN
Loan Number 6049202
MIN 100162500060492023

## DEED OF TRUST

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  FEBRUARY 1, 2008
together with all Riders to this document.
(B) "Borrower" is GREGORY M. HALPRIN AND SHELLIE R. HALPRIN , HUSBAND AND WIFE


Borrower is the grantor under this Security Instrument.
(C) "Lender" is  PROFOLIO HOME MORTGAGE CORP.

Lender is a corporation organized and existing under the laws of  THE STATE OF TEXAS

Lender's address is  2500 CITY WEST BLVD. SUITE 525, HOUSTON, TEXAS 77042

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is   SCOTT R. VALBY

Trustee's address is  1700 WEST LOOP SOUTH, SUITE 200, HOUSTON, TEXAS 77027

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3044 1/01 (page 1 of 14 pages)
GV2000.HP



(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated **FEBRUARY 1, 2008**
The Note states that Borrower owes Lender **TWO HUNDRED THIRTEEN THOUSAND SEVEN HUNDRED FIFTY AND 00/100ths**
Dollars (U.S. $ 213,750.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **FEBRUARY 1, 2038**.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☒ 1 - 4 Family Rider

☐ Biweekly Payment Rider     ☐ Planned Unit Development Rider

☐ Balloon Rider     ☐ Second Home Rider

☐ Other(s)
    [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT         Form 3044 1/01 *(page 2 of 14 pages)*
GV2000.HP

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of　BEXAR　:

A TRACT OF LAND, DESIGNATED AS PROPOSED BUILDING 14 AND BEING OUT OF A 3.20 ACRE TRACT OUT OF TRACT 11 IN THE W & M SUBDIVISION, BEXAR COUNTY, TEXAS, ACCORDING TO PLAT RECORDED IN VOLUME 3377, PAGE 198, DEED AND PLAT RECORDS, BEXAR COUNTY, TEXAS; SAID 3.20 ACRE TRACT BEING DESCRIBED IN INSTRUMENT RECORDED IN VOLUME 12135, PAGE 1164, REAL PROPERTY RECORDS, BEXAR COUNTY, TEXAS, AND SAID PROPOSED BUILDING 14 BEING MORE PARTICULARLY DESCRIBED BY A FIELD NOTE DESCRIPTION ATTACHED HERETO;
Parcel ID Number: 050510090110



which currently has the address of　6733 MONTGOMERY ROAD BUILDING #14
　　　　　　　　　　　　　　　　　　　　　　　　　　　　[Street]
　SAN ANTONIO　　　　　　　　　　　　　　　, Texas　78239　　　("Property Address"):
　　　　[City]　　　　　　　　　　　　　　　　　　　[Zip Code]

　　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

　　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

　　　THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

　　　UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
　　　1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT　　　　　Form 3044 1/01 (page 3 of 14 pages)
GV2000.HP

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.



2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2000.HP

Form 3044 1/01 (page 4 of 14 pages)

RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater



TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        Form 3044 1/01 *(page 5 of 14 pages)*
GV2000.HP

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2000.HP                                           Form 3044 1/01 (page 6 of 14 pages)





Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2000.HP                                        Form 3044 1/01 (page 7 of 14 pages)



Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)    Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)    Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
GV2000.HP                                                            Form 3044 1/01 (page 8 of 14 pages)

not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly



TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044 1/01 (page 9 of 14 pages)
GV2000.HP



requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

    **16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

    As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

    **17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

    **18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

    **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

    **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3044 1/01 *(page 10 of 14 pages)*
GV2000.HP

might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3044 1/01 (page 11 of 14 pages)
GV2000.HP





the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is wilful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.

TEXAS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3044 1/01 (page 12 of 14 pages)
GV2000.HP

Check box as applicable:

☒    **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐    **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐    **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐    **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

☐    **Other.**



**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

**TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**GV2000.HP**                                Form 3044 1/01 *(page 13 of 14 pages)*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
GREGORY M. HALPRIN                    -Borrower

_____ (Seal)
SHELLIE R. HALPRIN                    -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

Witnesses:

_____

_____

_____ [Space Below This Line For Acknowledgment] _____

STATE OF TEXAS,          HARRIS                    COUNTY ss:

This instrument was acknowledged before me this ____ day of
20_____, by GREGORY M. HALPRIN and SHELLIE R. HALPRIN .

My Commission Expires:

                                        _____
                                        (Signature of Officer)
                                        (Title of Officer)

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3044 1/01 (page 14 of 14 pages)
GV2000.HP

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of  Orange

On  02/05/08  before me,  Saman Mehdi, Notary Public
<sub>(Here insert name and title of the officer)</sub>

personally appeared  Shellie Robin Halprin

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Saman Mehdi
<sub>Signature of Notary Public</sub>

<sub>(Notary Seal)</sub>

SAMAN MEHDI
COMM. #1661647
Notary Public - California
Orange County
My Comm. Expires Apr. 28, 2010

---

## ADDITIONAL OPTIONAL INFORMATION

### INSTRUCTIONS FOR COMPLETING THIS FORM

Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.

| DESCRIPTION OF THE ATTACHED DOCUMENT |
|---|

_____
<sub>(Title or description of attached document)</sub>

_____
<sub>(Title or description of attached document continued)</sub>

Number of Pages _____ Document Date_____

_____
<sub>(Additional information)</sub>

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

| CAPACITY CLAIMED BY THE SIGNER |
|---|

☐ Individual (s)
☐ Corporate Officer
_____
<sub>(Title)</sub>
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

2008 Version CAPA v12.10.07 800-873-9865 www.NotaryClasses.com

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of  Orange

On  02/05/08  before me,  Saman Mehdi , Notary Public
<span>(Here insert name and title of the officer)</span>

personally appeared  Gregory Michael Halprin

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

*Saman Mehdi*
Signature of Notary Public



SAMAN MEHDI
COMM. #1661647
Notary Public - California
Orange County
My Comm. Expires Apr. 26, 2010

(Notary Seal)

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional Information)

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer

_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

* State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
* Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
* The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
* Print the name(s) of document signer(s) who personally appear at the time of notarization.
* Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they,- is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
* The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
* Signature of the notary public must match the signature on file with the office of the county clerk.
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  ❖ Indicate title or type of attached document, number of pages and date.
  ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
* Securely attach this document to the signed document

2008 Version CAPA v12.10.07 800-873-9865 www.NotaryClasses.com

# EXHIBIT "A"

HALPRIN
Loan Number 6049202
MIN 10016250006049202



BEING 2,392 SQUARE FEET OF LAND AREA OUT OF THAT CERTAIN TRACT OF LAND CALLED TO CONTAIN 3.2 ACRES OF LAND AS DESCRIBED IN A DEED CONVEYED FROM THE HAROLD M. GOODWIN AND MARY E. GOODWIN REVOCABLE LIVING TRUST (TO HTG REAL PROPERTY MANAGEMENT AS RECORDED IN VOLUME 12135, PAGE 1164, REAL PROPERTY RECORDS OF BEXAR COUNTY, TEXAS. SAID 3.2 ACRE TRACT OF LAND BEING PLATTED AS LOT 21, BLOCK 7, CB 5051, AS SHOWN ON PROPOSED PLAT OF MONTGOMERY LIVING COMMUNITY SUBDIVISION, PLAT ID NUMBER 070637. SAID 2,392 SQUARE FOOT TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS;

BEGINNING AT THE SOUTHWEST CORNER OF THIS TRACT OF LAND, FROM WHICH THE SOUTHEAST CORNER OF THAT CERTAIN TRACT OF LAND CALLED TO CONTAIN 1.144 ACRES OF LAND IN A DEED CONVEYED FROM DEEN'S CONSULTING, INC. TO MIGUEL E. GUERRA, ETAL AS RECORDED IN VOLUME 10937, PAGE 2349, REAL PROPERTY RECORDS OF BEXAR COUNTY, TEXAS, ALSO BEING THE SOUTHWEST CORNER OF SAID 3.2 ACRE TRACT OF LAND, AND BEING ON THE NORTH RIGHT-OF-WAY LINE OF MONTGOMERY DRIVE (HAVING A RIGHT-OF-WAY WIDTH OF 60.00 FEET, AS PER VOLUME 9536, PAGE 44, REAL PROPERTY RECORDS OF BEXAR COUNTY, TEXAS), SAID CORNER BEARS SOUTH 04° 32' 03" WEST FOR A DISTANCE OF 572.92 FEET;

THENCE WITH THE WEST SIDE OF BUILDING NUMBER 14, NORTH 04° 04' 57" EAST, A DISTANCE OF 30.23 FEET TO A POINT FOR THE NORTHWEST CORNER OF THIS TRACT.

THENCE WITH THE NORTH SIDE OF BUILDING NUMBER 14, THE FOLLOWING FIVE CALLS: SOUTH 85° 55' 03" EAST, A DISTANCE OF 34.28 FEET TO A CORNER OF THIS TRACT; SOUTH 04° 04' 57" WEST, A DISTANCE OF 4.00 FEET TO AN INTERIOR CORNER OF THIS TRACT; SOUTH 85° 55' 03" EAST, A DISTANCE OF 7.00 FEET TO AN INTERIOR CORNER OF THIS TRACT; NORTH 04° 04' 57" EAST, A DISTANCE OF 4.00 FEET TO AN EXTERIOR CORNER OF THIS TRACT AND SOUTH 85° 55' 03" EAST, A DISTANCE OF 34.00 FEET TO THE NORTHEAST CORNER OF THIS TRACT.

THENCE WITH THE EAST SIDE OF BUILDING NUMBER 14, SOUTH 04° 04' 57" WEST, A DISTANCE OF 30.23 FEET TO A POINT FOR THE SOUTHEAST CORNER OF THIS TRACT.

THENCE WITH THE SOUTH SIDE OF A BUILDING NUMBER 14, THE FOLLOWING FIVE CALLS: NORTH 85° 55' 03" WEST, A DISTANCE OF 25.50 FEET TO AN INTERIOR CORNER OF THIS TRACT; SOUTH 04° 04' 57" WEST, A DISTANCE OF 6.00 FEET TO AN EXTERIOR CORNER OF THIS TRACT; NORTH 85° 55' 03" WEST, A DISTANCE OF 34.00 FEET TO AN EXTERIOR CORNER OF THIS TRACT; NORTH 04° 04' 57" EAST, A DISTANCE OF 6.00 FEET TO AN INTERIOR CORNER OF THIS TRACT AND NORTH 85 ° 55' 03" WEST, A DISTANCE OF 25.78 FEET TO THE POINT OF BEGINNING.

BASIS OF BEARINGS ON PLAT RECORDED IN VOLUME 9536, PAGE 44 OF THE DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.



## 1-4 FAMILY RIDER
### (Assignment of Rents)

HALPRIN
Loan Number 6049202
MIN 100162500060492023

THIS 1-4 FAMILY RIDER is made this **1ST** day of **FEBRUARY, 2008** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **PROFOLIO HOME MORTGAGE CORP.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**6733 MONTGOMERY ROAD BUILDING #14, SAN ANTONIO, TEXAS 78239**
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3170 1/01   *(page 1 of 3 pages)*
GV3284.HP

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

DISTRICT COURT OF BEXAR COUNTY, TX

L. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.



_____ (Seal)
GREGORY M. HALPRIN                -Borrower

_____ (Seal)
SHELLIE R. HALPRIN                -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

MULTISTATE 1-4 FAMILY RIDER--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3170 1/01    (page 3 of 3 pages)
GV3284.HP