IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GREGORY HALPRIN, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 5:13-CV-1042-RP |
| FEDERAL DEPOSIT INSURANCE CORP., et al., | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are Defendant American Title Group, Inc. f/k/a LandAmerica Lawyers Title of San Antonio, Inc.'s ("American Title") Motion for Summary Judgment on Its Counterclaim for Contractual Indemnity Against All Plaintiffs, (Dkt. 264); American Title's Motion to Strike Plaintiffs' Evidence in Opposition, (Dkt. 274); and Plaintiffs'[1] Motion for Summary Judgment Against Defendant American Title Group, Inc., (Dkt. 284); and the responsive filings to each. Having considered the parties' submissions and the relevant law, the Court will deny American Title's motion for summary judgment; grant Plaintiffs' motion for summary judgment; and dismiss as moot American Title's motion to strike.

## I. BACKGROUND

Plaintiffs allege that they entered into individual agreements with Defendants HTG Real Property Management ("HTG"), the Padilla Property Corporation ("PPC"), Maria Del Rosario Padilla, Mauro T. Padilla III, Mauro Joe Padilla, and Carlos Miguel Padilla (collectively, the "Padilla

---

[1] The plaintiffs in this matter are Kennie Arriola, Edward Arriola, Silvio Brigliadoro, Gregory Halprin, George Heywood, Denise Heywood, Kristopher Hochart, Hermann Kinschner, Ben Li, Lin Li, Michael Loeffler, Stan Salah, Brian Taus, Michael Vick, Desiree Young, Payam Kohanbash, Gerald Bates, Paul Weber, Joseph Amelio, Tawny Amelio, Adolfo Bejarano, Mauricio Bejarano, Maria R. Collins, David Goldberg, Gohar Karahogopian, Hagop Karahogopian, Les Klingermann, Irina Minkova, Mikail Minkova, Andrew V. Nguyen, Simon Parrott, Melissa Parrott, David Trustey, Kevin Trustey, Patricia Trustey, and Michael Trustey (collectively, "Plaintiffs"). (7th Am. Compl., Dkt. 124, at 2–4).

Defendants") to purchase lots on which the Padilla Defendants would build one or more multi-family living units. (7th Am. Compl., Dkt. 124, ¶¶ 5–6). Plaintiffs allege that they provided American Title with a down payment and that the Padilla Defendants then deeded half-acre lots to Plaintiffs. (*Id.*). After construction began, the Padilla Defendants allegedly asked Plaintiffs to deed their lots back to the Padilla Defendants in order to obtain construction financing. (*Id.* ¶ 7). The Padilla Defendants also allegedly asked Plaintiffs to agree to subrogate their claims to those of the construction lender, telling Plaintiffs that this would allow the Padilla Defendants to obtain construction financing and complete construction. (*Id.*). Instead, Plaintiffs allege that the Padilla Defendants used those funds to pay personal and/or corporate debt. (*Id.*). The investment properties were never completed. (*Id.* ¶ 13). Plaintiffs then brought this action, in which they assert a variety of claims against HTG, PPC, and the Padilla Defendants. (*Id.* at 9–24).

Plaintiffs also assert a number of claims against American Title, the title company that survived the merger with the company[2] that facilitated Plaintiffs' real estate transactions: common law and statutory fraud, violations of the Deceptive Trade Practices Act ("DTPA"), civil conspiracy, assisting and participating, negligence, and breach of fiduciary duty. (*Id.* at 25–28). American Title filed a motion to dismiss each of Plaintiffs' claims, (Dkt. 126), which the Court granted, (Dkt. 227). Meanwhile, American Title filed counterclaims against Plaintiffs for contractual and statutory indemnity, arguing that each plaintiff violated their agreement to indemnify American Title by suing it. (LandAm. Am. Ans., Dkt. 125, at 20–24). American Title and Plaintiffs now each seek summary judgment on American Title's contractual indemnity counterclaims in their favor. (Dkts. 264, 284). American Title seeks damages in the amount of $307,165.58. (Def.'s Mot. Summ. J., Dkt. 264, at 15).

---

[2] The title company originally involved with Plaintiffs' real estate transactions was LandAmerica Lawyers Title of San Antonio, Inc. ("LandAmerica"). (*See* Def.'s Reply Mot. Summ. J., Dkt. 275, at 1–2). American Title asks the Court to take judicial notice of evidence that LandAmerica merged with American Title in 2010, *id.*, and the Court assumes without deciding that they did so for purpose of resolving the parties' cross motions for summary judgment.

2

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmovant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

## III. DISCUSSION

Under Texas law, indemnity agreements are valid and enforceable obligations of the principal and indemnitors. *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693, 698 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.). There are five elements of a contractual indemnity claim under Texas law: (1) a contractual indemnity agreement exists; (2) the indemnity agreement obligates one party to

3

indemnify the other for particular claims; (3) those claims were made; (4) all conditions precedent for recovery have occurred or been waived or excused; and (5) the party seeking relief has been damaged. *See Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995).

American Title seeks relief from each plaintiff in this action based on the contested premise that "[e]ach Plaintiff agreed to indemnity and hold harmless Land America." (Def.'s Mot. Summ. J., Dkt. 264, at 7). Plaintiffs, meanwhile, respond that 14 of the 37 plaintiffs[3] did not sign an indemnity agreement. (Pls.' Resp., Dkt. 273, at 8). American Title admits it does not have copies of executed indemnity agreements for those fourteen plaintiffs. (Def.'s Mot. Part. Summ. J., Dkt. 127, at 15). Nevertheless, American Title seeks to holds those fourteen plaintiffs liable based on the factual allegations in their pleading. (Def.'s Mot. Summ. J., Dkt. 264, at 8).

*A. The Fourteen Plaintiffs for Whom American Title Cannot Produce a Signed Indemnity Agreement*

American Title has the burden to prove the existence of a valid indemnity agreement, and for the fourteen plaintiffs for whom American Title can produce no agreement, its only evidence of an agreement is a statement made in Plaintiffs' Seventh Amended Complaint. (*Id.* (citing 7th Am. Compl., Dkt. 124, at ¶ 11 (alleging that "Land America Title required all parties to sign hold harmless agreements"))). In its order granting American Title's motion to dismiss, the Court held that this allegation was a binding judicial admission only of the fact that each plaintiff executed an indemnification agreement. (Order, Dkt. 227, at 11–12, 14). American Title now argues that the law of the case doctrine compels the Court to find not only that each plaintiff signed an indemnification agreement, but also that the "indemnification provision contained therein is binding" on each plaintiff. (Def.'s Mot. Summ. J., Dkt. 264, at 8). The Court does not agree.

---

[3] Those fourteen plaintiffs are "Les Klingerman, Maria Collin (also known as Maria Penunuri), Mauricio Bejarano, Kennie Arriola, Gerald Bates, Silvio Brigliadoro, Gregory Halprin, Kristopher Hochart, Herman Hinschner, Craig Inaba, Brian Taus, Michael Vic, Paul Weber, and Desire Young." (Pls.' Resp., Dkt. 273, at 8).

4

"A judicial admission is a formal concession in the pleadings . . . by a party or counsel that is binding on the party making them. . . . [I]t has the effect of withdrawing a fact from contention." *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001). A district court may allow an admission "to be withdrawn," *id.*, or it "may, in a proper exercise of discretion, relieve a party of the adverse consequences of a judicial admission." *McGee v. O & M Boat Co.*, 412 F.2d 75, 76 (5th Cir. 1969).

The law of the case doctrine only applies to issues actually decided, either implicitly or explicitly. *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978). "[U]nlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Clifford v. Gibbs*, 298 F.3d 328, 331 (5th Cir. 2002).

The issue now before the Court is whether American Title can prove not only that each plaintiff signed an indemnification agreement, but also that the signed agreement covers the claims asserted by the plaintiffs and whether any precedent conditions exist. *See Transamerica Ins.*, 66 F.3d at 719. In other words, it is necessary to prove the *terms* of each indemnification agreement, not simply the agreements' existence. And it is clear from the agreements that American Title has produced that the terms of each agreement are not identical. (*See* Def.'s Mot. Summ. J., Dkt. 264, at 4–6 (excerpting Plaintiffs' hold harmless agreements, some of which state that the plaintiff will indemnify LandAmerica "from any claims . . . with regard to the payment of the down payment"; others apply to "any claims . . . with regard to the title of the property and the Owner's Title Policy not being issued at the time of conveyance"; and still others apply to any claims . . . with regard to the condition of the property and the payment of the down payment")).

The issue now before the Court is considerably broader than the issue before the Court in American Title's motion to dismiss. (*See* Order, Dkt. 227, at 11). There, the issue was whether American Title was negligent in disbursing funds to the Padilla Defendants, and the question was

whether Plaintiffs admitted to signing hold harmless agreements that directed LandAmerica to disburse funds. (Order, Dkt. 227, at 11, 14). The Court found that Plaintiffs' allegation that "Land America Title required all parties to sign hold harmless agreements" was a judicial admission that each plaintiff signed a hold harmless agreement containing a disbursement provision; that fact was dispositive. (*Id.* at 14). The Court explicitly declined to consider whether Plaintiffs' allegation was a judicial admission of the existence or terms of any other provision of any particular indemnification agreement. (*Id.*).

The law of the case doctrine does not require the Court to make the broad finding that American Title seeks now.[4] The Court's prior finding that Plaintiffs judicially admitted to signing indemnification agreements with a disbursement provision does not entail the broader finding that each (or even any one) of the fourteen plaintiffs agreed to indemnify American Title for a certain claim or set of claims.[5] That is especially true when the claims language in the indemnification agreements produced by American Title for the other 23 plaintiffs varies from agreement to agreement. (*See* Def.'s Mot. Summ. J., Dkt. 264, at 4–6).

Accordingly, the Court may use its discretion to determine whether Plaintiffs' pleading constitutes a judicial admission that these fourteen plaintiffs executed indemnification agreements containing claims provisions that match the claims later asserted against American Title. *McGee*, 412

---

[4] Even if the issues now and then were identical, the law of the case doctrine would not necessarily require the Court to reach the same finding in this instance. The doctrine does not limit a court's power; it guides its discretion. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–17 (1988) ("When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. . . . A court has the power to revisit prior decisions of its own."). Although the doctrine is not controlling, it should ordinarily be applied absent "extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Id.* at 817 (citation and quotation marks omitted). Accordingly, the Fifth Circuit applies the doctrine "unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work manifest injustice." *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 3 F.3d 877, 880 (5th Cir. 1993) (citation and quotation marks omitted).

[5] Not only can the prior judicial admission not establish any unproduced indemnification agreement's claim terms, but also it cannot establish that the fourteen plaintiffs signed agreements including a provision explicitly agreeing to indemnify American Title for claims that they might bring against it, which, as discussed *infra* at 8–9, must appear in an agreement for American Title to recover against its indemnitor.

F.2d at 76. The Court declines to do so, given that these fourteen plaintiffs deny executing indemnification agreements, (Pls.' Mot. Summ. J., Dkt. 284, at 6),[6] and American Title cannot produce evidence that would establish the specific terms of any particular missing agreement.

Without judicial-admission evidence, American Title lacks evidence sufficient to raise a genuine fact issue regarding whether, for these fourteen plaintiffs, the claims identified in the indemnification agreement they admitted signing were later made and whether there existed in those agreements any conditions precedent for recovery *See Transamerica Ins.*, 66 F.3d at 719. Those fourteen plaintiffs are therefore entitled to summary judgment in their favor.

*B. The Remaining 23 Plaintiffs*

It remains to be determined whether summary judgment is appropriate—for either Plaintiffs or American Title—on American Title's contractual indemnity claims against the 23 plaintiffs for whom American Title has produced indemnity agreements. (*See* Hold Harmless Agreements, Alva Decl. Exs. A-1–A-23, Dkt. 119-1). Plaintiffs argue that they are entitled to summary judgment because the indemnity agreements do not obligate them to indemnify American Title for claims that they might bring against American Title. (Pls.' Mot. Summ. J., Dkt. 284, at 9–11). According to Plaintiffs, indemnity agreements under Texas law do not ordinarily apply to claims between the indemnitor and indemnitee, but only to claims brought by third parties against the indemnitee. (*Id.* (quoting *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.—Austin 1999, no pet.))). They argue that the indemnity provisions in their agreements follow this default rule—and therefore do not include claims that they, the indemnitors, might bring against American Title—because the provisions do not explicitly provide otherwise. Defendants make no argument to the contrary, either in their own motion for summary judgment, their reply in support of that motion, or in their response to Plaintiffs' motion for summary judgment. The Court agrees with Plaintiffs.

---

[6] Plaintiffs attribute the allegation in the Seventh Amended Complaint, (*see* Dkt. 124, ¶ 11), to the "imprecise words of a junior attorney. (Pls.' Mot. Summ. J., Dkt. 284, at 7).

7

Under Texas law, "an indemnity does not apply to claims between the parties to the agreement. . . . Rather, it obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision." *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.—Austin 1999, no pet.) (citing *Derr Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ)). Indemnity agreements are to be strictly construed in favor of the indemnitor. *Keystone Equity Mgmt. v. Thoen*, 730 S.W.2d 339, 340 (Tex. App.—Dallas 1987, no writ) (citing *Smith v. Scott*, 261 S.W. 1089 (Tex. Civ. App.—Amarillo 1924, no writ)). Accordingly, an indemnitor's obligations cannot be extended, by construction or implication, beyond the precise terms of the agreement. *Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App.—Dallas 1968, no writ). An indemnity provision can be written "such that the parties indemnify each other against claims they later assert against the other," but the provision must do so expressly. *Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App.—Waco 2004, no pet.).

Plaintiffs cite *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, No. CIV.A. H-07-2684, 2008 WL 5114962, at *19 (S.D. Tex. Dec. 3, 2008), as instructive. (Pls.' Mot. Summ. J., Dkt. 284, at 10). In *Kellogg Brown*, the plaintiff sued the defendant for breaching the indemnity provision of a contract between them that stated: "[The defendant] agrees to defend, indemnify and hold harmless [the plaintiff] from and against any claim . . . or liability of whatever kind or nature . . . from injury . . . to any property arising from or in connection with the Sublet Work." *Id.* at *19. The defendant submitted reimbursement claims to the plaintiff, which the plaintiff alleged to breach their contract's indemnity provision. *Id.* The defendant responded that it had not breached the contract because indemnification provisions apply to "claims brought by third parties," and the defendant was not a third party. *Id.* (citing *MG Building Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 63-64 (Tex. App.—San Antonio 2005, pet. denied)). The court agreed because the contract "[did] not expressly provide for indemnification of claims asserted

between the parties to the agreement." *Kellogg Brown*, 2008 WL 5114962, at *20; *see also id.* ("The term 'any claim' describes the types of claims that are covered by the indemnity obligation but does not address whether those asserting covered claims include the contracting parties."). Because the "plain language" of the contract did not "show that the parties intended to require [the defendant] to indemnify [the plaintiff] for claims that [the defendant] asserted against [the plaintiff]," the plaintiff in *Kellogg Brown* could not recover its costs and attorney's fees under the contract's indemnity provision. *Id.*

The same is true here. The indemnity provisions in Plaintiffs' hold harmless agreements provide that Plaintiffs will "indemnify and hold harmless . . . LandAmerica Lawyers Title of San Antonio, Inc. . . . from any and all claims for payment, damages, and attorney's fees" with regard to either (depending on the particular agreement) the condition of the property, the payment of the down payment, or the title of the property not being issued at the time of conveyance. (*See* Hold Harmless Agreements, Alva Decl. Exs. A-1–A-23, Dkt. 119-1). None of Plaintiffs' indemnification agreements expressly state that Plaintiffs agree to indemnify LandAmerica from claims that they, the indemnitors, may bring against LandAmerica, the indemnitee. These indemnification agreements must be strictly construed in favor of Plaintiffs, which means that their obligations must not be extended beyond the terms of the agreements. Like the court in *Kellogg Brown*, this Court finds that "any claims" defines the scope of the causes of action that fall within the agreement and not the scope of the parties who might bring causes of action. Although the indemnity agreements could have explicitly provided that they applied to claims brought by the indemnitor, *Ganske*, 129 S.W.3d at 708, they did not. Accordingly, Plaintiffs have established that there is no genuine fact issue

9

concerning American Title's inability to prove multiple prongs of its contractual indemnity claims against them. The remaining 23 plaintiffs are therefore entitled to summary judgment in their favor.[7]

## IV. CONCLUSION

For these reasons, Plaintiffs' Motion for Summary Judgment, (Dkt. 284) is **GRANTED**. American Title's Motion for Summary Judgment, (Dkt. 264), is **DENIED**. American Title's Motion to Strike Plaintiffs' Evidence in Opposition, (Dkt. 274), is **DISMISSED AS MOOT**.

**SIGNED** on August 27, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[7] American Title moved to strike a number of statements made by Plaintiffs in the declarations they attached to their response to American Title's motion for summary judgment. (Def.'s Mot. Strike, Dkt. 274). Because the Court need not rely on those declarations to decide Plaintiffs' or American Title's motion for summary judgment, American Title's motion to strike is moot.