IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GREGORY HALPRIN, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § | 5:13-CV-1042-RP |
| FEDERAL DEPOSIT INSURANCE CORP., et al., | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendant American Title Group, Inc. f/k/a LandAmerica Lawyers Title of San Antonio, Inc.'s ("American Title") Motion to Reconsider Order on Summary Judgment. (Dkt. 390). Having considered the motion and the responsive filings, (Dkts. 393, 395), the Court finds that the motion should be denied.

## I. BACKGROUND

Plaintiffs allege that they contracted to buy lots on which certain defendants to this action (the "Padilla Defendants") would build one or more multi-family living units. (7th Am. Compl., Dkt. 124, at 6–7). Plaintiffs allegedly provided LandAmerica Lawyers Title of San Antonio, Inc. ("LandAmerica"), with a down payment under the contracts. (*Id.* at 7). LandAmerica allegedly handled the title and deed transactions for these properties but failed to disclose conflicts of interest and title defects. (*Id.* at 7–8). The properties were never built, and Plaintiffs accuse the Padilla Defendants of fraud. (*Id.* at 7–9). Plaintiffs then brought this action, in which they assert a variety of claims against the Padilla Defendants. (*Id.* at 9–24). Plaintiffs also assert claims against American

1

Title, the title company that survived the merger with LandAmerica[1]: common law and statutory fraud, violations of the Deceptive Trade Practices Act ("DTPA"), civil conspiracy, assisting and participating, negligence, and breach of fiduciary duty. (*Id.* at 25–28). American Title filed a motion to dismiss each of Plaintiffs' claims, (Dkt. 126), which the Court granted, (Dkt. 227). Meanwhile, American Title filed counterclaims against Plaintiffs for contractual and statutory indemnity, arguing that each plaintiff violated their agreement to indemnify American Title by suing it. (LandAm. Am. Ans., Dkt. 125, at 20–24). American Title and Plaintiffs then each sought summary judgment on American Title's contractual indemnity counterclaims in their favor. (Dkts. 264, 284). The Court granted summary judgment in favor of Plaintiffs. (Dkt. 389). The Court's order did not resolve all pending claims between Plaintiffs and American Title; live claims also remain against some of the Padilla Defendants. American Title moved to reconsider the Court's order three days after it was filed. (Dkt. 390).

## II. LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). American Title asserts its motion under Rule 54(b). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R.

---

[1] American Title asks the Court to take judicial notice of evidence that LandAmerica merged with American Title in 2010, (*see* Def.'s Reply Mot. Summ. J., Dkt. 275, at 1–2); the Court assumes without deciding that they did so for purpose of resolving the instant motion.

Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).[2]

### III. DISCUSSION

Plaintiffs and American Title each sought summary judgment on American Title's contractual indemnity counterclaims. (*See* Order, Dkt. 389, at 2). At summary judgment, American Title only produced indemnification agreements for 23 of the 37 plaintiffs. (*See id.* at 4). The Court granted summary judgment in favor of the 14 plaintiffs for which an indemnification agreement was missing because American Title could not meet its burden to prove the terms of those agreements. (*Id.* at 4–7). American Title does not seek reconsideration of that part of the Court's order; it only seeks reconsideration of the Court's grant of summary judgment to the remaining 23 plaintiffs. (Mot. Reconsider, Dkt. 390, at 1).

Indemnity agreements under Texas law do not ordinarily apply to claims between the indemnitor and indemnitee, but only to claims brought by third parties against the indemnitee. *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex. App.—Austin 1999, no pet.) (citing *Derr Constr. Co. v. City of Hous.*, 846 S.W.2d 854, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ)). Indemnity agreements are to be strictly construed in favor of the indemnitor. *Keystone Equity Mgmt. v. Thoen*, 730 S.W.2d 339, 340 (Tex. App.—Dallas 1987, no writ) (citing *Smith v. Scott*, 261 S.W. 1089 (Tex. Civ.

---

[2] Plaintiffs urge the Court not to reconsider its decision without "good reason." (Resp. Mot. Reconsider, Dkt. 393, at 2 (quoting *Lexington Ins. Co. v. ACE Am. Ins. Co.*, 192 F. Supp. 3d 712, 714 (S.D. Tex. 2016), and citing several other pre-*Austin* cases)). The Court is bound to follow *Austin*'s more flexible "any reason" standard.

App.—Amarillo 1924, no writ)). Accordingly, an indemnitor's obligations cannot be extended, by construction or implication, beyond the precise terms of the agreement. *Hudson v. Hinton*, 435 S.W.2d 211, 214 (Tex. Civ. App.—Dallas 1968, no writ). However, an indemnity provision can be written "such that the parties indemnify each other against claims they later assert against the other." *Ganske v. Spence*, 129 S.W.3d 701, 708 (Tex. App.—Waco 2004, no pet.).

In their motion for summary judgment and their response to American Title's, Plaintiffs argued that the "hold harmless" agreements they signed applied only to claims from third parties. (Resp. Def.'s Mot. Summ. J., Dkt. 273, at 14–16; Pls.' Mot. Summ. J., Dkt. 284, at 9–11). American Title did not address Plaintiffs' argument, either in reply to its own motion or in response to Plaintiffs'. (*See* Reply Def.'s Mot. Summ. J., Dkt. 275; Resp. Pls'. Mot. Summ. J., Dkt. 286). The Court agreed with Plaintiffs. (Order, Dkt. 390, at 7–10). The indemnity provisions in Plaintiffs' hold harmless agreements provide that Plaintiffs will "indemnify and hold harmless . . . LandAmerica Lawyers Title of San Antonio, Inc. . . . from any and all claims for payment, damages, and attorney's fees" with regard to either (depending on the particular agreement) the condition of the property, the payment of the down payment, or the title of the property not being issued at the time of conveyance. (*See* Hold Harmless Agreements, Alva Decl. Exs. A-1–A-23, Dkt. 119-1). The Court found that "[n]one of Plaintiffs' indemnification agreements expressly state that Plaintiffs agree to indemnify LandAmerica from claims that they, the indemnitors, may bring against LandAmerica, the indemnitee." (Order, Dkt. 390, at 9). Because "indemnification agreements must be strictly construed in favor of Plaintiffs," the indemnitors, the Court determined that Plaintiffs' "obligations must not be extended beyond the terms of the agreements." (*Id.*). Accordingly, the Court found that the hold harmless agreements did not apply to claims brought by Plaintiffs against American Title and held that Plaintiffs were entitled to summary judgment in their favor. (*Id.* at 9–10).

4

American Title now wishes to offer arguments on this issue. Under Rule 54(b), the Court may consider those arguments even though they could have—and should have—been raised previously. *Austin*, 864 F.3d at 336. American Title's position is that the hold harmless agreements do in fact apply to claims brought by Plaintiffs because they indemnify American Title against "claims that would be brought primarily, and perhaps only, by the Plaintiffs." (Mot. Reconsider, Dkt. 390, at 4). According to American Title, only Plaintiffs would assert claims against American Title regarding the condition of the property, the payment of the down payment, or the title of the property not being issued at the time of conveyance. (*Id.* at 5–6).

Of course, American Title does not argue that the hold harmless agreements explicitly apply to claims brought by the indemnitor against the indemnitee, because they do not. (*See* Hold Harmless Agreements, Alva Decl. Exs. A-1–A-23, Dkt. 119-1). American Title's position is based on a premise about the hold harmless agreements that is, at most, implicit—that the indemnification clauses must refer to Plaintiffs because Plaintiffs are the most likely parties to bring the identified claims. In its previous order, the Court interpreted Texas law to require more: if the parties want their indemnification clause to include claims brought by the indemnitor, they must provide for it explicitly. (Order, Dkt. 389, at 8, 9 (citing *Ganske*, 129 S.W.3d at 708)).

Nothing in American Title's motion persuades the Court to reach a different conclusion upon reconsideration. In support of its position, American Title points to two nonbinding, unpublished decisions by federal district courts. (Mot. Reconsider, Dkt. 390, at 5 (citing *BP Products N. Am. Inc. v. J.V. Indus. Companies, LTD.*, CIVA H-07-2369, 2010 WL 1610114, at *4–5 (S.D. Tex. Apr. 21, 2010); *Radiant Sys., Inc. v. Am. Scheduling, Inc.*, CIV.A. 3:04-CV-2597-P, 2006 WL 2583266, at *3 (N.D. Tex. Sept. 7, 2006))). Neither decision persuades the Court to reconsider its decision in this case. In *Radiant*, unlike this case, the indemnification clause explicitly identified claims brought by the indemnitee against the indemnitor. *Radiant,* 2006 WL 2583266, at *3 (finding that the

5

indemnification clause applied to losses, including attorney's fees, resulting from any breach of contract by Radiant, the indemnitor). In *BP Products*, the provision at issue did not explicitly include claims brought by the indemnitor against the indemnitee, but the court nevertheless found that the provision applied to these claims based on the provision's practical implications. 2010 WL 1610114, at *5.[3] American Title urges the Court to take the same approach here.

Resolving this issue requires the Court to construe a contract under state law. The relevant state law, however, is imprecise about how explicit an indemnification provision must be to cover claims between the indemnitor and indemnitee. The Court is bound to apply Texas law as interpreted by the Texas Supreme Court, *see Am. Intern. Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010), but where, as here, that court has not spoken on an issue, this Court must make an *Erie* guess based not on decisions by other federal district courts, but on:

> (1) decisions of the [Texas] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Texas] Supreme Court decisions on related issues, (3) dicta by the [Texas] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Texas] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

*Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (quoting *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998)). In making an *Erie* guess, federal courts "defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) (quoting *First Nat'l Bank of Durant v. Trans Terra Corp.*, 142 F.3d 802, 809 (5th Cir. 1998)). The *BP Products* court predicted state law; it did not create it. *See id.* ("Our task [in making an *Erie* guess] is to attempt to predict state law, not to create or modify it.") (quotation

---

[3] In *BP Products*, the indemnification clause applied to losses caused by "damage to, or loss or destruction of . . . property of" BP, the indemnitee. *BP Products*, 2010 WL 1610114, at *5. Because "BP is the most likely, and perhaps the only, party to assert a claim for losses caused by damage to BP's property," the Court found that the contract clearly required the indemnitor "to indemnify BP for BP's own claims for losses caused by damage to BP's property." *Id.*

6

marks and citation omitted). The Court, faced with the same task, reached a different conclusion in its previous order and reaches the same conclusion here.

Under Texas law, indemnification provisions do not ordinarily apply to claims between parties to the agreement, *Derr Constr.*, 846 S.W.2d at 858, and indemnity agreements are to be strictly construed in favor of the indemnitor, *Keystone Equity*, 730 S.W.2d at 340. In *Ganske*, which held that parties can contract around that default rule, the court found that the parties failed to do so despite evidence that the indemnities wanted the provision to include claims brought by the indemnitor. 129 S.W.3d at 708. In *Claybar v. Samson Expl., LLC*, 09-16-00435-CV, 2018 WL 651258 (Tex. App.—Beaumont Feb. 1, 2018, pet. filed), the court found that an indemnification provision that applied to "any claim . . . arising from . . . the negligence or misconduct of [the indemnitor]" did not create liability for losses arising out of claims between the parties, because the provision lacked "specific language . . . that would overcome the general rule that indemnity agreements do not generally apply to claims between the parties to the agreement." *Id.* at *3. Although neither of these cases require express reference to claims between the parties, some federal courts making an *Erie* guess about this issue have appeared to do so. *See Kellogg Brown & Root Intern., Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, CIV.A. H-07-2684, 2008 WL 5114962, at *20 (S.D. Tex. Dec. 3, 2008) (holding that an indemnification provision that did "not expressly provide for indemnification of claims asserted between the parties" did not provide for such claims). This Court similarly finds that an express-language requirement is the best prediction of state law on this issue in light of the *Claybar* court's insistence on "specific" language referring to claims between the parties, 2018 WL 651258, at *3, and on the rule that indemnity agreements are to be strictly construed in favor of the indemnitor, *Keystone Equity*, 730 S.W.2d at 340.

Accordingly, an indemnification provision does not apply to claims between the parties to the indemnification agreement unless the parties so provide, explicitly, in the indemnification

7

agreement. The hold harmless agreements at issue in this action do not meet that requirement. That Plaintiffs may be the "most likely" parties to bring the claims covered by the indemnification provision, (Mot. Reconsider, Dkt. 390, at 2), may be indirect evidence of intent, but it is not specific or express language applying the provision to claims between the parties.[4] As such, the Court reiterates its holding that the hold harmless agreements signed by the 23 plaintiffs for whom American Title has produced a signed agreement do not obligate those plaintiffs to indemnify American Title for losses arising out of claims between those plaintiffs and American Title. (*See* Order, Dkt. 390, at 9).

## IV. CONCLUSION

For these reasons, American Title's Motion to Reconsider Order on Summary Judgment, (Dkt. 390), is **DENIED**.

**SIGNED** on January 14, 2019.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[4] A provision that applies to claims that may be brought by the parties against one another, but also by third parties against the indemnitee, is not sufficiently specific under state law. *See Claybar*, 2018 WL 651258, at *3.