IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GREGORY HALPRIN, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 5:13-CV-1042-RP |
| FEDERAL DEPOSIT INSURANCE CORPORATION *as receiver for* FIRST NATIONAL BANK, et al., | § § § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court are the following motions:

1. Defendant American Title Group, Inc. f/k/a LandAmerica Lawyers Title of San Antonio, Inc.'s ("American Title") "Motion for Summary Judgment on Its Cross-Claim for Indemnity against Defendant Mauro T. Padilla," ("Padilla") (Dkt. 403);[1]

2. American Title's "Motion for Summary Judgment on Its Counterclaim Pursuant to Texas Civil Practice and Remedies Code 17.50(c) against Plaintiffs,"[2] (Dkt. 406), Plaintiffs' response, (Dkt. 408), and American Title's reply, (Dkt. 409); and

---

[1] Padilla has neither responded to this motion nor requested additional time to respond. The date by which his response was due has passed. *See* W.D. Tex. Loc. R. CV-7(e)(2).

[2] "Plaintiffs" are Joseph Amelio, Tawny Amelio, Edward Arriola, Kennie Arriola, Gerald Bates, Adolfo Bejarano, Mauricio Bejarano, Silvio Brigliadoro, Maria R. Collins, David Goldberg, Gregory Halprin, Denise Heywood, George Heywood, Kristopher Hochart, Gohar Karahagopian, Hagop Karahagopian, Hermann Kinschner, Les Klingerman, Payam Paul Kohanbosh, Ben Li, Lin Li, Michael Loeffler, Irena Minkova, Mikail Minkov, Andrew V. Nguyen, Simon Parrott, Melissa Parrott, Stan Salah, Brian Taus, David Trustey, Kevin Trustey, Michael Trustey, Patricia Trustey, Michael Vick, Paul Weber, and Desiree Young. (7th Am. Compl., Dkt. 124, ¶ 3).

3. Plaintiffs' "Motion for Summary Judgment on [American Title's] 'Groundless' Counterclaim," (Dkt. 411),³ American Title's response, (Dkt. 412), and Plaintiffs' reply, (Dkt. 413).

After considering the parties' arguments, the record, and the relevant law, the Court grants American Title's motion for summary judgment on its indemnity cross-claim, (Dkt. 403), grants in part and denies in part American Title's motion for summary judgment on its Texas Civil Practice and Remedies Code 17.50(c) counterclaim, (Dkt. 406), and denies Plaintiffs' motion for summary judgment on that counterclaim, (Dkt. 411).

## I. BACKGROUND

In this "complex and unusually contentious case," *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 1588312, at *1 (Costa, Circuit J., S.D. Tex. Apr. 20, 2016), Plaintiffs alleged that they entered into individual agreements with Defendants HTG Real Property Management ("HTG"), the Padilla Property Corporation ("PPC"), Maria Del Rosario Padilla, Mauro T. Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla (collectively, the "Padilla Defendants") to purchase lots on which the Padilla Defendants would build one or more multi-family living units. (7th Am. Compl., Dkt. 124, ¶¶ 5–6). Plaintiffs alleged that they provided American Title with a down payment and that the Padilla Defendants then deeded half-acre lots to Plaintiffs. (*Id.*). After construction began, the Padilla Defendants allegedly asked Plaintiffs to deed their lots back to the Padilla Defendants in order to obtain construction financing. (*Id.* ¶ 7). The Padilla Defendants also allegedly asked Plaintiffs to agree to subrogate their claims to those of the construction lender, telling Plaintiffs that this would allow the Padilla Defendants to obtain construction financing and

---

³ American Title's "Motion for Summary Judgment on Its Counterclaim Pursuant to Texas Civil Practice and Remedies Code 17.50(c)" against Plaintiffs, (Dkt. 406), and Plaintiffs' "Motion for Summary Judgment on [American Title's] 'Groundless' Counterclaim," (Dkt. 411), are cross-motions for summary judgment.

complete construction. (*Id.*). Instead, Plaintiffs alleged that the Padilla Defendants used those funds to pay personal and/or corporate debt. (*Id.*). The investment properties were never completed. (*Id.* ¶ 13). Plaintiffs then brought this action, in which they asserted a variety of claims against HTG, PPC, and the Padilla Defendants. (*Id.* at 9–24). Plaintiffs also asserted claims against American Title, the title company that survived the merger with the company that facilitated Plaintiffs' real estate transactions: common law and statutory fraud, violations of the Deceptive Trade Practices Act ("DTPA"), civil conspiracy, assisting and participating, negligence, and breach of fiduciary duty. (*Id.* at 25–28). American Title filed a motion to dismiss each of Plaintiffs' claims, (Dkt. 126), which the Court granted, (Dkt. 227). American Title also filed counterclaims against Plaintiffs for contractual and statutory indemnity, arguing that each plaintiff violated their agreement to indemnify American Title by suing it. (Am. Ans., Dkt. 125, at 20–24). The Court granted summary judgment in Plaintiffs' favor on the contractual indemnity counterclaims. (Dkt. 389).

Plaintiffs filed a notice of their intent to appeal the dismissal of their seventh amended complaint. (Dkt. 231). They then dismissed the appeal without prejudice. (Dkt. 232 at 1). Plaintiffs subsequently filed a motion to stay pending appeal and to sever the dismissed claims so that they could be appealed as final orders, (Dkt. 233), which the Court denied, (Dkt. 239). And Plaintiffs filed a motion for Rule 54(b) certification of final judgment and petition for § 1292(b) interlocutory appeal, (Dkt. 257), which the Court also denied, (Dkt. 304).

Now, American Title seeks summary judgment on its statutory indemnity cross-claim against Padilla, (Dkt. 403), and its counterclaim against Plaintiffs in which it argues that their DTPA claims are "groundless" within the meaning of Texas Business and Commerce Code § 17.50(c), (Dkt. 406). Plaintiffs simultaneously seek summary judgment on the latter counterclaim. (Dkt. 411).

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmoving party is required to identify specific evidence in the record and to articulate the precise way that evidence supports her claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmoving party's opposition to the motion for summary judgment. *Id.* After the nonmoving party has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find in its favor, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal*, 230 F.3d

4

170, 175 (5th Cir. 2000). Courts must view the summary judgment evidence in the light most favorable to the nonmoving party. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

The same core summary judgment standard applies to cross-motions: the court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001); *see also* 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2720 (4th ed. 2019). "The mere filing, however, of cross[-]motions for summary judgment neither establishes that there is no issue of material fact, nor does it obligate the trial court to render summary judgment." *Jacobs v. Hartford Life & Accident Ins. Co.*, No. CV H-02-3100, 2006 WL 8451348, at *2 (S.D. Tex. July 12, 2006). The Fifth Circuit has previously elaborated upon the effect of cross-motions on a finding of a genuine dispute of material fact:

> "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed. . . . The rationale for this rule, of course, is that each party moving for summary judgment may do so on different legal theories dependent on different constellations of material facts. Indeed, cross-motions for summary judgment may demonstrate a genuine dispute as to material facts as often as not. . . . Nonetheless, cross-motions may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive."

*Bricklayers, Masons & Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

### III. DISCUSSION

**A. American Title's Motion for Summary Judgment on Its Indemnity Cross-Claim**

American Title asks the Court to grant summary judgment on its cross-claim for statutory indemnity against Padilla.[4] (Dkt. 403 at 3; *see also* Dkt. 125 at 28 (cross-claim)). But not only does it

---

[4] American Title originally made its cross-claim against a group of parties it referred to as the "Padilla Cross-Defendants": "HTG Real Property Management, Padilla Property Corp., Mauro T. Padilla, Maria Del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla." (Dkt. 125 at 26). However, the language it uses in the

request that it prevail on that legal issue, it also asks that the Court award it "attorney's fees and costs in the amount of $468,293.58 for fees incurred, $30,000.00 for any appeal taken to the Fifth Circuit Court of Appeals, and $15,000[.00] should this cause be appealed to the United States Supreme Court." (Dkt. 403 at 7). Padilla, who American Title states "was sentenced to prison" "[f]or his role" in the events giving rise to this case, did not respond. (*Id.* at 1–2). As American Title notes, the Court previously entered a final judgment against Padilla on all of Plaintiffs' claims in their Seventh Amended Complaint, including for violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code. § 17.42 *et seq.* (Agreed Judgment, Dkt. 364, at 1; *see also* Dkt. 403 at 2). Padilla failed to address all of American Title's fact assertions, which the Court will thus treat as "undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2); *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

1. Basis for American Title's Motion

Section 17.555 of the DTPA allows "[a] person against whom an action has been brought under [the DTPA] may seek . . . indemnity from one who, under the statute law or at common law, may have liability for the damaging event of which the consumer complains." That person "may

---

motion at issue here, including in the motion's title, indicates that it is seeking a ruling on its cross-claim only as to Mauro T. Padilla, not the other "Padilla Cross-Defendants." (Dkt. 403 at 1, 3, 5). Complicating the matter is that American Title served "all counsel of record" and Maria Del Rosario Padilla, Mauro T. Padilla, Mauro Joe Padilla, Carlos Miguel Padilla, Daniel L. Brown, and Padilla Property Corporation with its motion. (*Id.* at 9).

Several of the initial set of "Padilla Cross-Defendants" are either no longer parties to this case or subject to a motion for default judgment. On September 30, 2016, the Court granted Daniel L. Brown's motion to dismiss, (Dkt. 153), terminating him as a party to this case. (Dkt. 227). On July 6, 2018, the Court granted Carlos Miguel Padilla's oral motion to dismiss the claims against him, also terminating him as a party. (Dkt. 351). On July 23, 2018, the Court dismissed Plaintiffs' claims against Maria Del Rosario Padilla and Mauro Joe Padilla with prejudice, terminating them as parties as well. (Dkt. 379). On January 17, 2019, the Clerk entered default against HTG Real Property Management and Padilla Property Corporation (in addition to Mauro Joe Padilla, who by this time was no longer a party to the case), (Dkt. 399), though no party subsequently filed a motion for default judgment.

Given this procedural history, only Mauro T. Padilla remains as a party to this case who has previously appeared before the Court. Accordingly, the Court will construe American Title's motion as seeking statutory indemnity from Mauro T. Padilla alone.

6

recover all sums that he is required to pay as a result of the action, his attorney's fees reasonable in relation to the amount of work performed in maintaining his action for indemnity, and his costs." Tex. Bus. & Com. Code § 17.555. A defendant who is sued under the DTPA, but who is not itself found liable, may recover indemnity for attorney's fees it incurred in that litigation. *Swafford v. View-Caps Water Supply Corp.*, 617 S.W.2d 674, 675 (Tex. 1981) (per curiam).[5]

American Title is such a defendant, (7th Am. Compl., Dkt. 124, ¶¶ 27–28), and so it may seek indemnity from Padilla, who has been found liable for DTPA violations, (Agreed Judgment, Dkt. 364, at 1). As in *Swafford*, "[t]he statute expressly authorizes indemnity for attorney's fees in this situation." 616 S.W.2d at 675. No genuine dispute of material fact exists for this issue.

2. American Title's Attorney's Fees

Given that the basis for American Title's motion is valid, the Court next assesses the accuracy of its fees request.[6]

i. *The Fees American Title Requests*

The $468,293.58 for which it asks is a sum derived from its own calculations, based on billing rates of $225–425 per hour for attorneys and $125–35 per hour for paralegals at Jackson

---

[5] In *Swafford*, the court apparently awarded indemnity for attorney's fees under Section 17.555's "all sums" catch-all category rather than the "attorney's fees" provision. 616 S.W.2d at 675. The latter category is limited to attorney's fees expended in service of the "action for indemnity." Tex. Bus. & Com. Code § 17.555; *see also Cent. Consol., Inc. v. Robertshaw Controls Co.*, 868 S.W.2d 910, 912 (Tex. App.—Beaumont 1994, writ denied) (citing *Swafford*, 616 S.W.2d at 674) ("The courts have recognized the right to recover attorney's fees in the absence of other liability where a statute specifically provides that a person against whom a deceptive trade practices action has been brought may recover 'all sums that he is required to pay as a result of the action.'").
[6] Typically, a party would request attorney's fees in a separate motion under Federal Rule of Civil Procedure 54(d)(2)(A). In other words, after being granted summary judgment on the claim that entitles it to relief, the party would then move to specify and obtain the relief to which it has become entitled. Here, though, the Court considers American Title's unified request, having granted summary judgment on the core legal issue. *See Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 786 (5th Cir. 1997) ("[T]he policy goal that animates Rule 56 is the prompt disposition of cases when there is no genuine issue of any material fact for the court to consider. In order to achieve this goal, the rule thus requires a court, under the proper conditions, to grant the relief to which a party is entitled . . . ."); *see also Whitney Bank v. Hancock*, No. CIV.A. H-11-2164, 2013 WL 1404822, at *2–5 (S.D. Tex. Apr. 5, 2013) (granting summary judgment on claim for attorney fees and immediately proceeding to evaluate the attorney fee request).

7

Walker LLP, American Title's primary firm, and $285 per hour for attorneys at Winstead PC, a second firm American Title retained. (Wheatley Decl., Dkt. 403, Ex. C, at 34–35). Significantly, this sum represents "the total amount of attorneys' fees [American Title] incurred in this dispute." (Dkt. 403 at 6). American Title argues that it "incur[red] fees it would have not sustained but for Mauro T. Padilla's conduct" and that "[t]his matter required more time and labor from counsel for [American Title] because of the Plaintiffs' baseless, unmeritorious assertions against [American Title], the number of litigants involved, the evolution in Plaintiffs' legal theories for liability, multiplicity of claims, numerous unsuccessful attempts to replead, and revolving sets of counsel." (*Id.* at 6–7). According to American Title, "the amount of attorney's fees incurred in this case [is] comparable to other cases that are similar in complexity and duration." (*Id.* at 7). In this motion, American Title seeks fees assessed in 40 Jackson Walker invoices and 28 Winstead invoices.[7] (Dkt. 403 at 43–327).

ii. *Background Law*

"Resolving the fee question thus requires the Court to perform a couple preliminary tasks before it conducts a lodestar analysis of the fee request.[8] First, it must determine which of [American Title's] claims . . . are "recoverable" under the fee provision. After sorting out the recoverable and unrecoverable claims, the Court needs to determine whether the work related to the unrecoverable claims was nonetheless inextricably intertwined with the work on recoverable claims allowing a full award or whether there is a basis for segregation or percentage allocation." *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 1588312, at *1 (Costa, Circuit J., S.D. Tex. Apr. 20,

---

[7] The Jackson Walker invoices are numbered 1375366, 1380042, 1383586, 1387305, 1393301, 1398736, 1401090, 1406808, 1413430, 1418320, 1422047, 1427255, 1432460, 1435770, 1441261, 1445906, 1451691, 1455659, 1460715, 1463476, 1472256, 1476444, 1480791, 1486173, 1490362, 1494355, 1499351, 1504190, 1508806, 1513077, 1517759, 1520363, 1527835, 1540821, 1555238, 1559837, 1564532, 1568688, 1570819, and 1575900. The Winstead invoices are numbered 1652898, 1660029, 1667174, 1674060, 1688560, 1695950, 1703719, 1711869, 1718464, 1725603, 1734394, 1740924, 1749782, 1757191, 1776312, 1765826, 1776303, 1776313, 1791047, 1800356, 1801378, 1817775, 1834472, 1837210, 1837205, 1861090, 1871411, and 1871676. (Dkt. 403 at 43–327).
[8] American Title, however, suggests that the Court proceed directly to the lodestar analysis. (Dkt. 403 at 6).

8

2016). "[T]he governing Texas law provides guidance on how to decide fee disputes when work for some claims is recoverable but work on other claims is not." *Id.* at *3.

Typically, attorney's fees must be segregated between "claims for which they are recoverable and those for which they are not," *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006), though an exception exists when the claims arise out of the same transaction and are "so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (quoting *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)). And when "the services involved in preparing one claim would still be incurred in preparing the other," "many if not most legal fees . . . cannot and need not be precisely allocated to one claim or the other." *Id.* "[T]he failure to segregate does not mean that a party cannot recover any of its attorney's fees" because "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Navigant Consulting*, 508 F.3d at 298 (quoting *Chapa*, 212 S.W.3d at 313). If the fee-seeking party does not segregate its fees, "[t]he district court, as the trier of fact on the question of attorney's fees, [does] not abuse its discretion in awarding a percentage of . . . fees rather than denying recovery of fees completely." *Id.* However, "interrelated or intertwined facts are not enough to trigger the exception; 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.'" *In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) (quoting *Chapa*, 212 S.W.3d at 311). Moreover, when attorneys undertake an "effort to recover 100 percent of their fees," the Court must be watchful that their fee-seeking position is not "inconsistent with [their] underlying claims." *Chapa*, 212 S.W.3d at 313.

To determine whether the segregation exception applies, the Court examines the exact billing records detailing the work done on the case's various claims. *See, e.g.*, *Navigant Consulting*, 508 F.3d at 298 ("The district court, as the trier of fact on the question of attorney's fees . . . examined

9

the facts and proof in the case to see whether the issues were inextricably intertwined."); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. CV 4:09-0422, 2017 WL 6942658, at *15 (S.D. Tex. Sept. 21, 2017) (referring to "the invoices" and specific "billing entr[ies]" the court reviewed); *Eagle Suspensions, Inc. v. Hellman Worldwide Logistics, Inc.*, No. 3:12-CV-0611-G, 2015 WL 252442, at *2 (N.D. Tex. Jan. 20, 2015) ("Plaintiff submitted its unredacted billing invoices *in camera* as ordered."). Here, American Title filed its unredacted billing entries under seal. (Dkt. 420; *see also* Order, Dkt. 415 (directing American Title to file its unredacted billing entries as attachments to a motion for leave to file under seal)). Generally, "[t]he party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

> Once the Court completes that step, it performs the following "lodestar" analysis:
>
> First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. *Id.* In making a lodestar adjustment the court should look to twelve factors, known as the *Johnson* factors, after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).[9] "These factors are comparable to those laid out by the Texas Supreme Court, and this Court may rely on them when determining

---

[9] While the Court reaches the conclusion concerning the applicability of the lodestar method that American Title urges, the cases American Title cites in support are inapt. (Dkt. 403 at 5). In *Todd v. AIG Life Ins. Co.*, 47

attorney's fees under Texas law which governs" the DTPA claims in this case. *Iniekpo v. Avstar Int'l Corp.*, No. SA-07-CA-879-XR, 2010 WL 3909321, at *3 (W.D. Tex. Sept. 30, 2010) (citing *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). Generally, "[t]here is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden 'of showing that such an adjustment is necessary to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

"[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citing *Von Clark v. Butler*, 915 F.2d 255, 258 (5th Cir. 1990)). But the amount involved and the result obtained, and the experience, reputation and ability of counsel factors cannot serve as independent bases for adjusting the lodestar amount upward—so too for the novelty and difficulty of the questions presented and the skill required to perform the legal services properly. *Walker*, 99 F.3d at 771, 771 n.12 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "Enhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." *Id.* (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 936 (5th Cir.), *opinion vacated in part on reh'g*, 903 F.2d 352 (5th Cir. 1990)). And consideration of whether the fee is fixed or contingent is barred entirely. *Id.* (citing *City of Burlington*, 505 U.S at 567).

---

F.3d 1448, 1459 (5th Cir. 1995), and *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997), the Fifth Circuit explained that courts apply the lodestar method in ERISA cases. This is not an ERISA case.

iii. *Analysis*

Initially, the threshold question of recoverability—that is, whether the sum American Title requests mixes fees incurred in pursuing claims for which those fees are recoverable and claims for which they are not—is relatively simply answered. The DTPA explicitly and capaciously allows for recovery of "all sums that [American Title] is required to pay as a result of the action." Tex. Bus. & Com. Code § 17.555. This case is not akin to the more common situation in which a party seeks full attorney's fees arising from two causes of action, one recoverable and one not. *See, e.g.*, *Chapa*, 212 S.W.3d at 313; *Bear Ranch*, 2016 WL 1588312, at *3. Similarly, the fees need not be segregated between recoverable and nonrecoverable claims because the DTPA's broad ambit renders them sufficiently intertwined.[10] *See Chapa*, 212 S.W.3d at 311. American Title's current fee-seeking position does not appear to be inconsistent with its underlying claims as expressed in its previous filings, in that it has consistently maintained that it is entitled to indemnity from Padilla. *Chapa*, 212 S.W.3d at 313. (*See* Crossclaim, Dkt. 125, at 26–29; Am. Mot. Dismiss, Dkt. 126).

So, the Court proceeds to the lodestar analysis. "Attorneys' fees are to be calculated at the 'prevailing market rates in the relevant community.'" *Walker*, 99 F.3d at 770 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). American Title supports its fee request with a declaration from Scott A. Wheatley of Jackson Walker, its "primary attorney," who explains that he charged "$325 per hour from 2014 through 2018," and $425 per hour in 2019. (Ex. C, Dkt. 403, at 34). Other attorneys at his firm charged rates ranging from $225 to $425 per hour, and paralegals charged $125 to $135 per hour (both ranges including increases beginning in 2019). (*Id.* at 34–35). Most of the invoices are dated before 2019. (Dkt. 403 at 43–327). The Winstead attorneys that American Title retained

---

[10] Even if there were both recoverable and nonrecoverable claims at issue here, "[t]he voluminous billings in this complex and unusually contentious case . . . make it very difficult to segregate every time entry," *Bear Ranch*, 2016 WL 1588312, at *5, and the claims involved appear to be sufficiently interrelated as to trigger the exception to the segregation requirement, *see Navigant Consulting*, 508 F.3d at 298.

charged $285 per hour. (*Id.* at 35). American Title describes these fees as having been assessed "at a significant discount from the usual and customary rates charged by these individuals for the performance of legal services." (*Id.*).

As derived from the invoices American Title submitted, then, the lodestar for their attorney's fees is $468,293.58—i.e., the hours the attorneys and paralegals expended on the case multiplied by their various hourly rates (plus costs). (Dkt. 403 at 5). *See Migis*, 135 F.3d at 1047. The Court finds that the high number of hours is reasonable, as this is an inordinately complex and time-consuming case. The hourly rates are also reasonable based on the various lawyers' experience and their firms' sizes and locations. (*See* Walker Decl., Dkt. 403, at 33–35). *See also* Nils Greger Olsson, *2015 Hourly Fact Sheet* 12–13 (State Bar of Texas, Dep't of Research and Analysis 2016), https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID=34182; *see generally, e.g.*, *Admiral Ins. Co. v. Wieland*, No. A-15-CV-77-RP-ML, 2016 WL 8224270, at *3–4, 3 n.2 (W.D. Tex. Oct. 6, 2016) (taking judicial notice of hourly rate fact sheet and using it to calculate a reasonable hourly rate).

Next, the Court considers whether to make a lodestar adjustment. *See Migis*, 135 F.3d at 1047. For factor (1), this litigation required a great deal of time and labor: it involves a complex set of claims involving multiple parties. American Title has been involved in this case in some capacity since at least October 26, 2010 (if not earlier), when the state court records filed with Defendant Federal Deposit Insurance Corporation's *as receiver for* First National Bank petition for removal first list American Title as a party.[11] (Dkt. 2-1 at 18). In American Title's characterization, "[t]his matter required more time and labor from counsel . . . because of the Plaintiffs' unfounded, baseless

---

[11] The first invoice American Title submitted is dated February 9, 2012, with the first billing entry dated January 17, 2012. (Dkt. 403 at 223). It is a Winstead invoice, though; the first Jackson Walker invoice is dated May 29, 2014, with the first billing entry dated April 8, 2014. (*Id.* at 43–44).

13

assertions, the number of litigants involved, Plaintiffs' constantly shifting theories, multiplicity of claims, numerous unsuccessful attempts to replead, and revolving sets of counsel." (Ex. C, Dkt. 403, at 35). The Court expressly does not pass judgment on Plaintiffs' litigation strategy, but finds the spirit of American Title's argument—that this case was particularly difficult to litigate—to be reasonable given this case's circumstances. For factor (2), though this case was logistically complex, American Title does not allege that the legal questions presented were notably novel or difficult. (*Id.*). For factors (3) and (9) American Title, through Wheatley, argues that "[i]t was necessary for [American Title] to retain an attorney with [Wheatley's] level of expertise to work on this case." (*Id.* at 34). The Court concurs to the extent that experience in complex civil litigation and real estate/land title disputes aided American Title's counsel in properly performing the legal services American Title required. For factor (4), American Title does not maintain, and the Court does not find, that its attorneys were meaningfully precluded from other employment because of their work on this case. For factor (5), the Court finds that the fees charged were customary, as described above. For factor (7), it is not clear that the client or the circumstances imposed any relevant time limitations; litigation is still ongoing. For factor (8), American Title's counsel obtained favorable results, (*see* Order, Dkt. 227); the amount involved is apparent in the attorney's fees requested. (Dkt. 403 at 2). For factor (10), it does not seem that this case was "undesirable" for counsel—American Title's counsel continued to work on its behalf for years, with no indication of trepidation. For factor (11), American Title and its counsel appear to have a developed professional relationship, as they negotiated discounted hourly rates, supporting the reasonableness of those rates (Ex. C, Dkt. 403, at 34). For factor (12), it is difficult to find precisely similarly situated cases with which to compare fee awards.

Overall, having analyzed the *Johnson* factors, the Court declines to adjust the lodestar amount. The Court finds that American Title has carried its burden in demonstrating the proper amount of fees to which it is entitled.[12]

However, American Title additionally asks for "$30,000.00 for any appeal taken to the Fifth Circuit Court of Appeals" and "$15,000[.00] should this cause be appealed to the United States Supreme Court." (Dkt. 403 at 7). Texas law permits a court to award appellate attorney's fees "provided they are conditioned on ultimate appellate success." *Borg-Warner Protective Servs. Corp. v. Flores*, 955 S.W.2d 861, 870 (Tex. App.—Corpus Christi-Edinburg 1997, no pet.); *Chilton Ins. Co. v. Pate & Pate Enterprises, Inc.*, 930 S.W.2d 877, 896 (Tex. App.—San Antonio 1996, pet. denied). Here, American Title's request for appellate attorney fees is unconditional—i.e., not premised on its potential success before higher courts. (Dkt. 403). Moreover, federal district courts applying Texas law routinely deny requests for appellate attorney's fees as speculative, and, citing concerns of judicial economy, instruct the requesting party to refile its motion once it has actually incurred appellate fees. *See, e.g.*, *Innovative Sports Mgmt., Inc. v. Perez*, No. 3:13-CV-1328-L, 2014 WL 1095140, at *3 (N.D. Tex. Mar. 20, 2014) ("The court believes that an award of attorney's fees should be based on time expended, not some yet-to-occur event. Moreover, federal courts rarely award attorney's fees for matters that have not occurred."); *Amlin Corp. Member, Ltd. v. Logistics Grp. Int'l, Inc.*, No. CIV.A. H-09-2695, 2011 WL 3271335, at *10 (S.D. Tex. July 28, 2011); *Gonzalez v. Hampshire Roofing Co., L.L.C.*, No. 1:09-CV-875, 2010 WL 11629284, at *1 (E.D. Tex. Oct. 28, 2010); *Edwards v. Aaron Rents, Inc.*, 482 F. Supp. 2d 803, 814 (W.D. Tex. 2006). Accordingly, the Court denies American Title's request for appellate attorney's fees without prejudice. Should American Title incur appellate

---

[12] These fees are detailed in the invoices listed above. *See* n.7, *supra*.

attorney's fees that it believes it is entitled to recompense from Padilla under Section 17.555 of the DTPA, it may file a motion seeking to recover them at that point.

### B. American Title's Motion for Summary Judgment on Its Texas Business and Commerce Code 17.50(c) Counterclaim

American Title then requests that the Court grant it summary judgment on its counterclaim against Plaintiffs, which alleges that their DTPA claims "are groundless and are brought in bad faith or for the purposes of harassment."[13] (Dkt. 406 at 2; Counterclaim, Dkt. 125 at 24 (citing Tex. Bus. Code § 17.50(c))). Texas Business and Commerce Code § 17.50(c) provides that "[o]n a finding by the court that an action under [the DTPA] was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court *shall* award to the defendant reasonable and necessary attorneys' fees and court costs" (emphasis added). American Title cites the Court's September 30, 2016, Order dismissing Plaintiffs' DTPA claims against American Title, in which it noted that Plaintiffs' claims were insufficient despite "access to years of discovery, including 42 depositions." (Dkt. 406 at 2–3 (citing Order, Dkt. 227, at 7)). American Title argues that Plaintiffs' claims "are groundless because they have no basis in law or fact" and that Plaintiffs maintained their DTPA claims in bad faith. (*Id.* at 4–9). Noting that Plaintiffs have amended their complaint seven times,[14] American Title protests that Plaintiffs should not "now get to demonstrate that their previous eight complaints were well-founded by pointing only to their ninth, futile attempt." (Dkt. 409 at 2).

Plaintiffs respond that American Title is effectively arguing that "because Plaintiffs' DTPA claims were dismissed, they should get their fees," which is "obviously not the standard." (Dkt. 408,

---

[13] Though both American Title and Plaintiffs' cross-motions concern the same legal issue, the Court considers them separately and not mutually exclusively. *See supra* Part II.

[14] "When the case was removed to federal court in 2013, Plaintiffs had already filed five versions of their petition. After Plaintiffs were ordered to amend their petition to conform to the pleading requirements of the Federal Rules of Civil Procedure, Plaintiffs filed a sixth amended complaint[,] (Dkt. 90)." (Order, Dkt. 214, at 2). Plaintiffs filed a seventh amended complaint as well. (Dkt. 124).

16

at 3. "Failing to plead fraud-type claims with such particularity"—i.e., the level of detail required by Federal Rule of Civil Procedure 9(b)—"is not the same as the claims having no basis in law or fact under the DTPA." (*Id.* at 5). Plaintiffs posit that in determining the merit of their claims in this analytical context, the Court "should consider the facts that Plaintiffs would have presented" if permitted to amend their complaint. (*Id.*). They argue that American Title has delayed this case's resolution and that the proportion of fees American Title seeks is invalid. (*Id.* at 7–12). And they point to a February 19, 2019, text order in which the Court denied American Title's previous motion for attorney's fees. (*Id.* at 3).

Preliminarily, the Court clarifies its February 19, 2019, text order. American Title is correct. (*See* Dkt. 409 at 5). The order denies American Title's Rule 54(d) motion for attorney's fees; it has no direct effect on American Title's § 17.50(c) claim, which states a different and discrete basis for relief.

Another significant preliminary consideration is whether American Title, having now been granted the relief it sought in its motion for summary judgment against Padilla, may seek the same relief from Plaintiffs. *See* Part III.A, *supra*. It may not.

The Supreme Court has stated that "it 'goes without saying that the courts can and should preclude double recovery.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 333 (1980)). The rule against double recovery "deriv[es] primarily from principles of unjust enrichment": when the injured party "has received in excess of full compensation from two sources for the same loss," it is unjustly enriched. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 n.4 (2013) (quoting 4 George E. Palmer, *The Law of Restitution* § 23.16(b)). Texas law adopts the same rationale in the "one satisfaction rule." *See, e.g., Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000) ("Under the one satisfaction rule, "a plaintiff is only entitled to one recovery for any damages suffered. . . . This rule applies when . . .

17

defendants commit technically different acts that result in a single injury."), *abrogated on other grounds*; *Cho v. Kim*, 572 S.W.3d 783, 805 (Tex. App—Houston [14th Dist.] 2019, no pet.). "[W]hether the one-satisfaction rule applies relies not on the cause of action asserted by the plaintiff, but on whether the plaintiff has suffered a single, indivisible injury." *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 113–14 (Tex.), *opinion corrected on reh'g* (Sept. 28, 2018).

Here, American Title has already been granted a portion of the relief from Padilla that it now seeks from Plaintiffs. It cannot recover from Plaintiffs what it has already recovered from Padilla. Its potential relief is limited to the attorney's fees and costs that it has not already been awarded, despite its request for the entirety of its fees in this motion.[15]

As for American Title's substantive argument, to prevail on its §17.50(c) claim, it must show that the action "was groundless in fact or brought in bad faith, or brought for the purpose of harassment." Tex. Bus. & Com. Code § 17.50(c). It need not show that the action was groundless *and* brought in bad faith; one will suffice. *Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 290 (Tex. App.—Dallas 2012, no pet.); *Baird v. Villegas*, No. 03-03-00156-CV, 2004 WL 524460, at *5 (Tex. App.—Austin Mar. 18, 2004, no pet.). As applied to the DTPA, a claim is groundless if "the totality of the tendered evidence" does not "demonstrate[] an arguable basis in fact and law for the . . . claim." *Splettstosser v. Myer*, 779 S.W.2d 806, 808 (Tex. 1989). Claims that are not supported by any evidence may be groundless, but a "no evidence" finding is not required for a claim to be groundless. *Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989). When determining whether an "arguable basis in fact and law" exists, courts may look to "evidence that is legally inadmissible or subject to other defects . . . provided there is some good faith basis for belief

---

[15] Those fees and costs are listed in the Jackson Walker invoices numbered 1582790, 1587489, 1591918, 1594515, 1600578, 1601667, 1609102, 1613945, 1618480, 1622981, 1627155, 1631038, 1637478, 1642002, 1646382, 1651159, 1656587, and 0. (Dkt. 406-2 at 192–262). They total $135,063.40.

18

that the tendered evidence might be admissible or that it could reasonably lead to the discovery of admissible evidence." *Id.*

The Court concurs with American Title. Plaintiffs have had ample opportunity to establish an arguable basis for their DTPA claims in fact and law, and they have failed to do so. While Plaintiffs are correct that the standard for groundlessness is not identical to the standard for pleading fraud claims under Federal Rule of Civil Procedure 9(b), (*see* Dkt. 408 at 5), that dissimilarity is not dispositive. Even considering the additional facts that they would have pleaded in their eighth amended complaint, had they been permitted to do so, it is not at all clear that they constitute admissible evidence or could reasonably lead to the discovery of admissible evidence that years of discovery and numerous depositions did not reveal or could not have revealed.[16] Nor have Plaintiffs articulated the precise way in which that evidence, if potentially admissible, would support their claims. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Therefore, American Title is entitled to summary judgment in its favor on its Texas Business and Commerce Code 17.50(c) counterclaim. Because the groundlessness standard is disjunctive, the Court does not reach the issue of whether Plaintiffs brought or maintained their DTPA claims in bad faith.

### B. Plaintiffs' Motion for Summary Judgment on American Title's Texas Business and Commerce Code 17.50(c) Counterclaim

Though the Court considers Plaintiffs' motion separately, *see Ford Motor Co. v. Texas Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001), Plaintiffs' argument for summary judgment in their favor on American Title's Texas Business and Commerce Code 17.50(c) counterclaim also fails. Making all relevant inferences in American Title's favor, as the nonmoving party, the Court concludes that the additional facts Plaintiffs seek to marshal do not provide an arguable basis in fact and law for their DTPA claims. Plaintiffs are not entitled to summary judgment on this issue.

---

[16] The same is true for Plaintiffs' trial testimony. (*See* Dkt. 408 at 6).

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that American Title's motion for summary judgment on its indemnity cross-claim, (Dkt. 403), is **GRANTED**, American Title's motion for summary judgment on its Texas Civil Practice and Remedies Code 17.50(c) counterclaim, (Dkt. 406), is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' motion for summary judgment on American Title's "groundless" counterclaim, (Dkt. 411), is **DENIED**.

**SIGNED** on January 24, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE