IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GREGORY HALPRIN, et al., | § | |
| | § | |
| Plaintiffs/Counterdefendants, | § | |
| | § | |
| v. | § | 5:13-CV-1042-RP |
| | § | |
| FEDERAL DEPOSIT INSURANCE | § | |
| CORPORATION *as receiver for* FIRST | § | |
| NATIONAL BANK, et al., | § | |
| | § | |
| Defendants/Counterclaimants. | § | |

## **ORDER**

Before the Court are several motions which the Court has considered and will rule on as

described below:

1. Plaintiffs'[1] motion for default judgment against Defendants Padilla Property

   Corporation ("PPC") and HTG Property Management, Inc. ("HTG"), (Pls.' Mot.

   Default J., Dkt. 432), which the Court will grant;

2. Defendant American Title Group, Inc. *f/k/a* LandAmerica Lawyers Title of San

   Antonio, Inc.'s ("LandAmerica Title") motion for default judgment against

   Crossdefendants PPC, HTG, Maria del Rosario Padilla, Mauro Joe Padilla, and

   Carlos Miguel Padilla, (LandAmerica Title's Mot. Default J., Dkt. 434), which the

   Court will grant in part and deny in part (without prejudice);

---

[1] "Plaintiffs" are Joseph Amelio, Tawny Amelio, Edward Arriola, Kenny Arriola, Gerald Bates, Adolfo Bejarano, Mauricio Bejarano, Silvio Brigliadoro, Maria R. Collins, David Goldberg, Gregory Halprin, Denise Heywood, George Heywood, Kristopher Hochart, Craig Inaba, Gohar Karahagopian, Hagop Karahagopian, Hermann Kinschner, Les Klingerman, Payam Paul Kohanbosh, Ben Li, Lin Li, Michael Loeffler, Irena Minkova, Mikail Minkov, Andrew V. Nguyen, Simon Parrott, Melissa Parrott, Stan Salah, Brian Taus, David Trustey, Kevin Trustey, Michael Trustey, Patricia Trustey, Michael Vick, Paul Weber, and Desiree Young.

3.  LandAmerica Title's unopposed motion to dismiss its crossclaim for contribution against Crossdefendants PPC, HTG, Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla, (LandAmerica Title's Mot. Dismiss Padillas Cross-cl., Dkt. 435), which the Court will grant;

4.  LandAmerica Title's unopposed motion to dismiss its crossclaims against Defendant Dan Brown ("Brown") for contractual indemnity and contribution, (LandAmerica Title's Mot. Dismiss Brown Cross-cls., Dkt. 436), which the Court will grant;

5.  LandAmerica Title's unopposed motion for leave to file billing entries under seal, (LandAmerica Title's Mot. Seal, Dkt. 429), which the Court will grant;

6.  LandAmerica Title's initial motion for attorney's fees, (LandAmerica Title's Mot. Att. Fees, Dkt. 427), which the Court will deem moot; and

7.  LandAmerica Title's election of remedies and amended motion for attorney's fees, (LandAmerica Title's Am. Mot. Att. Fees, Dkt. 430), which the Court will grant in part and deny in part, having reviewed Plaintiffs' response, (Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437), and LandAmerica Title's reply, (Reply LandAmerica Title's Am. Mot. Att. Fees, Dkt. 439).

## I.  BACKGROUND

In this "complex and unusually contentious case," *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 1588312, at *1 (S.D. Tex. Apr. 20, 2016) (Costa, Circuit J.), Plaintiffs alleged that they entered into individual agreements with Defendants Padilla Property Corporation ("PPC"), HTG Real Property Management ("HTG"), Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla (collectively, the "Padilla Defendants") to purchase lots on which the Padilla Defendants would build one or more multi-family living units. (7th Am. Compl., Dkt. 124, ¶¶ 5–6). Plaintiffs alleged that they provided LandAmerica Title with a down

payment and that the Padilla Defendants then deeded half-acre lots to Plaintiffs. (*Id.*). After construction began, the Padilla Defendants allegedly asked Plaintiffs to deed their lots back to the Padilla Defendants in order to obtain construction financing. (*Id.* ¶ 7). The Padilla Defendants also allegedly asked Plaintiffs to agree to subrogate their claims to those of the construction lender, telling Plaintiffs that this would allow the Padilla Defendants to obtain construction financing and complete construction. (*Id.*). Instead, Plaintiffs alleged that the Padilla Defendants used those funds to pay personal and/or corporate debt. (*Id.*). The investment properties were never completed. (*Id.* ¶ 13).

Plaintiffs then brought this action, in which they asserted a variety of claims against HTG, PPC, and the Padilla Defendants. (*Id.* at 9–24). Plaintiffs also asserted claims against LandAmerica Title, the title company that survived the merger with the company that facilitated Plaintiffs' real estate transactions: common law and statutory fraud, violations of the Deceptive Trade Practices Act ("DTPA"), civil conspiracy, assisting and participating, negligence, and breach of fiduciary duty. (*Id.* at 25–28). LandAmerica Title filed a motion to dismiss each of Plaintiffs' claims, (Dkt. 126), which the Court granted, (Dkt. 227). LandAmerica Title also filed counterclaims against Plaintiffs for contractual and statutory indemnity, arguing that each plaintiff violated their agreement to indemnify LandAmerica Title by suing it. (Am. Ans., Dkt. 125, at 20–24). The Court granted summary judgment in Plaintiffs' favor on the contractual indemnity counterclaims. (Dkt. 389).

Plaintiffs filed a notice of their intent to appeal the dismissal of their seventh amended complaint. (Dkt. 231). They then dismissed the appeal without prejudice. (Dkt. 232 at 1). Plaintiffs subsequently filed a motion to stay pending appeal and to sever the dismissed claims so that they could be appealed as final orders, (Dkt. 233), which the Court denied, (Dkt. 239). And Plaintiffs filed a motion for Rule 54(b) certification of final judgment and petition for § 1292(b) interlocutory appeal, (Dkt. 257), which the Court also denied, (Dkt. 304).

Then, on January 24, 2020, the Court granted LandAmerica's motion for summary judgment on its Texas Business and Commerce Code § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla. (Mot., Dkt. 403; Order, Dkt. 422). The Court also granted in part and denied in part LandAmerica Title's motion for summary judgment on its Texas Business and Commerce Code § 17.50(c) counterclaim against Plaintiffs. (Mot., Dkt. 406; Order, Dkt. 422). The Court's Order awarded LandAmerica Title $468,293.58 in fees and costs from Mauro T. Padilla and $135,063.40 in fees and costs from Plaintiffs, in an effort to prevent double recovery. (Order, Dkt. 422, at 17–20).

On February 19, 2020, the Court held a status conference. (*See* Min. Entry, Dkt. 428). At that conference, the parties discussed which parties and claims remained in the case and explained their positions on how the case should proceed. As a result of that discussion, the parties filed the motions now before the Court in an effort to resolve the claims still pending in this case.

## II. MOTIONS FOR DEFAULT JUDGMENT

### A. Legal Standard

Under Federal Rule of Civil Procedure 55(a)–(b), federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering motions for default judgment, the Court must determine: (1) whether default judgment is procedurally warranted; (2) whether the moving party's pleading sets forth facts sufficient to establish that it is entitled to relief; and (3) what form of relief, if any, the moving party

should receive. *United States v. 1998 Freightliner VIN #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) ("*1998 Freightliner*").

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Default judgment is proper only if the well-pleaded factual allegations in the complaint establish a valid cause of action. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the claim need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *1998 Freightliner*, 548 F. Supp. 2d at 384. "Rule 54(c), and for that matter fundamental

fairness, dictate that a judgment by default operates as a deemed admission only as to the relief requested in the complaint." *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992). *See also Ditech Fin., L.L.C. v. Naumann*, 742 F. App'x 810, 813 (5th Cir. 2018) ("[T]he appropriate standard for determining whether a default judgment differs in kind from or exceeds in amount the relevant pleadings . . . flows from the reason for the rule itself—to ensure a party pondering default has meaningful notice, based on the complaint alone, of her exposure in the event of default."). Generally, a defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987).

### B. Plaintiffs' Motion for Default Judgment

Plaintiffs ask for default judgment against Defendants PPC and HTG on their claims for breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), common-law fraud, breach of fiduciary duty, statutory fraud under Texas Business and Commerce Code § 27.01, and conspiracy. (Pls.' Mot. Default J., Dkt. 432, at 1). The Clerk entered default against PPC and HTG on January 17, 2019. (Dkt. 399).

A brief description of certain aspects of these parties' participation in this case is warranted. Neither PPC nor HTG have filed any notices of appearance, motions, or other materials in this case, in state court prior to its removal or in federal court. Still, at various points, parties have asserted that both PPC and HTG have been or are represented by counsel. (*See, e.g.*, Notice of Removal, Dkt. 1, at 5–6 (listing putative counsel for PPC and HTG); 7th Am. Compl., Dkt. 124, at 6 (asserting that counsel for PPC and HTH had "already made an appearance in this case")). Complicating the matter is the fact that Adam C. Cortez, putative counsel for PPC, filed a document in response to the Court's inquiry into PPC's representation in which he stated that while he represented PPC prior to

this case, he never represented PPC in this case.[2] (Dkt. 291 at 1; Order, Dkt. 290). Also, Plaintiffs

allege that Defendants Mauro T. Padilla, Maria del Rosario Padilla, Carlos Miguel Padilla, and/or

Mauro Joe Padila "at all pertinent times were believed to have owned, controlled, and operated [PPC

and HTG]." (7th Am. Comp., Dkt. 124, at 6–7). When Mauro T. Padilla appeared before the Court

pro se on July 10, 2018, he attempted to appear pro se on behalf of PPC and HTG as well, and was

denied because corporations may not appear pro se. (Order, Dkt. 398, at 1 (citing *Sw. Exp. Co. v. I.

C. C.*, 670 F.2d 53, 55 (5th Cir. 1982) (per curiam)); Pls.' Mot. Default J., Dkt. 432, at 1). In any case,

at this stage in the proceedings, it is readily apparent that PPC and HTG have not meaningfully

participated in this case.

### 1. Procedural Requirements

On balance, the *Lindsey* factors weigh in favor of entering a default judgment against PPC

and HTG. *See* 161 F.3d at 893. Because they have not filed responsive pleadings, there are no

material facts in dispute. *See Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th

Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.").

Their failure to appear and respond has frustrated the adversary process, prejudicing Plaintiffs'

interest in pursuing their claims for relief against them. *See Ins. Co. of the W. v. H & G Contractors, Inc.*,

No. CIV.A. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). PPC and HTG appear to

have been effectively served via Mauro T. Padilla. (*See, e.g.*, 7th Am. Compl., Dkt. 124, at 28). They

have subsequently failed to appear and participate at all, despite likely being aware of the case

through Mauro T. Padilla himself. There is no indication that the default was caused by a good-faith

---

[2] "I have never entered an appearance on behalf of any person or entity in [this case]. I do not know exactly
how it is that my name is listed as counsel for Padilla Property Corporation. . . . Pursuant to Texas Tax Code
§ 171.252(1), Padilla Property Corporation has forfeited its right to both sue and to defend lawsuits in Texas
court because it is no longer a legal entity. I have been contacted by various counsel for the plaintiffs herein
and I have informed them of the fact that I have no client to represent nor do the plaintiffs have an entity
that has the capacity to be sued." (Dkt. 291 at 1).

mistake or excusable neglect. The amount of a default judgment may indeed be "harsh"—the amount for which PPC and HTG would be jointly and severally liable with Padilla exceeds $3.9 million. (*See* Padilla J., Dkt. 364, at 1-1). While it is not clear if PPC and HTG continue to exist as legal entities, a default judgment may still be entered against them because if they do exist, the Court has previously determined it has jurisdiction over them. *See, e.g., Victoria's Secret Stores Brand Mgmt., Inc. v. VS Secrets of Romance, LLC*, No. 4:10CV158, 2010 WL 3657836, at *1 (E.D. Tex. Aug. 18, 2010), *report and recommendation adopted,* No. 4:10CV158, 2010 WL 3657639 (E.D. Tex. Sept. 10, 2010). In any case, it has not been conclusively demonstrated, for purposes of this case, whether PPC and HTG have ceased to exist as legal entities and/or if they have the ability to defend a lawsuit in federal court. Moreover, the Court is not aware of any facts that would obligate it to set aside the default if challenged by PPC and HTG. The Court therefore finds that default judgment is procedurally warranted.

### 2.  Sufficiency of the Claims

Assuming that PPC and HTG are effectively synonymous with Mauro T. Padilla himself, the Court finds that Plaintiffs' claims against them are sufficient for purposes of default judgment. In their seventh amended complaint, the operative pleading in this case, Plaintiffs allege facts that raise their right to relief from PPC and HTG above the speculative level. (*See* 7th Am. Compl., Dkt. 124, at 6–9). Moreover, the Court accepted the sufficiency of Plaintiffs' claims against Mauro T. Padilla when it entered the agreed judgment against him and allowed him to consent to joint and several liability with PPC and HTG should judgment be entered against them. (*See* Padilla J., Dkt. 364, at 1).

### 3.  Relief

Plaintiffs ask the Court to enter default judgment against PPC and HTG for the damages specified in the agreed judgment previously entered against Mauro T. Padilla. (Pls.' Mot. Default J., Dkt. 432, at 2; *see* Padilla J., Dkt. 364, at 1). The damages they seek also do not exceed those which

they requested in their seventh amended complaint. (*See* 7th Am. Compl., Dkt. 124, at 24–27). The

Court finds that this relief is appropriate, satisfying Federal Rule of Civil Procedure 54(c)'s

requirements.

### C. LandAmerica Title's Motion for Default Judgment

LandAmerica Title moved for default judgment against PPC, HTG, Maria del Rosario

Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla. (LandAmerica Title's Mot. Default J., Dkt.

434).

The Clerk entered default against PPC and HTG on January 17, 2019.[3] (Dkt. 399). The Clerk

has not entered default against Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel

Padilla. The Court previously granted Plaintiffs' motion to withdraw their motion for entry of

default against Maria del Rosario Padilla and Mauro Joe Padilla. (Mot. Enter Default, Dkt. 361; Mot.

Withdraw, Dkt. 375; Text Orders, July 23, 2018).

Because the Clerk has not entered default against Maria del Rosario Padilla, Mauro Joe

Padilla, and Carlos Miguel Padilla, and claims against them are not for a sum certain or a sum that

can be made certain by computation, the Court cannot enter default judgment against any of them.

*See* Fed. R. Civ. P. 55; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("An *entry of

default* is what the clerk enters when the default is established by affidavit or otherwise. After

defendant's default has been entered, plaintiff may apply for a judgment based on such default. This

is a *default judgment*."); *Can Capital Asset Servicing, Inc. v. Huerta, Jr.*, No. SA-15-CV-1049-XR, 2016 WL

8223267, at *1 (W.D. Tex. Mar. 31, 2016) (citing Fed. R. Civ. P. 55) ("Default under Rule 55 is a

two-step process: (1) the entry of default and (2) the subsequent entry of a default judgment."); (*see*

---

[3] The Clerk did so at the request of Plaintiffs, rather than LandAmerica Title, (*see* Mot. Enter Default, Dkt.
352), but the entry of default functions for LandAmerica Title's claims as well: PPC and HTG have not
responded to LandAmerica Title's crossclaims against them.

*also* Text Order, July 6, 2018 (denying Plaintiffs' motion for default judgment because they did not first move for clerk's entry of default)).

The Court also notes that on July 6, 2018, it dismissed Plaintiffs' claims against Carlos Miguel Padilla, (Dkt. 351), and on July 23, 2018, the Court dismissed Plaintiffs' claims against Maria del Rosario Padilla and Mauro Joe Padilla with prejudice. (Dkt. 379). LandAmerica Title seeks statutory indemnity and contribution from Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla. (LandAmerica Title's Mot. Default J., Dkt. 434, at 1). Thus, for similar reasons as expressed in its motion to dismiss its crossclaim against Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla, (Dkt. 435), neither an entry of default nor a default judgment may be warranted. *See infra* Section V.A.

Here, the Court analyzes LandAmerica Title's motion for default judgment as to PPC and HTG only.

### 1.  Procedural Requirements

Again, the Court concludes that the *Lindsey* factors weigh in favor of entering a default judgment against PPC and HTG. *See* 161 F.3d at 893. Because they have not filed responsive pleadings, there are no material facts in dispute. *See Nishimatsu*, 515 F.2d at 1206. Their failure to appear and respond has frustrated the adversary process, prejudicing LandAmerica Title's interest in pursuing their crossclaims against them. *See Ins. Co. of the W.*, 2011 WL 4738197, at *3. PPC and HTG appear to have been effectively served via Mauro T. Padilla. (*See, e.g.*, LandAmerica Title's Answer, Dkt. 125, at 30). They have subsequently failed to appear and participate at all, despite likely being aware of the case through Mauro T. Padilla himself. There is no indication that the default was caused by a good-faith mistake or excusable neglect. At this stage in the case, the amount of a default judgment is unlikely to be "harsh"—Plaintiffs' claims against LandAmerica Title have been dismissed, (*see* Order, Dkt. 227), so PPC and HTG would not be liable to LandAmerica Title for

indemnity and contribution arising from those claims even if the Court could be certain that they continue to exist as legal entities. The Court is not aware of any facts that would obligate it to set aside the default if challenged by PPC and HTG. The Court therefore finds that default judgment is procedurally warranted.

### 2.  Sufficiency of the Claim

The Court finds that LandAmerica Title's claims against PPC and HTG are sufficient for purposes of default judgment. By failing to respond, PPC and HTG have effectively conceded the truth of LandAmerica Title's allegations against them. *See Dierschke*, 975 F.2d at 185; *Shipco Gen.*, 814 F.2d at 1014. In its crossclaims, LandAmerica Title alleges facts that raise its right to relief from PPC and HTG above the speculative level. (*See* LandAmerica Title's Answer, Dkt. 125, at 26–28). Therefore, default judgment is justified.

### 3.  Relief

LandAmerica Title asks the Court only to render default judgment in its favor against PPC and HTG for liability on its claims for indemnity and contribution, as opposed to attorney's fees and expenses. (*See* LandAmerica Title Mot. Default J., Dkt. 434, at 2 n.1). Should this case be appealed and then reversed and/or remanded, LandAmerica Title wishes to retain the ability to elect an alternative remedy. (*See id.* (citing *Malvino v. Delluniversita*, 840 F.3d 223, 233–34 (5th Cir. 2016))). Taking these considerations into account, the damages LandAmerica Title seeks do not exceed those which it initially requested in its crossclaims—that is, indemnity for "all sums that it is required to pay as a result of the action" and appropriate contribution under Texas Business and Commerce Code § 17.555. (LandAmerica Title's Answer, Dkt. 125, at 26–28). The Court previously held in a similar context that such indemnity relief was justified. (*See* Order, Dkt. 422, at 6–7). Now, the Court finds that both the requested indemnity and contribution relief are appropriate, satisfying Federal Rule of Civil Procedure 54(c)'s requirements.

### III.  MOTIONS TO DISMISS

### A.  LandAmerica Title's Motion to Dismiss Crossclaim against PPC, HTG, Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla

LandAmerica Title moves to dismiss its crossclaim against PPC, HTG, Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla for contribution under Texas Business and Commercial Code § 17.555. (LandAmerica Title's Mot. Dismiss Padillas Cross-cl., Dkt. 435; *see* Answer 7th Am. Compl., Dkt. 125, at 26–28). It asks the Court to dismiss the crossclaim without prejudice so that it could be reasserted if the Fifth Circuit ultimately reverses and/or remands this case for trial on the merits. (LandAmerica Title's Mot. Dismiss Padillas Cross-cls., Dkt. 435 at 1). LandAmerica Title notes that because Plaintiffs' claims against it have been dismissed, its crossclaim for contribution "is not currently ripe, yet it remains pending." (*Id.*; *see* Order, Dkt. 227 (dismissing claims)). Plaintiffs do not oppose the motion. (LandAmerica Title's Mot. Dismiss Padillas Cross-cl., Dkt. 435, at 3).

Federal Rule of Civil Procedure 41(c) outlines a certain procedure for dismissing crossclaims.[4] It provides that Rule 41(a)(1)(A)(i)'s jurisdiction-stripping provision, which applies to voluntary dismissal of entire actions, also applies to dismissing crossclaims. Fed. R. Civ. P. 41(c); *see, e.g., Bonin v. Bilfinger Salamis, Inc.*, No. CV 16-1092, 2017 WL 490622, at *2 (E.D. La. Feb. 6, 2017) ("Rule 41(c) specifically provides for dismissal of third-party claims under Rule 41(a)(1)(A)(i)."); *see also* 9 Arthur R. Miller, *Federal Practice and Procedure* § 2374 (Apr. 2020 update). The claimant must dismiss the crossclaim either "before a responsive pleading is served" or "if there is no responsive pleading, before evidence is introduced at a hearing or trial." Fed. R. Civ. P. 41(c).

---

[4] Previously, the Court entered partial final judgment on LandAmerica Title's counterclaim against Plaintiffs under Rule 54(b). (Dkt. 423). Rule 41(c) did not apply to that counterclaim because Plaintiffs had filed a responsive pleading. (Dkt. 136).)

Here, PPC, HTG, Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla did not timely answer or otherwise respond to LandAmerica Title's crossclaims against them. (*See* Mot. Default J., Dkt. 434, at 1). No hearing or trial has been held at which evidence related to these crossclaims could be introduced.[5] Therefore, the Court concludes that Rule 41(c) applies. LandAmerica Title's motion to dismiss does not cite a specific rule of civil procedure, but the Court construes it as invoking Rule 41(c), and in turn, Rule 41(a)(1)(A)(i). LandAmerica Title's motion is therefore "self-effectuating and terminates the [claim] in and of itself; no order or other action of the district court is required." *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015), *as revised* (May 15, 2015).

### B. LandAmerica Title's Motion to Dismiss Crossclaims against Brown

LandAmerica Title also moves to dismiss its crossclaims against Brown for contractual indemnity and contribution under Texas Business and Commercial Code § 17.555. (LandAmerica Title's Mot. Dismiss Brown Cross-cls., Dkt. 436; *see* Answer 7th Am. Compl., Dkt. 125, at 24–26). The request is similar to its first motion: again, it asks the Court to dismiss the crossclaim without prejudice and notes that because Plaintiffs' claims against it have been dismissed, its crossclaim against Brown are "not currently ripe, yet . . . remain[] pending." (LandAmerica Title's Mot. Dismiss Brown Cross-cls., Dkt. 436, at 1; *see* Order, Dkt. 227 (dismissing claims)). While Plaintiffs do not oppose the motion, LandAmerica Title states that it was unable to confer with Brown. (LandAmerica Title's Mot. Dismiss Brown Cross-cls., Dkt. 436, at 1).

Rule 41(c) applies to this motion as well. Here, a review of the docket shows that Brown did not timely answer or otherwise respond to LandAmerica Title's crossclaims against him. Instead, he opted to file a motion to dismiss Plaintiffs' claims against him, which the Court ultimately granted.

---

[5] A bench trial was scheduled for July 11, 2018. However, before the trial began, the parties (who did not include these Defendants) met outside the presence of the Court and agreed to settle. (Minute Entry, Dkt. 358, at 1). Because no trial actually occurred, no evidence was presented at trial in this case.

(Brown Mot. Dismiss, Dkt. 153; Order, Dkt. 227). No hearing or trial has been held at which evidence related to these crossclaims could be introduced. Again, then, the Court construes LandAmerica Title's motion as invoking Rule 41(c), and in turn, Rule 41(a)(1)(A)(i), rendering it self-effectuating. *See Amerijet Int'l*, 785 F.3d at 973.

## IV.  LANDAMERICA TITLE'S MOTION FOR LEAVE TO FILE UNDER SEAL

LandAmerica Title seeks leave to file its additional unredacted billing entries under seal on much the same grounds as its previous requests to file billing entries under seal. (LandAmerica Title's Mot. Seal, Dkt. 429, at 1–2; *see* 1st Mot. Seal, Dkt. 416). For the reasons discussed below, the Court grants the motion.

Generally, the public has a right to inspect judicial records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "This right 'promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness[, and] serves as a check on the integrity of the system.'" *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, (5th Cir. 2020) (quoting *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017)). But this right is not absolute: the "common law merely establishes a presumption of public access to judicial records." *Id.* (citing *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993)). The Fifth Circuit has neither assigned a particular weight to this presumption nor interpreted the presumption in favor of access as creating a burden of proof. *Id.* at 225. But in light of the public's right to access judicial records, courts are required to "use caution in exercising [their] discretion to place records under seal." *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 689–90 (5th Cir. 2010). "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring nondisclosure." *Bradley*, 954 F.3d at 225 (quoting *Van Waeyenberghe*, 990 F.2d at 848). "The presumption, however gauged, in favor of public access to judicial records is one of the interests to be weighed on the public's side of the

scales." *Id.* (quoting *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A Aug. 1981))

(cleaned up). On the other hand, "sealing may be appropriate where orders incorporate confidential

business information." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th

Cir. 2015).

Here, acting consistently with its previous Orders, (*see, e.g.*, Order, Dkt. 415), noting that

Plaintiffs do not oppose LandAmerica Title's motion, (*see* LandAmerica Title's Mot. Seal, Dkt. 429,

at 3), and having weighed the public's right of access against the interests favoring nondisclosure, the

Court finds that good cause exists to file LandAmerica Title's additional unredacted billing entries

under seal. As before, the Court must be able to view, unobstructed, the exact billing entries

detailing the work done on the case's various claims in order to evaluate LandAmerica Title's motion

for attorney's fees. *See, e.g.*, *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007)

("The district court, as the trier of fact on the question of attorney's fees . . . examined the facts and

proof in the case to see whether the issues were inextricably intertwined."); *Mid-Continent Cas. Co. v.*

*Petroleum Sols., Inc.*, No. CV 4:09-0422, 2017 WL 6942658, at *15 (S.D. Tex. Sept. 21, 2017) (referring

to "the invoices" and specific "billing entr[ies]" the court reviewed); *Eagle Suspensions, Inc. v. Hellman*

*Worldwide Logistics, Inc.*, No. 3:12-CV-0611-G, 2015 WL 252442, at *2 (N.D. Tex. Jan. 20, 2015)

("Plaintiff submitted its unredacted billing invoices *in camera* as ordered."). Thus, the Court will grant

LandAmerica Title's motion. However, the public's right of access weighs in favor of unsealing

LandAmerica Title's motion itself (as opposed to the billing entry exhibits).

## V.  LANDAMERICA TITLE'S ELECTION OF REMEDIES AND AMENDED MOTION FOR ATTORNEY'S FEES

Next, LandAmerica Title seeks to elect its remedy: it does not wish to recover on its § 17.555

crossclaim for statutory indemnity against Mauro T. Padilla, but does wish to recover on its

§ 17.50(c) counterclaim against Plaintiffs, including attorney's fees and costs: a putative total of

$569,105.55.[6] (LandAmerica Title's Am. Mot. Att. Fees, Dkt. 430, at 3–5). Plaintiffs contend that

"what LandAmerica actually seeks is an election of 'parties'—not 'remedies'—through a backdoor,

non-voluntary dismissal of its cross-claims against Padilla," which they maintain is impermissible

under applicable Texas law. (Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 3).

LandAmerica Title, in its reply, argues that because judgment has not yet been entered on either its

§ 17.555 crossclaim for statutory indemnity against Mauro T. Padilla or its § 17.50(c) counterclaim

against Plaintiffs, and because its § 17.555 crossclaim for statutory indemnity against Mauro T.

Padilla is distinct from § 17.555 crossclaim for contribution against Mauro T. Padilla, it is entitled to

seek the full amount of fees and costs from Plaintiffs. (Reply LandAmerica Title's Am. Mot. Att.

Fees, Dkt. 439, at 1–3).

## A.  Election of Remedies

Federal courts "follow Texas substantive law on the election of remedies when it comes to

state law claims." *Aguilar v. Williamson Cty.*, No. A-11-CA-278-SS, 2011 WL 13137682, at *3 n.3

(W.D. Tex. Dec. 19, 2011); *see also Malvino*, 840 F.3d at  234 ("When a plaintiff prevails on both

---

[6] Throughout this stage of the litigation, the parties have disputed the precise amounts of fees and costs that LandAmerica Title is requesting or is entitled to request. (*See, e.g.*, LandAmerica Title's Am. Mot. Att. Fees, Dkt. 430, at 2 n.1; Pls.' Resp. LandAmerica Title's Mot. Att. Fees, Dkt. 437, at 2 nn.1–2). This disagreement may stem in part from the large number of invoices LandAmerica has submitted at various points and some degree of confusion concerning which invoices apply to which claims. The Court resolves this dispute for the purposes of the motions now before the Court as follows.

In its motion now before the Court, LandAmerica Title explicitly lists, by invoice number, all of the fees and costs it now requests. (LandAmerica Title's Am. Mot. Att. Fees, Dkt. 430, at 5–6, 6 nn.3–5). It separates the invoices into three groups: Group 1 comprises the invoices it originally submitted with its motion for summary judgment on its § 17.555 crossclaim against Mauro T. Padilla, (Dkt. 403 at 43–327); Group 2 comprises the invoices it originally submitted with its motion for summary judgment on its § 17.50(c) counterclaim against Plaintiffs, (Dkt. 406-2 at 192–262); and Group 3 comprises the invoices it submitted prior to the February 19, 2020, status conference and with its motion for leave to file under seal, (Dkt. 429-1). All of these invoices are now collected in one filing. (Dkt. 430-1 at 10–379).

These invoices collectively amount to the total fees and costs that LandAmerica Title now requests from Plaintiffs. (LandAmerica Title's Am. Mot. Att. Fees, Dkt. 430, at 5–6). The Court has reviewed this conclusive set of invoices and finds LandAmerica Title's description of them, including their total dollar amounts, to be correct. Thus, for the purposes of deciding LandAmerica Title's motion, the total amount of fees and costs that LandAmerica is requesting from Plaintiffs is $569,105.55.

federal and Texas state law causes of action for the same injury, federal courts apply Texas's one satisfaction rule, which requires the prevailing party to elect between the alternative claims for purposes of recovery."). Under Texas law, "when a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1085 n.5 (5th Cir. 1996). Accordingly, that party may elect its preferred remedy.

"An election of remedies is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it." *Custom Leasing, Inc. v. Tex. Bank & Trust Co.,* 491 S.W.2d 869, 871 (Tex. 1973). "An election between remedies occurs, at the latest, when a party proceeds to final judgment on one claim with knowledge of an inconsistent claim or remedy. Generally, it is the obtaining of a judgment on one theory or state of facts that precludes the ability to pursue other inconsistent remedies." *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Notably, this doctrine does not apply when a party asserts "distinct causes of action against different parties arising out of independent transactions with such parties" and the potential remedies "are neither inconsistent nor repugnant." *Tyler Title Co. v. Cowley*, No. 12-18-00043-CV, 2019 WL 1760105, at *6 (Tex. App.—Tyler Apr. 10, 2019, no pet.); *see also Krobar Drilling*, 426 S.W.3d at 113; *Haskell v. Border City Bank,* 649 S.W.2d 133, 135–36 (Tex. App.—El Paso 1983, no writ).

The doctrine is meant to "prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong." *Fina Supply, Inc. v. Abilene Nat. Bank*, 726 S.W.2d 537, 541 (Tex. 1987). It "operates to prevent a plaintiff from recovering twice for

the same wrong, not to prevent a plaintiff from recovering once." *Malvino*, 840 F.3d at 234.

However, "[e]lection of remedies is not a favorite of equity and its scope should not be extended." *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 588 (Tex. 1975).

Here, the procedural prerequisites for LandAmerica Title's election of remedies are present. The Court has not entered final judgment, partial or otherwise, on its § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla or its § 17.50(c) counterclaim against Plaintiffs. *See Krobar Drilling*, 426 S.W.3d at 113. LandAmerica Title's § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla and its § 17.50(c) counterclaim against Plaintiffs ultimately arise from the same set of facts. *See Custom Leasing*, 491 S.W.2d at 871. Plaintiffs' strongest argument on this issue is their point that the election of remedies doctrine typically applies to a prevailing party's "selecti[on] between two or more theories of recovery against the same party that caused a single wrong or injury." (Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 3). While the authorities LandAmerica Title cites and the additional authorities the Court has consulted do not explicitly speak in terms of multiple parties, the limitations on election of remedies that these cases describe do not bar LandAmerica's election here. Even if these claims can be said to arise from "independent transactions," the potential remedies for each claim are "inconsistent" with each other in that LandAmerica Title is precluded from collecting full damages on both by the one satisfaction rule and the prohibition of double recovery. *Tyler Title*, 2019 WL 1760105, at *6; *see generally, e.g.*, *Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 113–14 (Tex.), *opinion corrected on reh'g* (Sept. 28, 2018). That is, LandAmerica Title cannot recover the same fees from multiple parties, though it may recover them once. *See Malvino*, 840 F.3d at 234. Moreover, the one satisfaction rule and the prohibition of double recovery support an equitable holding that even if the election of remedies doctrine does not apply to the choice of from which party to recover, rather than on which theory to recover, LandAmerica Title may not recover both from Padilla and from Plaintiffs.

Moreover, the Court's previous Order does not preclude LandAmerica Title from obtaining the total amount of its reasonable fees and costs from Plaintiffs. At this stage, the Court has previously ordered that LandAmerica Title is entitled to a certain amount of attorney's fees and costs from its § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla and a lesser amount from its § 17.50(c) counterclaim against Plaintiffs. (*See* Order, Dkt. 422, at 18). Both of these claims, taken alone, would allow LandAmerica to obtain a judgment for the total amount of reasonable fees and costs it incurred in this case. (*See id.* at 6–7 (citing Tex. Bus. & Com. Code § 17.555; *Swafford v. View-Caps Water Supply Corp.*, 617 S.W.2d 674, 675 (Tex. 1981) (per curiam)); *id.* at 16–19 (citing Tex. Bus. & Com. Code § 17.50(c))); *see also Cypress Engine Accessories, LLC v. HDMS Ltd. Co.*, No. CV H-15-2227, 2017 WL 5177617, at *1 (S.D. Tex. Nov. 8, 2017) (quoting *Stromberger v. Law Offices of Windle Turley*, No. 05-04-00050-CV, 2005 WL 701034, at *3, 2005 (Tex. App.—Dallas [5th Dist.] Mar. 28, 2005)) ("Once a trial judge concludes that a DTPA claim is groundless[,] . . . the *only* limitation on the award of attorney's fees and costs to defendants is that such fees be 'reasonable and necessary.'") (emphasis added). It is true that, as Plaintiffs note, the Court previously held that LandAmerica Title was entitled from Plaintiffs only to the total amount of reasonable fees and costs it incurred in this case, minus the amount to which it was entitled from Mauro T. Padilla. (Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 5; Order, Dkt. 422, at 18). But that holding was purely a function of the order in which LandAmerica Title filed its motions and the corresponding order in which the Court decided them. (*See* Mot. Summ. J., Dkt. 403 (§ 17.555 indemnity crossclaim against Mauro T. Padilla); Mot. Summ J., Dkt. 406 (§ 17.50(c) counterclaim against Plaintiffs)). The filing order alone cannot be deemed a definitive election of remedies. *See Fina Supply*, 726 S.W.2d at 541 ("An election of remedies does not occur unless a party having two or more inconsistent remedies pursues one of them to the exclusion of the others."). And again, the Court may revise any order "that adjudicates fewer than all the claims or the rights and liabilities of

fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," as is the case here. Fed. R. Civ. P. 54(b).

In other words, the Court held that LandAmerica Title was entitled to the full amount of relief to which it was entitled by statute on both its § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla and its § 17.50(c) counterclaim against Plaintiffs. The Court also held that LandAmerica Title could not recover its attorney's fees and costs twice. LandAmerica Title now asks the Court to allow it to elect to recover under its § 17.50(c) counterclaim against Plaintiffs: to recover once, not twice. Its invocation of the election of remedies doctrine is entirely consistent with applicable Texas law. *See Malvino*, 840 F.3d at 234. To the extent that the Court's previous Order, (Dkt. 422), is inconsistent with this Order, the Court revises the previous Order. *See* Fed. R. Civ. P. 54(b).

The Court addresses two of Plaintiffs' objections here.[7] Plaintiffs argue that permitting an election of remedies at this stage would effectively allow a dismissal under Federal Rule of Civil Procedure 41(a), which would be improper at this relatively late stage in the litigation. (Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 4–6). But though LandAmerica has dismissed its § 17.555 crossclaim for contribution against Mauro T. Padilla, *see supra* Section III.A, LandAmerica Title is not dismissing its § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla, (*see* LandAmerica Title's Am. Mot. Att. Fees, Dkt. 430, at 3 n.2). LandAmerica Title's motion cannot properly be considered as invoking Rule 41(a). Plaintiffs' contention that LandAmerica should not be allowed to retain the ability to change its election of remedies should any claims or defenses in this case be reversed or remanded after an appeal also rings hollow. (*See* Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 3–4; LandAmerica Title's Am. Mot. Att. Fees,

---

[7] Plaintiffs additionally argue that a large increase in the fees and costs for which they are liable is unduly prejudicial to them. (Pls.' Resp. LandAmerica Title's Mot. Att. Fees, Dkt. 437, at 6). The Court addresses the thrust of this argument in Section V.B, *infra*.

Dkt. 430, at 3 n.2). In *Malvino*, the Fifth Circuit applied Texas law and concluded that no authority clearly supports Plaintiffs' line of reasoning, noting that "the equitable nature of the one satisfaction rule counsels against such a stringent approach." 840 F.3d at 233.

### B.  What LandAmerica Title May Recover

#### 1. § 17.50(c) and Segregation

However, the Court does not conclusively hold in this Order that LandAmerica Title is entitled to the full $569,105.55 which it claims from Plaintiffs. In DTPA actions, including under § 1750(c), "reasonableness of the fee claimed must be established by evidence," and "it is the province of the [factfinder] to determine the reasonable value of an attorney's services." *Streber v. Hunter*, 221 F.3d 701, 739 (5th Cir. 2000) (quoting *Leggett v. Brinson*, 817 S.W.2d 154, 157 (Tex. App.—El Paso 1991, no writ); *Brown v. Bank of Galveston*, 930 S.W.2d 140, 145 (Tex. App.—Houston [14th Dist.] 1996, writ granted)). "As a general rule, the party seeking to recover attorney's fees carries the burden of proof." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991), *holding modified by Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006).

Typically, attorney's fees must be segregated between "claims for which they are recoverable and those for which they are not," *Chapa*, 212 S.W.3d at 311, though an exception exists when the claims arise out of the same transaction and are "so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 298 (5th Cir. 2007) (quoting *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991)). And when "the services involved in preparing one claim would still be incurred in preparing the other," "many if not most legal fees . . . cannot and need not be precisely allocated to one claim or the other." *Id.* "[T]he failure to segregate does not mean that a party cannot recover any of its attorney's fees" because "[u]nsegregated attorney's fees for the entire case are some evidence of what the segregated amount should be." *Navigant Consulting*, 508 F.3d at 298 (quoting *Chapa*, 212

S.W.3d at 313). If the fee-seeking party does not segregate its fees, "[t]he district court, as the trier of fact on the question of attorney's fees, [does] not abuse its discretion in awarding a percentage of . . . fees rather than denying recovery of fees completely." *Id.* However, "interrelated or intertwined facts are not enough to trigger the exception; 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.'" *In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) (quoting *Chapa*, 212 S.W.3d at 311). Moreover, when attorneys undertake an "effort to recover 100 percent of their fees," the Court must be watchful that their fee-seeking position is not "inconsistent with [their] underlying claims." *Chapa*, 212 S.W.3d at 313.

The Court previously held that LandAmerica Title did not need to segregate the fees it sought on its § 17.555 crossclaim for statutory indemnity against Mauro T. Padilla. (Order, Dkt. 422, at 12). The Court described its reasoning as follows:

> The DTPA explicitly and capaciously allows for recovery of "all sums that [American Title] is required to pay as a result of the action." Tex. Bus. & Com. Code § 17.555. This case is not akin to the more common situation in which a party seeks full attorney's fees arising from two causes of action, one recoverable and one not. *See, e.g.*, *Chapa*, 212 S.W.3d at 313; *Bear Ranch*, 2016 WL 1588312, at *3. Similarly, the fees need not be segregated between recoverable and nonrecoverable claims because the DTPA's broad ambit renders them sufficiently intertwined. *See Chapa*, 212 S.W.3d at 311. [LandAmerica Title's] current fee-seeking position does not appear to be inconsistent with its underlying claims as expressed in its previous filings, in that it has consistently maintained that it is entitled to indemnity from Padilla. *Chapa*, 212 S.W.3d at 313. (*See* Crossclaim, Dkt. 125, at 26–29; Am. Mot. Dismiss, Dkt. 126).

(Order, Dkt. 422, at 12) (footnote omitted).

But now, LandAmerica Title asks the Court to consider its § 17.50(c) counterclaim against Plaintiffs. § 17.50(c)'s language does not include the capacious "all sums" provision present in § 17.555; rather, it provides only for "reasonable and necessary attorneys' fees and court costs." *See Cypress Engine Accessories*, 2017 WL 5177617, at *1. As Plaintiffs note, LandAmerica Title has admitted that "it "incur[red] fees it would have not sustained but for Mauro T. Padilla's conduct"—

that is, not necessarily "reasonable and necessary" as to Plaintiffs. (Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 6 (quoting Mot. Summ. J., Dkt. 403, at 7)). This inconsistency cautions against allowing LandAmerica Title to recover fees and costs from Plaintiffs that may not be fairly traceable to Plaintiffs' claims or litigation conduct. *See Chapa*, 212 S.W.3d at 313. Thus, the Court cannot say with certainty—and without unduly prejudicing Plaintiffs—that LandAmerica Title need not segregate its fees and costs between those that are reasonable and necessary as to Plaintiffs within the ambit of § 17.50(c) and those that are not. And, without a comprehensive sense of which fees and costs are reasonable and necessary as to Plaintiffs, the Court cannot say with certainty that LandAmerica Title is only entitled to the $16,130.50 or $135,063.40 sums that Plaintiffs propose. (*See* Resp. LandAmerica Title's Am. Mot. Att. Fees, Dkt. 437, at 6).

Thus, informed by the imperatives of appropriate notice to the parties and judicial economy, the Court concludes that LandAmerica Title is entitled to the fees and costs listed in the Group 2 and Group 3 invoices it has submitted.  The Group 2 invoices, totaling $135,063.40, which LandAmerica Title originally submitted in support of its motion for summary judgment on its § 17.50(c) counterclaim against Plaintiffs, (Dkt. 406-2 at 192–262), can properly be considered reasonable and necessary as to Plaintiffs. The Group 3 invoices, totaling $25,503.40, which LandAmerica Title represents as describing fees and costs it incurred from "Plaintiffs' response and continuing to defend against Plaintiffs' claims, including affirmative dispositive relief filed by Plaintiffs," can also properly be considered reasonable and necessary as to Plaintiffs. (LandAmerica Title's Mot. Att. Fees, Dkt. 427, at 2).

### 2. The Fees LandAmerica Title Requests

The Court has already reviewed the propriety of the fees and costs described in the Group 2 invoices, determining that they need not be segregated. (*See* Order, Dkt. 422, at 7–16). However, the Court modifies its previous Order to remove one cost that LandAmerica requests, but is not

properly part of a statutory fees and costs award. *See generally* Fed. R. Civ. P. 54(b). District courts in the Fifth Circuit considering requests for costs, "including expenses that normally are passed on to a client by an attorney, routinely deny requests for items that are not listed in [28 U.S.C.] § 1920." *Martinez v. Refinery Terminal Fire Co.*, No. 2:11-CV-00295, 2016 WL 4594945, at *14 (S.D. Tex. Sept. 2, 2016) (collecting cases). Thus, while costs for copies "necessarily obtained for use in the case" are permissible, 28 U.S.C. § 1920, "costs for faxes, meals, messenger and delivery services, mileage, postage, research and documentation, and travel expenses" are not, *Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 725 (S.D. Tex. 2015). In general, "[i]f the party against whom costs are taxed does not specifically object, the costs sought are presumed necessary for the case." *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co.,* No. 07–2684, 2009 WL 1457632, at *3 (S.D. Tex. May 26, 2009). Accordingly, the Court determines that LandAmerica Title is not entitled to recover $13.50 in costs that are outside § 1920's scope.[8] LandAmerica Title has not requested any other impermissible costs in the Group 2 or Group 3 invoices.

As for the attorney's fees listed in Group 3, the Court concludes that LandAmerica Title need not segregate the fees by claim because each fee is reasonable and necessary as to Plaintiffs. In addition, almost all the Group 3 fees concern LandAmerica Title's § 17.50(c) counterclaim, and the few that do not are sufficiently related so as to not require segregation. To determine whether the segregation exception applies, the Court examines the exact billing records detailing the work done on the case's various claims. *See, e.g.*, *Navigant Consulting*, 508 F.3d at 298 ("The district court, as the trier of fact on the question of attorney's fees . . . examined the facts and proof in the case to see whether the issues were inextricably intertwined."); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. CV 4:09-0422, 2017 WL 6942658, at *15 (S.D. Tex. Sept. 21, 2017) (referring to "the invoices" and specific "billing entr[ies]" the court reviewed); *Eagle Suspensions, Inc. v. Hellman Worldwide Logistics, Inc.*,

---

[8] This cost is listed in Group 2, invoice # 1609102 ($13.50 in delivery fees). (Dkt. 430-1 at 224).

No. 3:12-CV-0611-G, 2015 WL 252442, at *2 (N.D. Tex. Jan. 20, 2015) ("Plaintiff submitted its unredacted billing invoices *in camera* as ordered.").

Here, LandAmerica Title filed its unredacted billing entries as an exhibit to a motion for leave to file under seal. *See supra* Part IV. Generally, "[t]he party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Ultimately, the Court finds that none of the Group 3 billing entries is excessive, duplicative, or inadequately documented, and that each reasonably pertains to LandAmerica Title's § 17.50(c) counterclaim against Plaintiffs.

Next, the Court performs the following "lodestar" analysis on the Group 3 invoices:

> First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The court then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case. *Id.* In making a lodestar adjustment the court should look to twelve factors, known as the *Johnson* factors, after *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19.

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

"These factors are comparable to those laid out by the Texas Supreme Court, and this Court may rely on them when determining attorney's fees under Texas law which governs" the § 17.50 counterclaim in this case. *Iniekpo v. Avstar Int'l Corp.*, No. SA-07-CA-879-XR, 2010 WL 3909321, at *3 (W.D. Tex. Sept. 30, 2010) (citing *Mid–Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 232 (5th Cir. 2000); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

Generally, "[t]here is a strong presumption that the lodestar is the reasonable fee, and the fee applicant bears the burden 'of showing that such an adjustment is necessary to the determination of a reasonable fee.'" *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)).

"[O]f the *Johnson* factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Migis*, 135 F.3d at 1047 (citing *Von Clark v. Butler*, 915 F.2d 255, 258 (5th Cir. 1990)). But the amount involved and the result obtained, and the experience, reputation and ability of counsel factors cannot serve as independent bases for adjusting the lodestar amount upward—so too for the novelty and difficulty of the questions presented and the skill required to perform the legal services properly. *Walker*, 99 F.3d at 771, 771 n.12 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). "Enhancements based upon these factors are only appropriate in rare cases supported by specific evidence in the record and detailed findings by the courts." *Id.* (quoting *Alberti v. Klevenhagen*, 896 F.2d 927, 936 (5th Cir.), *opinion vacated in part on reh'g*, 903 F.2d 352 (5th Cir. 1990)). And consideration of whether the fee is fixed or contingent is barred entirely. *Id.* (citing *City of Burlington*, 505 U.S at 567).

"Attorneys' fees are to be calculated at the 'prevailing market rates in the relevant community.'" *Walker*, 99 F.3d at 770 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). LandAmerica Title supports its fee request with a declaration from Scott A. Wheatley of Jackson Walker, its "primary attorney," who explains that he charged $425 per hour in 2019. (Wheatley Decl., Dkt. 430-1 at 1–2). Other attorneys at his firm charged $295 per hour in 2019, and paralegals charged $135 per hour in 2019. (*Id.* at 2–3).

As derived from the Group 3 invoices, then, the lodestar for LandAmerica Title's attorney's fees is $25,503.40—i.e., the hours the attorneys and paralegals expended on the case multiplied by

their various hourly rates, plus permissible costs. (*See* Group 3 Invoices, Dkt. 429-1); *Migis*, 135 F.3d

at 1047. The Court finds that the number of hours is reasonable, as this is an inordinately complex

and time-consuming case. The hourly rates are also reasonable based on the various lawyers'

experience and their firms' sizes and locations. (*See* Walker Decl., Dkt. 403, at 33–35). *See also* Nils

Greger Olsson, *2015 Hourly Fact Sheet* 12–13 (State Bar of Texas, Dep't of Research and Analysis

2016),

https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDispla

y.cfm&ContentID=34182; *see generally, e.g.*, *Admiral Ins. Co. v. Wieland*, No. A-15-CV-77-RP-ML, 2016

WL 8224270, at *3–4, 3 n.2 (W.D. Tex. Oct. 6, 2016) (taking judicial notice of hourly rate fact sheet

and using it to calculate a reasonable hourly rate).

  Next, the Court considers whether to make a lodestar adjustment. *See Migis*, 135 F.3d at

1047. For factor (1), this litigation required a great deal of time and labor: it involves a complex set

of claims involving multiple parties. LandAmerica Title has been involved in this case in some

capacity since at least October 26, 2010 (if not earlier), when the state court records filed with

Defendant Federal Deposit Insurance Corporation's *as receiver for* First National Bank petition for

removal first list it as a party. (Dkt. 2-1 at 18). In LandAmerica Title's characterization, "[t]his matter

required more time and labor from counsel . . . because of the Plaintiffs' unfounded, baseless

assertions, the number of litigants involved, Plaintiffs' constantly shifting theories, multiplicity of

claims, numerous unsuccessful attempts to replead, and revolving sets of counsel." (Wheatley Decl.,

Dkt. 430-1 at 3). The Court expressly does not pass judgment on Plaintiffs' litigation strategy, but

finds the spirit of LandAmerica Title's argument—that this case was particularly difficult to

litigate—to be reasonable given this case's circumstances. For factor (2), though this case was

logistically complex, LandAmerica Title does not allege that the legal questions presented were

notably novel or difficult. (*Id.*). For factors (3) and (9) LandAmerica Title, through Wheatley, argues

that "[i]t was necessary for [LandAmerica Title] to retain an attorney with [Wheatley's] level of expertise to work on this case." (*Id.* at 2). The Court concurs to the extent that experience in complex civil litigation and real estate/land title disputes aided LandAmerica Title's counsel in properly performing the legal services LandAmerica Title required. For factor (4), LandAmerica Title does not maintain, and the Court does not find, that its attorneys were meaningfully precluded from other employment because of their work on this case. For factor (5), the Court finds that the fees charged were customary, as described above. For factor (7), it is not clear that the client or the circumstances imposed any relevant time limitations; litigation is still ongoing. For factor (8), LandAmerica Title's counsel obtained favorable results, (*see, e.g.,* Order, Dkt. 227); the amount involved is apparent in the attorney's fees requested. (Group 3 Invoices, Dkt. 429-1). For factor (10), it does not seem that this case was "undesirable" for counsel—LandAmerica Title's counsel continued to work on its behalf for years, with no indication of trepidation. For factor (11), LandAmerica Title and its counsel appear to have a developed professional relationship, as they negotiated discounted hourly rates, supporting the reasonableness of those rates (Wheatley Decl., Dkt. 430-1, at 2–3). For factor (12), it is difficult to find precisely similarly situated cases with which to compare fee awards.

Overall, having analyzed the *Johnson* factors, the Court declines to adjust the lodestar amount. The Court finds that LandAmerica Title has carried its burden in demonstrating the proper amount of fees to which it is entitled in the Group 3 invoices.

## VI. CONCLUSION

For the reasons discussed above, **IT IS ORDERED** that:

1. Plaintiffs' motion for default judgment against PPC and HTG, (Dkt. 432), is

   **GRANTED**. The Court will enter partial final judgment as to these claims in a separate order.

28

2.  LandAmerica Title's motion for default judgment against PPC, HTG, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla, (Dkt. 434), is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to PPC and HTG. It is **DENIED WITHOUT PREJUDICE** as to Mauro Joe Padilla, Maria del Rosario Padilla, and Carlos Miguel Padilla. Should LandAmerica Title wish to file a motion for clerk's entry of default and then renew its motion for default judgment as to Mauro Joe Padilla, Maria del Rosario Padilla, and Carlos Miguel Padilla, the Clerk and the Court will entertain those motions. The Court will enter partial final judgment as to these claims against PPC and HTG in a separate order.

3.  LandAmerica Title's unopposed motion to dismiss its crossclaim for contribution against PPC, HTG, Mauro T. Padilla, Maria del Rosario Padilla, Mauro Joe Padilla, and Carlos Miguel Padilla, (Dkt. 435), is **GRANTED**.

4.  LandAmerica Title's unopposed motion to dismiss its crossclaims against Defendant Dan Brown ("Brown") for contractual indemnity and contribution, (Dkt. 436), is **GRANTED**.

5.  LandAmerica Title's unopposed motion for leave to file billing entries under seal, (Dkt. 429), is **GRANTED**.

6.  LandAmerica Title's motion for attorney's fees, (Dkt. 427), is **MOOT**.

7.  LandAmerica Title's election of remedies and amended motion for attorney's fees, (Dkt. 430), is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** as to the election of remedies and the availability of fees and costs to LandAmerica Title. It is **DENIED** as to the amount of those fees and costs that LandAmerica requests. The Court holds that LandAmerica Title is entitled to **$160,553.70** in reasonable and necessary fees and costs from Plaintiffs on

LandAmerica Title's § 17.50(c) counterclaim, comprising the fees and permissible costs collected in the Group 2 and Group 3 invoices. LandAmerica Title may not recover the same fees and costs both from Padilla and from Plaintiffs.

**IT IS FURTHER ORDERED** that the Clerk shall **FILE** LandAmerica Title's additional billing entries, (Dkt. 429-1), **UNDER SEAL**. The Clerk shall **UNSEAL** LandAmerica Title's unopposed motion for leave to file billing entries under seal and its attached proposed order, (Dkt. 429, 429-2).

The Court may set a conference shortly during which the parties and the Court can discuss the status of this case, including whether any other unresolved claims exist that preclude the entry of judgment and an appeal.

**SIGNED** on August 7, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE